1  LAW OFFICES OF DALE K. GALIPO
   Dale K. Galipo (SBN: 144074)
2  Ranhee Lee (SBN: 330979)
   21800 Burbank Blvd., Suite 310
3  Woodland Hills, CA 91367
   (818) 347-3333 – Telephone
4  (818) 347- 4118 – Facsimile
   Emails: dalekgalipo@yahoo.com
5           rlee@galipolaw.com

6  *Attorneys for Plaintiffs*

7

8

9                 **UNITED STATES DISTRICT COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11

12  CANDIDO SESMA and CECILIA         **Case No. 5:21−cv−1694−JWH−(KKx)**
    SESMA, individually and as successors
13  in interest to Charles Sesma, deceased,    [*Hon. John W. Holcomb*]

14                                    **PLAINTIFFS' OPPOSITION TO**
              Plaintiffs,            **DEFENDANTS' MOTION FOR**
15                                    **SUMMARY JUDGMENT**
         vs.
16                                    [*Filed concurrently with Plaintiffs'*
17                                   *Separate Statement of Facts; Declaration*
    STATE OF CALIFORNIA, ANDREW      *of Ranhee Lee and Exhibits thereto;*
18  ORNELAS, and DOES 2-20, inclusive,  *Declaration of Roger A. Clark;*
                                      *Declaration of Scott Holdaway and*
19                                   *Exhibits thereto; Evidentiary Objections*]
20            Defendants.
21                                    Date:       October 21, 2022
22                                    Time:       9:00 AM
                                      Courtroom:  9D
23

24

25

26

27

28

─────────────────────────────────────────────
      PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.    INTRODUCTION ............................................................................1

II.   STATEMENT OF FACTS ...............................................................3

III.  LEGAL STANDARD.......................................................................7

IV.   ANALYSIS ......................................................................................8

    A.   Plaintiffs' Excessive Force Claim Survives .................................8

    B.   Plaintiffs' Fourteenth Amendment Claim Survives ...................13

    C.   Ornelas is Not Entitled to Qualified Immunity on Plaintiffs' Federal Claims.............................................................14

    D.   Plaintiffs' State Law Claims Survive .........................................20

V.    CONCLUSION...............................................................................22

1

# <u>TABLE OF AUTHORITIES</u>

2

3

<u>Cases</u>

4

*Adams v. Speers,*
    473 F.3d 989, 994 (9th Cir. 2006) ...................................................................... 14

*Anderson v. Creighton,*
    483 U.S. 635, 641 (1987) ........................................................................... 13, 18

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 248 (1986) ................................................................................ 7, 8

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ........................................................................... 13, 14, 18

*Bryan v. McPherson,*
    630 F.3d 805, 823-24 (9th Cir. 2010) ............................................................. 8, 9

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 322–23 (1986) ......................................................................... 7, 8

*Chien Van Bui v. City & Cnty. of San Francisco,* No. 11-cv-04189 LB,
    61 F. Supp. 3d 877, 898-99 (N.D. Cal. 2014) ................................................... 14

*County of Sacramento v. Lewis,*
    523 U.S. 833, 846 (1998) ................................................................................. 12

*Cunningham v. City of Wenatchee,*
    345 F3d 802, 809 (9th Cir. 2003) ..................................................................... 13

*Curnow By and Through Curnow v. Ridgecrest Police,*
    952 F.2d 321, 324-25 (9th Cir. 1991) ............................................................... 15

*Deorle v. Rutherford,*
    272 F.3d 1272, 1281 (9th Cir. 2001) ................................................................ 10

*Espinosa v. City & Cnty. of San Francisco,*
    598 F.3d 528, 537 (9th Cir. 2010) ................................................................... 8, 9

*Estate of Jones by Jones v. City of Martinsburg,*
    961 F.3d 661, 668–70 (4th Cir. 2020) ............................................................... 18

*Estate of Lopez by & through Lopez v. Gelhaus,*
    871 F.3d 998 (9th Cir. 2017) ............................................................................ 15

*Estate of Lopez v. Gelhaus,*
    149 F. Supp. 3d 1154, 1160 (N.D. Cal. 2016) ................................................... 14

*Estate of Smart by Smart v. City of Wichita,*
    951 F.3d 1161, 1175 (10th Cir. 2020) ............................................................... 18

-ii-

*Fancher v. Barrientos*,
    723 F.3d 1191, 1201 (10th Cir. 2013)..............................................................18

*Figueroa v. Gates*,
    207 F. Supp. 2d 1085, 1093 (C.D. Cal. 2002) ...............................................15

*Gantt v. City of Los Angeles*,
    717 F.3d 702, 708 (9th Cir. 2013) ...................................................................12

*George v. Morris*,
    736 F.3d 829, 838 (9th Cir. 2013) .............................................................11, 16

*Glenn v. Washington Cnty.*,
    673 F.3d 864, 871 (9th Cir. 2011) .........................................................8, 13, 16

*Graham v. Connor*,
    490 U.S. 386, 397 (1989) ..............................................................................8, 9

*Harris v. Pittman*,
    927 F.3d 266, 281 (4th Cir. 2019) ..................................................................18

*Harris v. Roderick*,
    126 F.3d 1189, 1201 (9th Cir. 1997) ............................................................9, 15

*Hayes v. County of San Diego*,
    736 F.3d 1223 (9th Cir. 2013)............................................................12, 16, 19

*Hernandez v. City of Miami*,
    302 F. Supp. 2d 1373, 1374 (S.D. Fla. 2004) ...............................................14

*Hope v. Pelzer*,
    536 U.S. 730, 741 (2002) ................................................................................14

*Hopkins v. Andaya*,
    958 F.2d 881, 888 (9th Cir. 1992) ...............................................................7, 17

*Johnson v. Jones*,
    515 U.S. 304, 313 (1995) ................................................................................13

