UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDIDO SESMA and CECILIA SESMA, individually and as successors in interest to Charles Sesma, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, ANDREW ORNELAS, and DOES 2-20, inclusive,<br><br>Defendants. | Case No. 5:21-cv-01694-JWH-KK<br><br>**ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 38]** |

Before the Court is the motion of Defendants State of California and Officer Andrew Ornelas for summary judgment.[1] The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **GRANTED in part** and **DENIED in part**, for the reasons set forth herein.

## I.  BACKGROUND

### A.  Factual Allegations

This case involves the actions of California Highway Patrol Officer Andrew Ornelas in August 2020 that resulted in the death of Charles Sesma. Officer Ornelas responded to a call regarding multiple hit-and-run accidents on the I-10 freeway, and he encountered Sesma in his truck at a Costco parking lot in Ontario, California.[3] Sesma left the parking lot and walked to a nearby railroad track, which was situated on an overpass above the road.[4] Sesma was allegedly reported holding a 10-inch metal pipe.[5] When Officer Ornelas confronted Sesma on the overpass, Sesma was sitting down on the railroad track.[6] Sesma then stood up and began running toward Officer Ornelas. Officer Ornelas responded by firing his handgun at Sesma at a distance of 20 to 25 feet.[7] Sesma fell to the ground after the initial volley, but he quickly arose and

---

[1]  Defs.' Mot. for Summ. J. (the "Motion") [ECF No. 38].
[2]  The Court considered the documents of record in this action, including the following papers: (1) First Am. Compl. (the "Amended Complaint") (including its attachments) [ECF No. 25]; (2) Motion (including its attachments); (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 43]; and (4) Def.'s Reply in Supp. of the Motion [ECF No. 48].
[3]  Defs.' Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ("DSUF") [ECF No. 38-1] ¶¶ 1 & 5.
[4]  *Id.* at ¶ 10.
[5]  *Id.* at ¶¶ 14 & 15.
[6]  *Id.* at ¶¶ 24 & 25.
[7]  *Id.* at ¶ 33.

continued to move toward Officer Ornelas.[8]  Officer Ornelas then fired two additional rounds at Sesma, which dropped him to the ground.[9]  Paramedics later arrived at the scene, and they announced that Sesma had died from his injuries.[10]

### B.   Procedural Posture

Plaintiffs Candido Sesma and Cecilia Sesma, individually and as successors in interest to decedent Charles Sesma, filed their initial action in October 2021.[11]  Plaintiffs filed their operative Amended Complaint in January 2022, asserting the following claims for relief:

- Unreasonable Search & Seizure—Detention & Arrest (42 U.S.C. § 1983);
- Unreasonable Search & Seizure—Excessive Force (42 U.S.C. § 1983);
- Unreasonable Search & Seizure—Denial of Medical Care (42 U.S.C. § 1983);
- Fourteenth Amendment—Substantive Due Process;
- Battery (wrongful death & survival);
- Negligence (wrongful death & survival); and
- Violation of Cal. Civ. Code § 52.1.[12]

In accordance with the parties' subsequent stipulation, the Court dismissed Plaintiffs' first and third claims for relief.[13]  Defendants filed the instant Motion in September 2022, and it is fully briefed.

---

[8]   *Id.* at ¶ 34.
[9]   *Id.* at ¶ 36.
[10]  *Id.* at ¶¶ 45 & 47.
[11]  *See* Compl. [ECF No. 1].
[12]  *See generally* Amended Complaint.
[13]  *See* Order Granting Stipulation Dismissing First and Third Causes of Action [ECF No. 35].

## II. LEGAL STANDARD—SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *See id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *See id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case. *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252).  The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial.  *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56.  Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c) of the Federal Rules of Civil Procedure, which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

### III.  ANALYSIS

Defendants' Motion predominately hinges on a single factual determination:  was Sesma holding a weapon when he ran at Officer Ornelas?  Although the parties dispute whether Officer Ornelas acted reasonably or under

the protection of qualified immunity when he shot Sesma, after reviewing the video of the incident provided by Defendants, the Court cannot determine with any confidence—and certainly not with the confidence that a reasonable jury could return no other verdict—that Sesma was holding a pipe in his hand, nor whether Sesma had raised his hands above shoulder-height in a threatening manner while running toward Officer Ornelas.[14]

While keeping in mind that a dispute of material fact exists regarding whether Sesma was armed at the time of the incident, the Court will address each claim for relief in turn.

