**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDIDO SESMA and CECILIA SESMA, individually and as successors in interest to CHARLES SESMA, deceased,<br><br>    Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA, ANDREW ORNELAS,<br><br>    Defendants. | Case No. 5:21-cv-1694- JWH (KKx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3**<br><br>Judge: Hon. John W. Holcomb<br>Hearing: May 24, 2024, 9:00 a.m.<br>Court: Ronald Reagan Federal Building, 411 W. 4th Street, Santa Ana, CA<br>Courtroom: 9D |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Candido and Cecilia Sesma oppose Defendants' Motion in Limine No. 3, which seeks to exclude the expert testimony of police practices expert Roger Clark. Mr. Clark's opinions are properly supported by the disputed facts of this case, and it is the jury's role to determine which version of those facts to accept and how much weight to give the expert opinions in light of their factual findings. Moreover, Mr. Clark's opinions fall within his area of expertise and do not constitute improper legal conclusions. The Court should therefore deny Defendants' motion.

## II.   ARGUMENT

### A.    Mr. Clark's Opinions are Properly Supported by the Facts

First, Defendants argue that Mr. Clark's opinions are unsupported by the facts in this case and should be excluded because he bases his opinions on incorrect assumptions that Officer Ornelas was yards away from Mr. Sesma rather than feet, and that Mr. Sesma was unarmed.

Plaintiffs contend that Mr. Clark's reliance on Officer Ornelas' initial statement regarding the distance between himself and Mr. Sesma at the time of the shooting is not grounds for exclusion of his expert opinions. The question of which of Officer Ornelas' varying accounts of the distance is most credible is a classic issue of fact for the jury to determine.

Officer Ornelas' statements about the distance have evolved over time, becoming shorter with each subsequent account. In his first statement to investigators, Officer Ornelas clearly and unequivocally stated that Mr. Sesma was 25 yards away when he first shot him. (Ornelas Interview, Dkt. 43-3 at 12.) Only after a break in the interview, during which he may have conferred with union representatives, did Officer Ornelas claim he had confused yards and feet. By the time of his deposition, Officer Ornelas' account had changed even more dramatically, placing Mr. Sesma 10 feet

away when he first fell to the ground, and just seven feet away when he was shot with the second volley. (Ornelas Deposition, Dkt. 38-9 at 25.)

Plaintiffs maintain that Officer Ornelas' initial statement, made closest in time to the incident, is the most reliable account of the distance. A jury could reasonably conclude that Officer Ornelas' testimony became increasingly self-serving as he had more time to strategize regarding his defense and discuss the matter with counsel. Determining which of Officer Ornelas' inconsistent statements is most credible is precisely the type of factual issue that falls within the jury's province.

Mr. Clark based his expert opinions on Plaintiffs' version of the disputed facts, while Defendants' expert based his opinions on Defendants' version. The jury must resolve the underlying factual dispute regarding the distance and then determine the appropriate weight to accord the experts' opinions in light of that finding. Mr. Clark's reliance on Officer Ornelas' initial account of the distance therefore does not warrant exclusion of his opinions.

Similarly, Plaintiffs contend that the question of whether Mr. Sesma was armed with a pipe at the time he was shot is a disputed factual issue for the jury to resolve. Once again, Plaintiffs experts appear to have some disagreement about whether Mr. Sesma was armed with a pipe when he was shot. Mr. Clark's reliance on one version of this fact does not warrant exclusion of his opinions. As the Court itself has acknowledged, a reasonable jury could conclude, based on the video evidence, that Mr. Sesma did not have a pipe in his hand when he was shot by Officer Ornelas. (Dkt. 61 at 6.) The fact that the experts relied on conflicting assumptions about this key issue does not make their opinions inadmissible. Rather, it underscores the necessity of permitting the jury to first determine the underlying facts before deciding how much weight, if any, to give each expert's opinion.