*K.H. Through Murphy v. Morgan*,
    914 F.2d 846 (7th Cir. 1990) ..........................................................................18

*Knox v. Southwest Airlines*,
    124 F.3d 1103, 1109 (9th Cir. 1997) ..............................................................13

*Medina v. Cram*,
    252 F.3d 1124, 1132 (10th Cir. 2001) ............................................................15

*Meredith v. Erath*,
    342 F.3d 1057, 1061 (9th Cir. 2003)................................................................8

*Meyers v. Baltimore Cnty.*,
    713 F.3d 723, 735 (4th Cir. 2013)..................................................................18

-iii-

*Munoz v. City of Union City*,
　120 Cal. App. 4th 1077, 1121, fn 6 (2004) ...................................................19

*Narayan v. EGL, Inc.*,
　616 F.3d 895, 899 (9th Cir. 2010)................................................................7

*Porter v. Osborn*,
　546 F.3d 1131, 1137–40 (9th Cir. 2008)........................................................12

*Reese v. County of Sacramento*,
　888 F.3d 1030, 1045 (9th Cir. 2018)............................................................20

*Santos v. Gates*,
　287 F.3d 846, 855 n.12 (9th Cir. 2002) .......................................................13

*Scott v. Harris*,
　550 U.S. 372, 381 (2007) ..........................................................................8

*Smith v. City of Hemet*,
　394 F.3d 689, 701 (2005) (*en banc*)............................................................8

*Tan Lam v. City of Los Banos*,
　976 F.3d 986 (9th Cir. 2020)....................................................................17

*Tennessee v. Garner*,
　471 U.S. 1, 9 (1985) ..............................................................................9, 18

*Tennison v. City and Cnty. of San Francisco*,
　570 F.3d 1078, 1089 (9th Cir. 2009)..........................................................12

*Ting v. United States*,
　927 F.2d 1504, 1510 (9th Cir. 1991)..........................................................17

*Torres v. City of Madera*,
　648 F.3d 1119, 1124 (9th Cir. 2011)............................................................8

*United States v. One Parcel of Real Prop.*,
　904 F.2d 487, 491–92 (9th Cir. 1990)...........................................................8

*United States v. Reese*,
　2 F.3d 870, 855 (9th Cir. 1993)................................................................20

Wilkins v. City of Oakland,
　350 F.3d 949, 956 (9th Cir. 2003)..............................................................13

*Wilkinson v. Torres*,
　610 F.3d 546, 554 (9th Cir. 2010)..............................................................12

*Wilson v. City of Des Moines*,
　160 F. Supp. 2d 1038, 1040 (S.D. Iowa 2001).............................................15

*Zion v. Cty. of Orange*,
　874 F.3d 1072, 1075-76 (9th Cir. 2017) .....................................................17

-iv-

1

<u>Codes</u>

California Government Code Section 815.2(a) .......................................................21

<u>Rules</u>

Fed. R. Civ. P. 56 .................................................................................................7, 8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

On August 6, 2020, Charles Sesma ("Mr. Sesma") was shot and killed by California Highway Patrol ("CHP") Officer Andrew Ornelas ("Ornelas"). Defendants now move for summary judgment ("Motion").  This Court should deny Defendants' Motion and request for qualified immunity because, as set forth in Plaintiffs' Separate Statement of Undisputed Facts and the declaration of Plaintiffs' police practice expert, Roger Clark, filed concurrently herewith, Ornelas' use of deadly force against Mr. Sesma was excessive and unreasonable.  At minimum, the Motion should be denied because there are triable issues of material fact regarding the excessive force claim under the Fourth Amendment, Plaintiffs' claim for interference with familial relationship under the Fourteenth Amendment, and Plaintiffs' state law claims for battery, negligence, and violation of the Bane Act.

Qualified immunity is not available because Plaintiffs dispute Defendants' facts, and the law was clearly established at the time of this incident that shooting Mr. Sesma under Plaintiffs' version of facts—which this Court must accept as true in ruling on Defendants' Motion—would violate Mr. Sesma's constitutional rights, and qualified immunity does not apply to the state law claims.  In the video capturing this incident, Mr. Sesma does not appear to have the pipe in his hand at the time of the shooting.  Even on Defendants' facts, the shooting was excessive and unreasonable because basic police training teaches that a pipe in hand, failure to drop the pipe, and approaching toward an officer are not enough to justify a use of deadly force.  In order to use deadly force, there must be an immediate threat of death or serious bodily injury along with no other reasonable alternative options and a verbal warning that a deadly force will be used before shooting, when feasible. Such was not the case here. Here, under plaintiffs' facts and all reasonable inferences therefrom, there was no immediate threat of death or serious bodily

injury, no verbal warning that deadly force would be used, and other reasonable
alternatives to the use of deadly force were available.

     In deciding Defendants' Motion, this Court must view the facts in the light
most favorable to Plaintiffs and take all reasonable inferences therefrom.  Viewing
the facts in the appropriate light, both volleys of shots were excessive, unreasonable,
and contrary to basic policy training on the use of deadly force for the following
reasons. First, there must be contact with force to cause death or serious bodily
injury with a pipe, and Ornelas was approximately 25 yards away from Mr. Sesma
during the first volley of shots and approximately 20 yards away from him during
the second volley.  This distance also made it feasible for Ornelas to give a warning
prior to shooting, particularly considering there was a 6 – 7 second gap in between
volleys of shots, but Ornelas never gave Mr. Sesma a verbal warning that deadly
force would be used.  Ornelas did not have any information that Mr. Sesma
seriously injured anyone, and Mr. Sesma never swung or attempted to swing the
pipe at Ornelas or anyone else, never threw or attempted to throw the pipe Ornelas
or anyone else, never raised his hand above his head or shoulder level, and never
verbally threatened to harm anyone.  Ornelas had reasonable alternatives to using
deadly force, including using the taser that he had in his duty belt or simply moving
out of the way.  Mr. Sesma fell to the ground after the first volley of shots, and it
was Ornelas's impression that shots from his first volley struck Mr. Sesma.  During
the second volley, Ornelas aimed at Mr. Sesma's upper torso when Mr. Sesma's
upper body completely bent in a 90-degree angle and Mr. Sesma was just beginning
to raise his body off from the ground.  The physical and forensic evidence shows
that Mr. Sesma was going to the ground or was on the ground when some of the
shots were fired, including the two shots to Mr. Sesma's face, which were most
likely the last two shots.  For each of these reasons and the reasons set forth below,
this Court should deny Defendants' Motion in its entirety.