### A.   Second Claim: Fourth Amendment—Excessive Force

In their Motion, Defendants raise two defenses against Plaintiffs' excessive use of force claim: (1) that Officer Ornelas's use of force was reasonable; and (2) that Officer Ornelas's actions were protected by the doctrine of qualified immunity.

#### 1.   Reasonableness of Use of Force

Defendants first challenge Plaintiffs' excessive use of force claim.[15] "The Fourth Amendment requires law enforcement officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Garlick v. Cty. of Kern*, 167 F. Supp. 3d 1117, 1144 (E.D. Cal. 2016) (citing *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985)). "To determine whether the use of force was objectively reasonable, the court balances the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Vos v. City of Newport Beach*, 892 F.3d 1024, 1030-31 (9th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The strength of the

---

[14]   DSUF ¶ 26; Ofc. Ornelas CHP-000505 Title01.mpg (the "Video") 5:00-5:18.

[15]   Motion 5:21-10:3.

government's interest is measured by examining three primary factors: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 1031 (quoting *A. K. H by & through Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016)) (alteration in original).

The most important of those factors is "whether the suspect poses an immediate threat to the safety of the officers or others." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). "Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." *Id.* at 1440. Furthermore, "[w]hen a suspect is killed and cannot himself provide an account of what took place, we must examine 'whether the officers' accounts are 'consistent with other known facts.'" *Longoria v. Pinal Cnty.*, 873 F.3d 699, 708 (9th Cir. 2017) (citing *Cruz v. City of Anaheim*, 765 F.3d 1076, 1080 n.3 (9th Cir. 2014)). "This is consistent with our duty to review the record 'from the perspective of a *reasonable* officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (citing *Graham*, 490 U.S. at 396) (emphasis in original).

Here, although Defendants cite numerous cases in which police officers' use of deadly force was determined to be reasonable by courts within the Ninth Circuit, in each case the suspect was armed.[16] Defendants cite *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013), for the proposition that "[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat," but the Video of the incident ***at a minimum*** creates a genuine dispute of material fact regarding whether it was reasonable for Officer Ornelas to believe that

---

[16] *Id.* at 6:3-10:3.

-7-

Sesma was armed. *See* Fed. R. Civ. P. 56(a). Furthermore, while evaluating the facts in a light most favorable to Plaintiffs—the non-moving parties—the Video provided ***by Defendants*** does not support the contention that Sesma was armed at the time of the shooting. *See Barlow*, 943 F.2d at 1135. Although Plaintiffs also present evidence and expert testimony that the Video shows that Sesma was unarmed, Defendants' Video itself shows that a genuine dispute of material fact exists.[17]

Furthermore, the circumstances leading up to the confrontation between Officer Ornelas and Sesma undermine Defendants' Motion. Sesma may have held the pipe prior to the shooting, but at no point did he act aggressively toward any police officer or bystander.[18] Sesma was suspected of committing a misdemeanor hit-and-run involving property damage, and he was not reported to Officer Ornelas as dangerous.[19] Without indications that Sesma's behavior represented an objective threat to Officer Ornelas, the Court cannot conclude that summary judgment is appropriate here. *See George*, 736 F.3d at 838 (affirming the denial of summary judgment for a police officer involved in the shooting death of an armed suspect in the absence of "objective factors to justify such a concern").

2. **Qualified Immunity**

Defendants additionally argue that Officer Ornelas's actions were protected by qualified immunity.[20] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

---

[17] Decl. of Scott Holdaway in Supp. of the Opposition (the "Holdaway Declaration"), Ex. A [ECF No. 43-8].
[18] Opposition 11:23-12:2.
[19] DSUF ¶ 6.
[20] Motion 10:4-13:2.

which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity exists to shield an officer from liability for 'mere mistakes in judgment, whether the mistake is one of fact or one of law.'" *Longoria*, 873 F.3d at 704 (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)). "The doctrine's purpose is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Id.* (quoting *Pearson*, 555 U.S. at 231). "In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). "[W]here a defendant's entitlement to qualified immunity turns on genuinely disputed issues of fact, summary judgment is not appropriate." *Adams v. Kraft*, 828 F. Supp. 2d 1090, 1115 (N.D. Cal. 2011) (collecting cases).