If the jury finds that Mr. Sesma was unarmed, they may find Mr. Clark's opinions more persuasive. Conversely, if they conclude Mr. Sesma was holding a

pipe, they may afford greater weight to Mr. Chapman's opinions. Ultimately, the credibility and reliability of the experts' opinions in light of the jury's factual findings is a matter for the jury to decide.

Excluding Mr. Clark's opinions because they are predicated on a particular view of a genuinely disputed factual issue would usurp the jury's role as fact-finder. Where, as here, qualified experts base their opinions on a reasonable view of key disputed facts, it is for the jury to determine which set of facts to accept and which opinions to credit in light of their factual findings. Therefore, Defendants' motion should be denied.

### B. Mr. Clark's Opinions Fall Within His Area of Expertise

Next, Defendants argue that Mr. Clark should not be allowed to testify regarding (1) his interpretation of the video evidence, (2) the order of shots based on ballistics evidence, and (3) the decedent's potential mental health crisis. Their motion should be denied because Mr. Clark's opinions are all well within his expertise.

Police practices experts base their opinions on various forms of evidence, but one critical piece of evidence is often video footage. Of course, as part of their expertise, they watch videos and determine what the video depicts. In this case, Mr. Clark opines that based on the video, "it does not even appear that Mr. Sesma had anything in his hand." This is one reasonable view of the video, as acknowledged by this court. (Dkt. 61 at 6.) Mr. Clark should be allowed to testify regarding his view of the video because it is precisely the type of evidence police practices experts typically rely on in forming their opinions and his opinion is not unreasonable, irrational, or speculative.

Defendants contend that Mr. Clark inappropriately analyzes ballistics evidence, but none of their citations to the record support such a claim. Mr. Clark does opine that Ornelas' last two shots were likely the shots that struck Decedent in the face, but that opinion is not based on ballistics. The video depicts Mr. Sesma's body position at

the time of the shots, and Mr. Clark simply describes his reasonable inference based on what can be seen in the video. In addition, given that Mr. Sesma attempted to get up after the first 5 shots, it is very unlikely that he had already been shot in the head. Because Mr. Clark's opinions regarding the order of shots are not based on ballistics, he should not be precluded from testifying on the subject.

Finally, Plaintiffs agree that Mr. Clark is not an expert in psychology. However, part of his expertise in police practices encompasses the evaluation of symptoms of mental crisis and how that evaluation affects the response that a reasonable officer is expected to have based on standard training and policies. Since his opinions in this case are limited to that sort of opinion, he should not be precluded from discussing signs that Mr. Sesma was suffering a mental health crisis and how that affects the calculus of what kind of force can appropriately be used in the situation.

### C. **Mr. Clark Should be Permitted to Testify Regarding Police Policies, Procedures and Training**

Defendants go on to argue that Mr. Clark's legal opinions and conclusions about the reasonableness or unreasonableness of the officer's actions should be excluded as an expert cannot provide opinions on the ultimate issues of law.

This is a puzzling and surprising argument because Defendants' own expert has exactly the same type of opinions, just coming to the opposite conclusion. Alison-Mayne Declaration, Exhibit 1 (Excerpts from Defense Expert Mr. Chapman's Expert Report) ("The use of force by Defendant Officer Ornelas was objectively reasonable"). However, Plaintiffs have no objection to both police practices experts refraining from opining as to the ultimate issue; Plaintiffs only ask that any such rule applies to both experts equally.

Next, Defendants argue that Mr. Clark's opinions are contrary to law, citing *Plumhoff v. Rickard*, 572 U.S. 765 (2014), for the proposition that officers need not justify every shot fired and the Ninth Circuit's Model Jury Instruction No. 9.25 for the