## II.    STATEMENT OF FACTS

This incident initiated as a call for a "property damage only" collision, meaning that no one was hurt. Plaintiffs' Statement of Facts ("PSF") 50. When Officer Nichols spotted Mr. Sesma at the Costco parking lot, Mr. Sesma seemed nonchalant. PSF 51. Prior to this incident, Ornelas had never seen Mr. Sesma. PSF 52. At the time of the shooting, Ornelas had no information as to whether Mr. Sesma had a criminal history, no information that Mr. Sesma had injured anyone, no information that Mr. Sesma had verbally threatened to harm anyone, and no information that Mr. Sesma was attempting to fight physically with anyone. PSF 53-56.

Mr. Sesma picked up a pipe by the train in the parking lot, and Officer Steen put out on the radio that the object Mr. Sesma had was a "little pipe." PSF 57. Ornelas never gave Mr. Sesma orders to drop the pipe at the parking lot. PSF 58. Mr. Sesma began slowly walking away from the officers in a western direction. PSF 59. Officer Steen never said anything to Mr. Sesma once Mr. Sesma started walking west. PSF 60. Before getting back in his vehicle and driving out of the parking lot, Ornelas told Officer Steen to "keep an eye from [the parking lot]" and prevented Officer Steen from moving to the overhead railroad on Haven Avenue as a partner officer. PSF 61.

As Ornelas drove out of the parking lot, Ornelas told Officer Nichols to go to the Haven Avenue intersection with the train track, just west of the Park-and-Ride parking lot, and to stand-by at that location because Mr. Sesma would walk right to him. PSF 62. As Ornelas moved to the overhead railroad on Haven Avenue, he stated on the radio that Mr. Sesma had "picked up a metal object" and "he is now carrying [it]." PSF 63.  Prior to the shooting, Ornelas had information that Mr. Sesma was sitting on the bridge above Haven Avenue and that access was on the west side of Haven Avenue. PSF 64.

Ornelas knew that backup officers were on their way, but he did not wait for backup. PSF 64. Ornelas walked to the overhead railroad alone on the east side of Haven Avenue, ignoring Dispatch's statement that there was access through the west side of Haven Avenue and ignoring Officer Steen's instruction that officers can get ahold of Mr. Sesma on the west side of Haven Avenue underneath the bridge when Mr. Sesma got off the embankment. PSF 66. Ornelas claimed that there was no tactical plan formed with the other officers as to how to approach Mr. Sesma. PSF 67.

When Mr. Sesma first stood up on the bridge, he never put his hands above his head or even above his shoulder level (PSF 68), and at no point prior to the shooting did Mr. Sesma raise his hand or a pipe over his head. PSF 73. The video shows that Mr. Sesma did not appear to have any object in his hand when he was on the overhead bridge. PSF 69.  Ornelas did not give any verbal warning that he was going to shoot Mr. Sesma. PSF 72. Ornelas never heard Mr. Sesma say anything. PSF 87. Mr. Sesma was approximately 25 yards from Ornelas at the time he first shot. PSF 74. Ornelas fired 5 shots in his first volley, including while Mr. Sesma was falling forward to the ground. PSF 75.

Mr. Sesma was approximately 20 yards from Ornelas when he fired a second volley of shots. PSF 76. Ornelas fired 2 additional shots in his second volley.  PSF 77. Ornelas fired his second volley when Mr. Sesma's upper body was completely bent over as he was beginning to come off from the ground. PSF 78. Ornelas aimed at Mr. Sesma's center mass when he fired the first volley and Mr. Sesma fell down. PSF 79. Ornelas believed that his first four shots had struck Mr. Sesma given that Mr. Sesma fell down. PSF 80. A reasonable officer would have believed that Mr. Sesma was struck, at least in the chest area, even though Mr. Sesma began to come off from the ground afterwards because Mr. Sesma fell down after the first 4-5 shots fired. PSF 81. Mr. Sesma sustained a total of 8 gunshot wounds – two to his face,

two to his chest, two to his right arm, one to his right torso, and one to his right arm.
PSF 82. Ornelas was the only officer who fired shots during this incident. PSF 83.

At the time of the shooting, there were reasonable alternative measures
available other than shooting, including a Taser. PSF 84. Ornelas had a taser with
two loaded cartridges on him at the time of the incident. PSF 85.  Use of a taser
would have been a reasonable alternative force if Mr. Sesma had a pipe in his hand
and was advancing toward Ornelas. PSF 86. At the time of shooting, Ornelas was
trained that deadly force can be used only if there is an immediate or imminent
threat of death or serious bodily injury. PSF 88. At the time of shooting, Ornelas
was trained that he should give a verbal warning before using deadly force, when
feasible. PSF 89. At the time of the shooting, Ornelas was trained that in terms of
using deadly force, he is responsible to justify every shot. PSF 90. At the time of the
shooting, Ornelas was trained that deadly force should only be used as a last resort
in a life-threatening situation. PSF 91. Officers are trained, and Ornelas recalls, that
when using deadly force, there has to be reverence for human life. PSF 92.