  Here, Defendants' arguments for qualified immunity fail for the same reasons as those that they make regarding reasonable force—the Video evidence of the incident creates a genuine dispute of material fact.[21] Defendants cite three cases supporting qualified immunity for officers shooting armed suspects: *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010); and *Woodward v. City of Tucson*, 870 F.3d 1154, 1162-63 (9th Cir. 2017). But none of those cases supports the defense of qualified immunity for an officer who shoots an unarmed suspect, and whether Officer Ornelas reasonably believed that Sesma was armed is a disputed material fact that is inappropriate for resolution of summary judgment. *See Adams*, 828 F. Supp. 2d at 1115.

---

[21]  *See* Video 5:00-5:18; *see also* Holdaway Declaration.

### B. Fourth Claim: Fourteenth Amendment—Substantive Due Process

Defendants move for summary judgment on Plaintiffs' fourth claim for interference with their familial relationship with Sesma, pursuant to the Fourteenth Amendment and substantive due process.[22] Due process violations under the Fourteenth Amendment occur when official conduct "shocks the conscience." *Wilkinson*, 610 F.3d at 554. The Ninth Circuit has held that that standard is met when law enforcement acted with "*deliberate indifference*" or acted with "a *purpose to harm* . . . unrelated to legitimate law enforcement objectives." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (emphasis in original). "In determining whether excessive force shocks the conscience, the court must first ask 'whether the circumstances are such that actual deliberation [by the officer] is practical.'" *Id.* (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998), *as amended* (Nov. 24, 1998)).

When evaluating an officer's "actual deliberation," a court must "begin[] by asking 'whether the circumstances are such that actual deliberation' . . . before his use of force was 'practical.'" *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1003 (9th Cir. 2020), *cert. denied sub nom. Acosta v. Lam*, 142 S. Ct. 77 (2021) (citing *Wilkinson*, 610 F.3d at 554). "If actual deliberation was not practical," a court may not conclude that a Fourteenth Amendment violation occurred "unless substantial evidence indicates that he acted 'with a purpose to harm *unrelated to legitimate law enforcement objectives*.'" *Id.* (emphasis in original).

Here, the Video may show an unarmed Sesma running toward Officer Ornelas on the railroad tracks.[23] Defendants argue that Officer Ornelas "was under threat and in a situation that did not allow for safe retreat."[24] Although

---

[22] *See* Motion 13:5-14:14.
[23] *See* Video 5:00-5:18.
[24] Motion 14:1-2.

the video evidence does not clearly show Sesma holding a pipe at the time of the shooting, it is undisputed that Sesma was armed with the pipe before Officer Ornelas confronted him.[25] Both parties agree that Sesma was sitting down before he abruptly and unexpectedly started running toward Officer Ornelas.[26] Video of the incident shows that a mere five seconds passed between the time when Sesma began to run at Officer Ornelas and when Officer Ornelas fired the first rounds, with the second shots fired immediately afterward.[27]

Plaintiffs cite *Tan Lam* as an example of the Ninth Circuit denying an officer's motion for judgment as a matter of law based upon qualified immunity. But the Court concludes that that case is instructive for why Plaintiffs' Fourteenth Amendment claim fails.

In *Tan Lam*, a police officer confronted a mentally ill adult son after his father called the police and reported that his son had tried to attack him. *See Tan Lam*, 976 F.3d at 991-92. The officer confronted the son at the family's home. In the son's room, the son attacked the officer with a pair of scissors, and the officer shot the son. *See id.* at 992. The officer then retreated from the son's room to the hallway, and the then-unarmed son followed the officer into the hallway. *See id.* The officer's handgun jammed, but the officer rapidly cleared his weapon and fired again at the son—this time fatally shooting him. *See id.* at 992-93.