principle that officers need not use the least intrusive means available. Mr. Clark's opinions primarily address standard police training and practices, not constitutional law. Any apparent tension between Mr. Clark's opinions and the legal authorities cited by Defendants does not warrant exclusion of his testimony because courts routinely hold that police experts "can permissibly testify about whether [an officer's] conduct comported with applicable procedures and policies on the day of the incident, which does not constitute a legal opinion or conclusion." Godinez v. Huerta, 2018 WL 2018048, at *6 (S.D. Cal. May 1, 2018); *Smith v. City of Hemet*, 394 F.3d 689, 703 (citing expert testimony on "whether the officers' conduct comported with law enforcement standards, . . . rel[ying] upon California's Peace Officer Standards and Training"); *Cooke v. City of Stockton*, 2017 WL 6447999, at *5 (E.D. Cal. Dec. 18, 2017) ("Clark may within the scope of his expertise opine as to whether defendants complied with applicable procedures on the night of the incident"); *Molina v. City of Visalia*, 2016 WL 8730723, at *6 (E.D. Cal. Sep. 16, 2016) ("[P]laintiffs' expert will be allowed to express an opinion on whether the officers' conduct, after they got out of their vehicle, was consistent with POST.").

Furthermore, regarding *Plumhoff*, Plaintiffs contend that the Supreme Court's holding does not contradict Mr. Clark's opinion that officers must justify every shot. The key distinction is that in *Plumhoff*, the Court found the threat remained active throughout the officers' use of deadly force. The Court's holding presupposes the threat justified the initial use of deadly force and persisted until the suspect was subdued. However, if the threat dissipates at any point during the confrontation, continued use of deadly force would no longer be justified. *Plumhoff* acknowledges that where an active threat remains, officers need not pause to reassess between each shot, but it does not relieve officers of the obligation to justify individual shots in a sequence. Furthermore, Defendant Ornelas himself agrees with Mr. Clark on this point, and Defendant's own expert, Mr. Chapman agrees that at the very least Ornales

had to justify the second volley of shots separately from the first. Alison-Mayne Declaration, Exhibit 2 (Mr. Ornelas' Deposition); Alison-Mayne Declaration, Exhibit 3 (Mr. Chapman's Deposition).

As for the Ninth Circuit's model jury instruction, Plaintiffs submit that it is not inconsistent with Mr. Clark's opinions. The model instruction states that officers need not use the least intrusive means available but must act within the range of reasonable conduct. Mr. Clark's opinions do not suggest that officers must always use the least intrusive means, but rather that deadly force should be a last resort when no other reasonable alternatives exist. This is consistent with the model instruction's guidance that officers must act reasonably, even if not using the least intrusive means. Once again, Defendant Ornelas agrees that deadly force should be used as a last resort, according to his own training. Alison-Mayne Declaration, Exhibit 2 (Mr. Ornelas' Deposition).

For all these reasons, this portion of Defendants' motion should be denied.

### D. **Limiting Instructions on Relevance of Police Policies and Procedures are Unnecessary**

Finally, Defendants request that the Court provide a limiting instruction that Mr. Clark's opinions about violations of police policies and procedures are not applicable to the Fourth Amendment excessive force and state law battery claims.

Defendants' own expert witness provides extensive testimony concerning police policies and procedures. Therefore, Plaintiffs find Defendants' objection to Mr. Clark offering similar testimony to be inconsistent and without merit. Furthermore, Defendants' request for a limiting instruction is perplexing: if police policies and procedures are not relevant to the Fourth Amendment or battery claims, to what issues does Defendants contend they are relevant?

Defendants cite a lot of out-of-circuit authority, but they conspicuously fail to point the court to Ninth Circuit law that is binding in this jurisdiction. In *Smith v. City*

*of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc), the Ninth Circuit addressed this issue directly: "Discussing whether the officers' conduct comported with law enforcement standards, the expert relied upon California's Peace Officer Standards and Training . . . . A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable."); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991) (finding that testimony of "an expert on proper police procedures and policies" was relevant and admissible); *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (testimony of plaintiffs' police practices expert that officers violated law enforcement standards properly received).

The law is clear that evidence of police practices, procedures, and training are relevant in cases of excessive force, therefore, this portion of Defendants' motion should be denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion in Limine No. 3.

Respectfully submitted,
DATED: May 7, 2024,            **LAW OFFICES OF DALE K. GALIPO**

/s/     *Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorney for Plaintiffs*