Police officers are trained to follow a "Cover Officer-Contact Officer" tactic
when approaching a person potentially having an object such as a pipe with him.
PSF 101. Officers are trained that once a subject is located, the objective is to keep
the subject contained by not approaching the subject and making sure that officers
have "cover" in order to allow sufficient time for the subject to decompress. PSF
102. Officers are also trained that deadly force cannot be used simply because a
person was advancing toward them. PSF 94.

The first volley of shots Officer Ornelas fired at Mr. Sesma was improper,
and inappropriate, and unreasonable and violated Peace Officer Standards and
Training ("P.O.S.T.") and basic police officer training because it was feasible to
give a verbal warning that deadly force was going to be used especially because Mr.
Sesma was 25 yards away from Officer Ornelas at the time the first shot was fired.

-5-

PSF 95. Even if Mr. Sesma had the pipe in his hand, the first volley of shots was improper, inappropriate and unreasonable and violated the P.O.S.T. standards and police officer training because there has to be a contact with force to cause death or serious bodily injury with a pipe; Mr. Sesma never swung, attempted to swing, threw, or attempted to throw a pipe at Officer Ornelas; Mr. Sesma never raised his hand above his head or shoulder level; Mr. Sesma never verbally threatened to harm anyone; and Officer Ornelas did not have any information that Mr. Sesma seriously injured anyone.  Based on that, there was no immediate threat of death or serious bodily injury to anyone at the time the first volley of shots was fired. PSF 96.

The second volley of shots Officer Ornelas fired at Mr. Sesma was also contrary to P.O.S.T., improper, and inappropriate, and unreasonable because the second volley of shots was fired when Mr. Sesma's upper body was completely bent in a 90 degree angle and when Mr. Sesma was beginning to raise his body off from the ground; there was approximately a 6-7 second gap between the first volley of shots and the second volley of shots; there has to be a contact with force to cause death or serious bodily injury with a pipe; Mr. Sesma never swung, attempted to swing, threw, or attempted to throw a pipe at Officer Ornelas; Mr. Sesma never raised his hand above his head or shoulder level; Mr. Sesma never verbally threatened to harm anyone; and Officer Ornelas did not have any information that Mr. Sesma seriously injured anyone. PSF 97.

For both volleys of shots, Officer Ornelas' subjective fear is insufficient to use of deadly force because the use of deadly force has to be objectively reasonable and is supposed to be the last resort that officers use.  Also, the officers should show reverence for human life, and the deadly force should only be used in an immediate defense of life situation.  PSF 99. Therefore, the second volley of shots were particularly in violation of standard police practice and P.O.S.T. standards because Officer Ornelas fired his handgun as soon as Mr. Sesma started to get off of the

ground with his upper body completely bent over and the last two shots most likely struck Mr. Sesma's face given that Officer Ornelas was aiming at Mr. Sesma's upper torso area based on the material reviewed. PSF 100.

Ornelas in this case did not appear to reassess after every shot since he shot a total of approximately 6-7 times, most of which were in quick succession. PSF 103. Officer Ornelas failed to reassess and reevaluate the situation when he fired his second volley of shots because Officer Ornelas aimed at Mr. Sesma's upper torso and when Mr. Sesma fell to the ground after the first volley of shots were fired, Officer Ornelas' impression was that Mr. Sesma was struck by the bullets; however, he started shooting again. PSF 98. Ornelas violated basic police standards/training when he started firing his handgun at Mr. Sesma who did not appear to have anything in his hands, never swung a pipe or verbally threatened anyone. PSF 93.

## III.    LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the nonmoving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" based on the issue. *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255; also see *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). Even entirely circumstantial evidence is sufficient to create a triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial. *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 491–92 (9th Cir. 1990). Further, Rule 56 must be construed "with due regard" for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried by a jury. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Summary judgment is a drastic remedy and therefore trial courts should act "with caution" in granting summary judgment. *Anderson*, 477 U.S. at 255.

## IV.  ANALYSIS

### A. Plaintiffs' Excessive Force Claim Survives

In evaluating Plaintiffs' claim of excessive force, the inquiry is whether Ornelas' actions were "objectively reasonable" in light of the facts and circumstances confronting him. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S. at 396). The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). Factors to consider on balance include whether the suspect posed an immediate threat to the safety of the officers or the public, the availability of alternative methods to effectuate an arrest or overcome resistance, and whether the officer gave a warning that deadly force would be used. *Graham*, 490 U.S. at 396; *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (*en banc*). The inquiry is "highly fact-intensive" and involves "no *per se* rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). Courts do "recognize that 'police officers are often forced to make split-second judgments . . .'"

*Id.* at 1124 (quoting *Graham*, 490 U.S. at 397). "Not all errors in perception or judgment, however, are reasonable," and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.* (quoting *Graham*, 490 U.S. at 396). As set forth below, the *Graham v. Conner* analysis heavily favors Plaintiffs.

In determining the objective reasonableness of the Ornelas' uses of force, this Court "must assess the severity of the intrusion on [Mr. Sesma's] Fourth Amendment rights by evaluating the type and amount of force inflicted." *Espinosa*, 598 F.3d at 537. Because the shots fired by Ornelas constitute the greatest possible amount of force, they require the highest justification:

> The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.

*Tennessee v. Garner*, 471 U.S. 1, 9 (1985). "Certain principles are clearly established . . . that implement the fundamental rules regarding the use of deadly force. Law enforcement officers may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer or others or is fleeing and his escape will result in serious threat of injury to persons." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997).