In *Tam Lam*, the jury found the officer liable for excessive force. *See id.* at 994. The district court denied the defendants' Rule 50(b) motion. *Id.* On appeal, the Ninth Circuit affirmed the district court's denial of the defendants' Rule 50(b) motion concerning a Fourth Amendment violation for excessive

---

[25] DSUF ¶ 14; Pl.'s Separate Statement of Genuine Disputes of Material Fact and Pl.'s Additional Statement of Undisputed Material Fact ("PSUF") [ECF No. 43-10] ¶ 14.
[26] DSUF ¶ 25; PSUF ¶ 25.
[27] Video 5:03-5:18.

-11-

force, concluding that the officer's shooting of an unarmed man was an "objectively unreasonable use of deadly force." *Id.* at 997. But the Ninth Circuit ***overturned*** the district court's denial of the defendants' Rule 50(b) motion concerning the Fourteenth Amendment claim, concluding that there was "insufficient evidence in the record to support a constitutional violation." *Id.* at 1003. The officer reasonably believed that the son was still armed when the officer fired the fatal shot, and the short duration between the first and second shot prevented the officer from engaging in actual deliberation before he fired the second fatal shot. *See id.* "If actual deliberation was not practical, we cannot conclude that [the officer] violated the Fourteenth Amendment unless substantial evidence indicates that he acted 'with a purpose to harm *unrelated to legitimate law enforcement objectives*.'" *Id.* (citing *Wilkinson*, 610 F.3d at 554). Furthermore—like in the instant action—there was no evidence that the officer acted "with a purpose to harm." *Id.* at 1004.

Here, there is no evidence that Officer Ornelas acted with any "purpose to harm *unrelated to legitimate law enforcement objectives*" when he fired his weapon at Sesma. Additionally, Officer Ornelas did not have time "actually [to] deliberate" before he shot Sesma—Officer Ornelas thought that Sesma was armed with a pipe before Sesma suddenly began sprinting at Officer Ornelas, and Officer Ornelas fired both volleys within 10 seconds. Much like the circumstances in *Tan Lam*, here the Court concludes that the record supports a Fourth Amendment violation for excessive force sufficient to defeat Defendants' motion for summary judgment, but the record cannot sustain Plaintiffs' Fourteenth Amendment claim for violation for substantive due process.

**C.    State Law Claims**

Plaintiffs' state law claims are connected to their federal claims for violations of both the Fourth and Fourteenth Amendments. Defendants

contend that under *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2011), federal excessive force claims require proof of unreasonable force.[28] Additionally, under California law, officers have a duty to use deadly force in a reasonable manner. *See Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979). Here, because granting summary judgment on the excessive force claim is not appropriate in view of the video evidence that shows that Sesma may have been unarmed at the time of the shooting, the Court likewise must deny summary judgment on Plaintiffs' battery and negligence claims.

Conversely, Plaintiffs' Bane Act claim fails for the same reasons as their claim for violation of the Fourteenth Amendment. A claimant under the Bane Act must prove not only a constitutional violation, but also "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. City of Sacramento*, 888 F.3d 1030, 1043 (quoting *Cornell v. City and County of San Francisco*, 17 Cal. App. 4th 766, 801-02 (2017)). As explained above, there is no evidence that Officer Ornelas acted with any intent to deprive Sesma of his constitutional rights, nor that Officer Ornelas shot Sesma with a purpose to harm unrelated to legitimate law enforcement objectives. *See Tan Lam*, 976 F.3d at 1003. Even if Sesma had prevailed on his Fourteenth Amendment claim, it would have been under the "actual deliberation" prong and not the "purpose to harm." Accordingly, Defendants' Motion is **GRANTED** with respect to Plaintiffs' seventh claim for relief for violation of the Bane Act.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' instant Motion for summary judgment is **GRANTED** with respect to Plaintiffs' fourth and seventh claims for relief.

---

[28] Motion 14:18-20.

-13-

2. Defendants' instant Motion for summary judgment is **DENIED** with respect to Plaintiffs' second, fifth, and sixth claims for relief.

3. The parties are **DIRECTED** to meet and confer forthwith and to file no later than February 23, 2024, a Joint Report proposing a case schedule.

4. A Scheduling Conference is **SET** for March 8, 2024, at 11:00 a.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

**IT IS SO ORDERED.**

Dated: February 13, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-14-