Under the factors set forth in *Graham* and its progeny, there was no "need" that justified the Ornelas' use of deadly force against Mr. Sesma. As to the first *Graham* factor, the severity of the crime at issue, it is undisputed that Mr. Sesma did not injure anyone prior to the shooting, that the incident began as a single-vehicle collision with property damage only, that Mr. Sesma did not have a gun, and that there was no crime in progress at the time of the shooting. Pursuant to *Bryan v. McPherson*, 630 F.3d 805, 826 (9th Cir. 2010), under this set of facts, the most

-9-

important *Graham* factor is whether Mr. Sesma posed an immediate threat of death or serious bodily injury. "A simple statement by an officer that he fears for . . . the safety of others is not enough; there must be *objective* factors to justify such a concern." *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2001) (emphasis added).  An officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Id.*  Here, any fear that Ornelas had was subjective, and a subjective fear is insufficient to justify an officer's use of deadly force.  This Court should deny summary judgment because on both the disputed and undisputed facts, this was not an immediate defense of life situation, and both groups of shots were excessive and unreasonable, as follows.

First, it is disputed whether Mr. Sesma was holding the pipe at the time of the shooting.  In the videos, including the zoomed-in videos filed concurrently herewith, Mr. Sesma does not appear to have anything in his hand at the time of the shooting.  Ornelas's observation that Mr. Sesma had what Officer Nichols reported to be "a small pipe" in his hand in the parking lot prior to the shooting, combined with Mr. Sesma moving toward Ornelas, is insufficient to justify Ornelas' use of deadly force.  Even assuming that Mr. Sesma did have a small pipe in his hand when he started moving toward Ornelas, the shooting was still excessive because it is undisputed that Mr. Sesma never attempted to swing, throw, strike, or assault anyone with the pipe, and the video shows that Mr. Sesma never even raised his arm or the pipe above his shoulders.  It is also undisputed that Mr. Sesma never verbally threatened Ornelas or anyone else and that Ornelas had no information that Mr. Sesma had injured anyone.  Mr. Sesma was approximately 25 yards from Ornelas during the first volley of shots and approximately 20 yards away during the second volley of shots, in other words, too far from Ornelas to strike him with the pipe.  This distance provided Ornelas with time to give Mr. Sesma a warning that deadly force would be used prior to shooting, but he failed to give a warning before either volley of shots,

-10-

even though there was a gap of approximately six to seven seconds between the two volley of shots.  This distance also provided Ornelas with the opportunity to use his taser as a reasonable alternative to using deadly force, but he failed to do so. Additionally, Ornelas also could have simply stepped out of the way rather than shooting if he thought that Mr. Sesma was moving toward him.

Officers are responsible to justify every shot they fire, and all of Ornelas's shots were unjustified. Ornelas fired five shots in the first volley, when Mr. Sesma was apparently 25 yards away, and he formed the impression that shots from the first volley struck Mr. Sesma.  After the first volley of shots, Mr. Sesma went to the ground.  Mr. Sesma began to get up off the ground with his upper body bent at an angle, and Ornelas fired two more shots at the wounded Mr. Sesma, most likely to his face.  The physical and forensic evidence shows that Ornelas fired shots at Mr. Sesma when Mr. Sesma was going to the ground and when he was already on the ground, and starting to get up, including the two shots to Mr. Sesma's face.  Ornelas failed to reassess during the shots and during the gap between the two volleys of shots, and a proper reassessment would have shown that there was no need to use deadly force, particularly when Mr. Sesma was going to the ground and after he was on the ground and had already been shot.

Importantly, Ornelas was the only officer who fired shots.  Officer Nichols was on scene during the shooting and was facing the same circumstances as Ornelas. Nichols acted as a reasonable officer would, by standing directly underneath the overhead railroad, with a clear view of Mr. Sesma, recognizing that there was no immediate threat of death or serious bodily injury, and not shooting.  In other words, even on Defendants' facts, a reasonable officer under circumstances similar to those Ornelas faced, would not have shot an individual holding a pipe, when the individual never swung the pipe, never tried to attack or assault anyone, never even raised his

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    hand or the pipe above his shoulder, and never verbally threatened anyone. *See*

2    *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2013).

3        In the case *Estate of Casimero Casillas v. City of Fresno*, Case No. 1:16-cv-

4    1042, Dkt. 26, (E.D. Cal., Feb. 13, 2019), a district court sitting for the Eastern

5    District of California analyzed a police shooting with facts similar to the shooting of

6    Mr. Sesma and denied summary judgment and qualified immunity.  In that case, on

7    the plaintiff's facts, Mr. Casillas moved toward the shooting officer with a pipe in his

8    hand, did not raise the pipe in an assaultive matter, and was shot by an officer who did

9    not give Mr. Casillas a verbal warning and declined to use his taser or other less-than-

10   lethal options. Similarly, here, this Court should deny summary judgment and

11   qualified immunity where Mr. Sesma never raised the pipe over his head, never made

12   any assaultive moves with the pipe, and was shot by Ornelas without warning, even

13   though Ornelas had his taser available as a reasonable less-than-lethal alternative to

14   shooting.  Citing *Cruz v. City of Anaheim*, 765 F.3d 1076, (9th Cir. 2014), the *Casillas*

15   court noted that it could not ignore the possibility that the shooting officer's testimony

16   may be self-serving. *Casillas*, Dkt. 26 at p. 9.  Here, Defendants allege that Ornelas

17   instructed Mr. Sesma to drop the pipe when they were in the parking lot and also

18   when they were on the bridge.  The video belies Ornelas' claim that he told Mr. Sesma

19   to drop the pipe in the parking lot, which raises a question as to Ornelas' credibility

20   with respect to whether he told Mr. Sesma to drop the pipe on the bridge. Within the

21   approximate six to seven second gap in between the two volleys of shots, Mr. Sesma

22   only travelled approximately five yards, indicating that he was not running or moving

23   quickly toward Ornelas.  Where the only surviving witnesses are the police officers,

24   this Court must take circumstantial evidence into account that may call the officers'

25   version of the facts into question. *See Gonalzez v. City of Anaheim*, 747 F.3d 789 (9th

26   Cir. 2014).

27        //

28
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## B. Plaintiffs' Fourteenth Amendment Claim Survives

Plaintiffs' claim for interference with their familial relationship with Mr. Sesma survives because regardless of which standard is applied, it "shocks the conscious" to shoot a person who did not have a gun, made no verbal threats, did not injure anyone, and never swung the pipe at anyone, particularly after that person had already been struck by shots and fallen to the ground. The Ninth Circuit has held that due process violations under the Fourteenth Amendment occur when official conduct "shocks the conscience," *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), and what that means "depends on the context." *Tennison v. City and Cnty. of San Francisco,* 570 F.3d 1078, 1089 (9th Cir. 2009). The Ninth Circuit has further explained: "[d]eliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Gantt v. City of Los Angeles,* 717 F.3d 702, 708 (9th Cir. 2013). The Ninth Circuit has indicated that a standard higher than "deliberate indifference" should apply only when the officer lacks time to deliberate, in other words, in situations "that escalate so quickly that the officer must make a snap judgment." *Porter v. Osborn*, 546 F.3d 1131, 1137–40 (9th Cir. 2008) (collecting cases). In such cases, a "purpose to harm standard" should apply instead. *Id.* In *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), the Ninth Circuit held, consistent with *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), that the "snap judgment" to use deadly force must be a reaction to an *unforeseen* escalation by the subject. *Id.* at 1230. The Ninth Circuit has only applied *Lewis* to scenarios where deliberation was impractical due to unforeseen escalations such as where the subject suddenly brandished a weapon.

The "purpose to harm" standard is inapplicable here because Mr. Sesma did not suddenly brandish a weapon, and even if he did have the pipe in his hand at the

-13-

time of the shooting, which is disputed based on the video evidence, Ornelas was aware that Mr. Sesma had a pipe in his hand before Ornelas went onto the bridge, and Mr. Sesma never raised the pipe above his head, never made any verbal threats, and never assaulted or attempted to assault anyone. Ornelas had time to deliberate and did in fact deliberate, including when he chose to walk up alone to the train tracks before other backup officers arrived on Haven Avenue to assist, even though he knew that backup was on the way, and also during the six to seven second gap between the two volleys of shots.  The second volley of shots particularly supports denial of summary judgment on this claim because Ornelas was aware that Mr. Sesma had already been struck by shots during the first volley, and yet he fired two more shots after Mr. Sesma went to the ground, including shots to the face without ever giving Mr. Sesma a verbal warning that deadly force would be used.

## C. Ornelas is Not Entitled to Qualified Immunity on Plaintiffs' Federal Claims

Qualified immunity should be denied in this case for three principal reasons. First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Glenn v. Washington Cnty.*, 673 F.3d 864, 870, fn. 7 (9th Cir. 2011); *Cunningham v. City of Wenatchee*, 345 F3d 802, 809 (9th Cir. 2003); *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (declining to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact); *Brosseau v. Haugen,  543 U.S. 194 (2004)* at 206 (Stevens J., dissenting) (the reasonableness of an officer's belief "…is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law…'"); *Anderson v. Creighton,* 483 U.S. 635, 641 (1987); *Wilkins v. City of*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Oakland,* 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate."); *Chien Van Bui v. City & Cnty. of San Francisco*, No. 11-cv-04189 LB, 61 F. Supp. 3d 877, 898-99 (N.D. Cal. 2014). Here, the key material factual disputes include: whether Mr. Sesma had the pipe in his hand at the time of the shooting; the size of the pipe; the speed at which Mr. Sesma was moving toward Ornelas on the bridge; whether the taser was a reasonable alternative to shooting; whether Ornelas gave Mr. Sesma commands and time to comply with the commands; whether it would have been feasible for Ornelas to give Mr. Sesma a warning that deadly force would be used; whether Mr. Sesma was struck by shots while he was going to the ground and when he was on the ground. For this reason alone, qualified immunity should be denied.

Second, taking Plaintiff's facts as true—which the Court is required to do on a motion for summary judgment—the shooting violated clearly established law, basic police officer training, and POST standards. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (the "salient question" is whether the state of the law gave the defendant "fair warning" that his alleged conduct was unconstitutional); *see also Hernandez v. City of Miami*, 302 F. Supp. 2d 1373, 1374 (S.D. Fla. 2004). Third, even if Mr. Sesma did have the pipe in his hand at the time of the shooting as Defendants allege, the shooting would have still been excessive under clearly established law because Mr. Sesma never swung the pipe at anyone, never attempted to attack anyone with the pipe, never made any furtive movement or harrowing gesture with the pipe, never injured anyone, never verbally threatened anyone and was 25 yards away from Officer Ornelas when the shots started.

On Plaintiffs' set of facts, where Mr. Sesma was not holding the pipe at the time of the shooting, this case "falls within the obvious." *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2006) (denying qualified immunity where the officer's failure to warn

before shooting and the suspect's non-dangerousness placed the case squarely "within the obvious"); *Brosseau*, 543 U.S. at 197–99 (finding *Garner* provides sufficient "fair warning" of a constitutional violation in "obvious" cases). Courts have repeatedly held that officers are not entitled to qualified immunity in cases where suspects did not have weapons on their persons, brandish weapons, or threaten to use them, even if the officer believed the suspect was armed.  *See, e.g.*, *Estate of Lopez v. Gelhaus*, 149 F. Supp. 3d 1154, 1160 (N.D. Cal. 2016), *aff'd and remanded sub nom. Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017) (holding that it was clearly established that an officer would know that deadly force was unreasonable where the suspect appears to have a weapon such as a replica gun but officers have no reports of the suspect using the weapon and the suspect made no threats or sudden moves);  *Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1093 (C.D. Cal. 2002) (denying qualified immunity, noting that this was "not a case where the officers clearly saw that the suspect had a weapon," and holding that "[t]he primary focus of [the] inquiry . . . remains on whether the officer was in danger at the exact moment of the threat of force") (citing *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001)); *Wilson v. City of Des Moines*, 160 F. Supp. 2d 1038, 1040 (S.D. Iowa 2001) (finding that the defendants were not entitled to qualified immunity where they shot an unarmed man running across the field because "they thought they saw a firearm").

The Ninth Circuit has denied qualified immunity in cases where suspects did have guns, holding that the presence of a gun is not enough to justify a use of deadly force. Plaintiffs' case is significantly stronger because the object that he had was a small pipe, but the same logic applies.  The presence of a pipe alone is insufficient to justify Ornelas' use of deadly force, where Mr. Sesma never made any furtive movements or harrowing gestures with the pipe and never swung the pipe or tried to attack anyone with it.  In *Harris v. Roderick*, 126 F.3d 1189, 1203-04 (9th Cir. 1997), the Ninth Circuit clearly established that police officers may not kill suspects who do not pose an

immediate threat simply because the suspect is armed. 126 F.3d at 1203-04. In that case, even though Mr. Harris was armed and had engaged in a shoot-out with officers, he made no aggressive or threatening move of any kind and instead ran away from the shooting officer when he was shot without warning. *Id*. In *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 324-25 (9th Cir. 1991), the Ninth Circuit affirmed the district court's denial of the officer defendant's request for qualified immunity. In that case, it was undisputed that Mr. Curnow was armed with a gun, but there was a dispute as to whether Mr. Curnow posed an immediate threat of death or serious bodily injury at the time of the shots. Viewing the facts in the light most favorable to the plaintiff, the *Curnow* court held that "the police officers could not have reasonably believed the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time." 952 F.2d at 325.

In *George v. Morris*, 736 F.3d 829, 838-39 (9th Cir. 2013), the Ninth Circuit found that a reasonable jury could conclude that the deputies' use of force was excessive where the suspect possessed a gun, but it was pointed toward the ground and the suspect did not also make "a furtive movement, harrowing gesture, or serious verbal threat." *George*, 738 F.3d at 838. Similarly, in *Glenn*, the suspect had a deadly weapon and refused to drop it. Despite the fact that the suspect was armed, the Ninth Circuit in *Glenn* examined how the suspect wielded the deadly weapon in its factor analysis in order to determine whether the officers' use of deadly force was reasonable. *Glenn*, 673 F.3d at 872-74. The *Glenn* court emphasized that despite the fact that the suspect was armed, the suspect was not in a physical altercation with anyone, he was not threatening anyone with the knife, and no one was trying to get away from him. *Id.* at 873. *Hayes v. County of San Diego*, 736 F.3d 1223, 1233-34 (9th Cir. 2013), also put Ornelas on notice that his use of deadly force against Mr. Sesma was unlawful. In *Hayes*, the Ninth Circuit reversed a district court's grant of summary judgment

where the decedent approached officers while armed with a knife, but where the decedent was not charging the officers, was given no warning that deadly force would be used, was not witnessed acting erratically with the weapon, and where officers had no information that the decedent had threatened to harm anyone. *Id*. The *Hayes* court held that the possession of the knife alone, particularly when the decedent had committed no violent crime and was six to eight feet away from the shooting deputy at the time he was shot was not a sufficient reason for the deputy to employ deadly force.  Likewise, here, Mr. Sesma was approximately 20 to 25 yards away from Ornelas at the time of the shooting, and the presence of the pipe was an insufficient reason to shoot and kill Mr. Sesma where he made no aggressive moves with the pipe.

The law was also clearly established that it was a constitutional violation to continue to shoot a person who had already been shot and was down on the ground and at most starting to get up.  *See, e.g.*, *Zion v. Cty. of Orange*, 874 F.3d 1072, 1075-76 (9th Cir. 2017) (holding that a jury could find that the second volley of shots was unreasonable because after the decedent had been struck by the first volley and had fallen to the ground, appeared to be wounded, and was no longer an immediate threat); *Hopkins v. Andaya*, 958 F.2d 881, 886-87 (9th Cir. 1992) (finding the officer's second use of lethal force excessive and unreasonable where the suspect was wounded and unarmed); *Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991) (finding the use of lethal force against the suspect unreasonable where the suspect, who was previously armed, was shot while in a prone position or on his hands and knees and unarmed, and reversing summary judgment on the excessive force claim).  In *Tan Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020), the Ninth Circuit denied the officer's motion for judgment as a matter of law based on qualified immunity and reiterated that "it has long been clearly established that an officer could not use deadly force on an unarmed, nonthreatening suspect

and any belief to the contrary was not reasonable."  As indicated above, Ornelas'
second volley of shots was even more excessive because Ornelas formed the
impression that Mr. Sesma was struck by shots during the first volley, and yet he
continued to shoot at Mr. Sesma as he was going to the ground and after he went to
the ground, including two shots to the face.

Other circuit courts also routinely deny qualified immunity in situations
where the suspect initially posed a threat and the officer continued to shoot after the
suspect no longer posed a threat. *Estate of Jones by Jones v. City of Martinsburg*,
961 F.3d 661, 668–70 (4th Cir. 2020) (officers not entitled to qualified immunity in
2013 incident where they fatally shot suspect after he ceased to pose a threat, when
he had previously hit and stabbed an officer); *Estate of Smart by Smart v. City of
Wichita*, 951 F.3d 1161, 1175 (10th Cir. 2020) (officer not entitled to qualified
immunity in a 2012 incident when he fatally shot a person whom police suspected
had been an active shooter after suspect no longer posed a threat); *Harris v. Pittman*,
927 F.3d 266, 281 (4th Cir. 2019) (qualified immunity denied as to officer's second
shot in 2012 incident after the officer had already wounded and disabled the suspect
with the initial shot); *Fancher v. Barrientos*, 723 F.3d 1191, 1201 (10th Cir.
2013) (officer not entitled to qualified immunity when he fired fatal shots after
suspect was no longer a danger following the suspect's initial assault on the
officer); *Meyers v. Baltimore Cnty.*, 713 F.3d 723, 735 (4th Cir. 2013) (qualified
immunity denied when officers continued to tase suspect who had been involved in
a family dispute after he was no longer a threat).

Finally, the United States Supreme Court "has firmly rejected the notion that
'an official action is protected by qualified immunity unless the very action in
question has previously been held unlawful.'" *Brosseau*, 543 U.S. at 205 (Stevens,
J., dissenting) ("The Court's search for relevant case law applying
the *Garner* standard to materially similar facts is both unnecessary and ill advised")

-19-

1   (quoting *Anderson*, 483 U.S. at 640; *K.H. Through Murphy v. Morgan,* 914 F.2d 846

2   (7th Cir. 1990) ("There has never been a section 1983 case accusing welfare officials

3   of selling foster children into slavery; it does not follow that if such a case arose, the

4   officials would be immune from damages liability because no previous case had found

5   liability in those circumstances.").  Although Plaintiffs believe that the prior cases

6   they cite herein put Ornelas sufficiently on notice that his use of deadly force against

7   Mr. Sesma was excessive and unreasonable, if this Court disagrees, then Plaintiffs

8   submit that Ornelas should not escape responsibility for shooting and killing Mr.

9   Sesma simply because there are no prior excessive force cases involving the use of

10  deadly force without warning against a person who previously had a pipe and who

11  was moving toward an officer without making any verbal threats because that fact

12  pattern that falls within the obvious.

13          **D. Plaintiffs' State Law Claims Survive**

14          Plaintiffs are entitled to a jury trial on their claims for battery, negligence, and

15  violation of the Bane Act for the same reasons discussed in connection with their

16  claims for excessive force and interference with familial relations.  *Munoz v. City of*

17  *Union City*, 120 Cal. App. 4th 1077, 1121, fn 6 (2004) ("Federal civil rights claims of

18  excessive force are the federal counterpart to state battery [ ] claims; in both, the

19  plaintiff must prove the unreasonableness of the officer's conduct. Accordingly,

20  federal cases are instructive.").  The shooting was objectively unreasonable and

21  contrary to police training as described above and in the Declaration of Roger Clark,

22  and Ornelas' reckless disregard for Mr. Sesma's constitutional rights as described in

23  connection with Plaintiffs' Fourteenth Amendment claim indicates that Ornelas had a

24  specific intent to violate Mr. Sesma's constitutional right.s

25          The California Supreme Court clarified that in the context of police shooting

26  cases, the negligence analysis is even broader than typical Fourth Amendment

27  analysis because state law specifically includes consideration of negligent "pre-

28                                          -20-

shooting" tactics on the part of the shooting officer as part of the "totality of the circumstances" evaluation.  In *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013), the California Supreme Court held that "[l]aw enforcement personnel's tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability.  Such liability can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *See also Grudt v. City of Los Angeles*, *supra*; CACI 441.  Ornelas engaged in negligent tactics prior to the shooting, including: (1) failing to wait for other cover-contact officers to arrive at the scene under the train overhead bridge at Haven Avenue; (2) failing to heed Dispatch's warnings to access the overhead bridge through the west side of Haven Avenue; (3) failing to form a tactical plan and; (4) failing to communicate with other officers that he had located Mr. Sesma once he was on the overhead bridge; (5) failing to give Mr. Sesma a warning that deadly force would be used; (6) failing to give adequate commands to Mr. Sesma and time to comply with those commands; (7) failing to employ less-lethal options such as a Taser; (8) continuing to shoot at Mr. Sesma, even as Mr. Sesma fell to the ground and after he had fallen to the ground; (9) failing to reassess during the shots and in between the two volleys of shots; (10) failure to simply move out of the way instead of shooting and killing Mr. Sesma.

Plaintiffs' Bane Act claim survives because Ornelas acted with reckless disregard for Mr. Sesma's constitutional rights when he shot Mr. Sesma without warning at a time when Mr. Sesma was unarmed and when Mr. Sesma had not injured anyone and had made no verbal threats.  "[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese v. County of Sacramento,* 888 F.3d 1030, 1045 (9th Cir. 2018). (quoting *United States v. Reese*, 2 F.3d 870, 855 (9th Cir. 1993)).  Ornelas

ignored Officer Steen's and Dispatch's instruction to contact Mr. Sesma when Mr. Sesma came down from the overhead railroad by accessing the west side of Haven, ignored Officer Steen's and dispatch's information that Mr. Sesma was "right above you," and "on the bridge on Haven," failed to give a warning that deadly force would be used before firing his handgun, failed to reassess between each of the 7 shots fired and within the 6-7 second gap between the two volleys of shots, and continued to shoot as Mr. Sesma fell to the ground. Such conduct clearly exhibits Ornelas' reckless disregard for Mr. Sesma's constitutional right to be free from excessive force. Therefore, Ornelas should not be entitled to judgment on this claim.

Given that Defendant Ornelas is liable for battery, negligence, and violation of the Bane Act, Defendant State of California is also liable on a theory of vicarious liability.  California Government Code Section 815.2(a). Accordingly, Defendant State of California is not entitled to judgment as to Plaintiffs' fifth, Sixth, and Seventh Causes of Action.

## V.    CONCLUSION

For the reasons discussed above, and based on the number of disputed issues of material facts as set forth in the Plaintiffs' Separate Statement of Facts, Defendants' Motion should be denied as to Plaintiffs' claims for relief for excessive force under the Fourth Amendment, substantive due process under the Fourteenth Amendment, battery, negligence, and the Bane Act.


DATED:  September 30, 2022          LAW OFFICES OF DALE K. GALIPO


By  */s/ Dale K. Galipo*
_____
Dale K. Galipo
Ranhee Lee
Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT