1    ROB BONTA
     Attorney General of California
2    DONNA M. DEAN
     Supervising Deputy Attorney General
3    DAVID KLEHM
     Deputy Attorney General
4    State Bar No. 165302
     Emily Williams
5    Deputy Attorney General
     State Bar No. 316724
6     600 W Broadway, Ste 1800
      San Diego, CA 92101-3375
7     Ph: (619) 738-9733
      Fax:  (916) 731-2120
8     E-mail:  David.Klehm@doj.ca.gov
     *Attorneys for Defendants*
9    *State of California and Andrew Ornelas*

10                 IN THE UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14   **CANDIDO SESMA AND CECILIA**          5:21-cv-1694-JWH (KKx)
     **SESMA, INDIVIDUALLY AND AS**
15   **SUCCESSORS IN INTEREST TO**          **DEFENDANTS'  MEMORANDUM**
     **CHARLES SESMA, DECEASED,**           **OF CONTENTIONS OF FACT**
16                                          **AND LAW**

17                           Plaintiffs,    FPTC Date:  June 7, 2024
                                            Time:       1:00 p.m.
18        v.                                Courtroom:  9D

19   **STATE OF CALIFORNIA; AND**           Judge:      The Honorable John W.
     **DOES 1-20, INCLUSIVE,**                          Holcomb
20
                             Defendants.    Trial Date:  July 1, 2024
21                                          Action Filed: July 30, 2021

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     Plaintiffs' Claims ........................................................................... 1

    A.     Legal Theories ..................................................................... 1

    B.     Elements of Plaintiffs' Claims .............................................. 2

    C.     Defendants' Evidence in Opposition .................................. 10

II.    Defendants' Affirmative Defenses ............................................... 10

    A.     Legal Theories ................................................................... 10

    B.     Elements of Affirmative Defenses ..................................... 11

    C.     Defendants' Evidence in Support of Affirmative Defenses ............. 13

III.   Third Parties ................................................................................ 13

IV.    Anticipated Evidentiary Issues ................................................... 13

V.     Other Germane Issues of Law .................................................... 14

VI.    Bifurcation of Issues ................................................................... 14

VII.   Jury Trial .................................................................................... 15

VIII.  Attorneys' Fees .......................................................................... 15

IX.    Abandonment of Issues ............................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*A.D. v. Cal. Highway Patrol*
  712 F.3d 446 (9th Cir. 2013) ............................................................... 5

*Anderson v. Creighton*
  483 U.S. 641 ....................................................................................... 14

*County of Sacramento v. Lewis*
  523 U.S. 833 (1998) ............................................................................. 4

*Earley v. Pacific Elec. Ry. Co.*
  176 Cal. 79 (1917) ............................................................................... 7

*Gantt v. City of Los Angeles*
  717 F.3d 702 (9th Cir. 2013) ............................................................... 4

*Graham v. Connor*
  490 U.S. 386 (1989) ..................................................................... 2, 3, 6

*Hayes v. County of San Diego*
  57 Cal. 4th 622 (2013) ...................................................................... 8, 9

*Hernandez v. City of Pomona*
  46 Cal. 4th. 501 (2009) ........................................................................ 6

*Johnson v. Breeden*
  280 F.3d 1308 (11th Cir. 2002) .......................................................... 14

*Justus v. Atchison*
  19 Cal.3d 564 (1977) ........................................................................... 7

*Lampkins v. Thompson*
  337 F.3d 1009 (8th Cir. 2003) ............................................................ 14

*Nehad v. Browder*
  929 F.3d 1125 (9th Cir. 2019) .......................................................... 3, 4

*Orn v. City of Tacoma*
  949 F.3d 1167 (9th Cir. 2020) ............................................................. 4

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

*Ortiz v. Jordan*
    562 U.S. 180 (2011) ....................................................................... 11

*Porter v. Osborn*
    546 F.3d 1131 (9th Cir. 2008) ........................................................ 4

*Reese v. Cty. of Sacramento*
    888 F.3d 1030 (9th Cir. 2018) ........................................................ 9

*S.B. v. Cty. of San Diego*
    864 F.3d 1010 (9th Cir. 2017) ........................................................ 4

*Sandoval v. Cty. of Sonoma*
    912 F.3d 509 (9th Cir. 2018) .......................................................... 9

*Saucier v. Katz*
    533 U.S. 194 (2001) ..................................................................... 14

*Scott v. Harris*
    550 U.S. 372 (2007) ....................................................................... 3

*Stephenson v. Doe*
    332 F.3d 68 (2d Cir. 2003) ........................................................... 14

*Tatum v. City & Cty. of San Francisco*
    441 F.3d 1090 (9th Cir. 2006) ........................................................ 2

*Tennessee v. Garner*
    471 U.S. 1 (1985) ...................................................................... 3, 4

*Tuuamalemalo v. Greene*
    946 F.3d 471 (9th Cir. 2019) ......................................................... 4

*Wilkinson v. Torres*
    610 F.3d 546 (9th Cir. 2010) ......................................................... 4

STATUTES

42 U.S.C.
    § 1983 .............................................................................. 1, 2, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

California Civil Code
 § 52.1 ......................................................................................... 1

California Civil Procedure Code
 § 377.22 ..................................................................................... 7
 § 377.32 ..................................................................................... 6
 § 377.60 ..................................................................................... 7

California Government Code
 § 815.2(b) ........................................................................... 11, 12
 § 820.2 ................................................................................ 10, 11
 § 820.4 ................................................................................ 10, 11
 § 845.8(b)(3) ...................................................................... 10, 12

California Penal Code
 § 196(b) ............................................................................. 11, 12
 § 835 .................................................................................. 10, 12


**CONSTITUTIONAL PROVISIONS**

United States Constitution
 Fourth Amendment ............................................................. *passim*
 Fourteenth Amendment ........................................................ 1, 4

Defendants State of California and California Highway Patrol Officer Andrew Ornelas submit the following Memorandum of Contentions of Fact and Law, pursuant to L.R. 16-4.

**I.  PLAINTIFFS' CLAIMS**

Plaintiffs are pursuing claims that all relate to the reasonableness of Officer Ornelas's use of force against Decedent Charles Sesma on August 6, 2020, under different legal theories with additional elements and differing potential recoveries.

**A.  Legal Theories[1]**

Claim 1:  Plaintiffs Candido Sesma and Cecilia Sesma, as successors-in-interest, claim pursuant to 42 U.S.C. § 1983 that Officer Ornelas's use of force against Charles Sesma violated his Fourth Amendment rights.

Claim 2: Plaintiffs Candido Sesma and Cecilia Sesma claim, as successors-in-interest, that Officer Ornelas's use of force against Charles Sesma constituted a battery under state law.

Claim 3:  Plaintiffs Candido Sesma and Cecilia Sesma claim that Officer Ornelas was negligent under state law.

**B.  Elements of Plaintiffs' Claims**

Claim 1:  The elements of a section 1983 excessive force claim arising under the Fourth Amendment are:

1. Officer Ornelas acted under color of state law;

2. Officer Ornelas intentionally seized decedent's person;

3. The use of force was objectively unreasonable under all of the circumstances;

4. The use of force caused decedent harm; and

5. Plaintiffs Candido Sesma and Cecilia Sesma are successors-in-interest to

---

[1] Plaintiffs' First Cause of Action for Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983) and Third Cause of Action for Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983) were dismissed on September 15, 2022.  Dkt. No. 35.

1   Charles Sesma.

2   *See* Ninth Circuit Model Civil Jury Instrs. 9.3, 9.20, 9.25*; Graham v. Connor,* 490

3   U.S. 386, 395 (1989); *Tatum v. City & Cty. of San Francisco,* 441 F.3d 1090, 1100

4   n.2 (9th Cir. 2006) ("[T]he decedent's 'successor in interest' may prosecute [a

5   section 1983] survival action if the person . . . satisfies the requirements of

6   California law.").

7       In determining whether the officer used excessive force, all of the

8   circumstances known to the officer on the scene must be considered, including:

9       (1) the nature of the crime or other circumstances known to Officer Ornelas

10   at the time force was applied;

11       (2) whether Charles Sesma posed an immediate threat to the safety of Officer

12   Ornelas or others;

13       (3) whether Charles Sesma was actively resisting arrest or attempting to

14   evade arrest by flight;

15       (4) the amount of time Officer Ornelas had to determine the type and amount

16   of force that reasonably appeared necessary, and any changing circumstances

17   during that period;

18       (5) the relationship between the need for the use of force and the amount of

19   force used;

20       (6) any effort made by Officer Ornelas to temper or to limit the amount of

21   force;

22       (7) the severity of the security problem at issue;

23       (8) the availability of alternative methods to subdue Charles Sesma;

24       (9) the number of lives at risk (motorists, police officers) and the parties'

25   relative culpability; *i.e.*, which party created the dangerous situation, and which

26   party is more innocent;

27       (10) whether it was practical for Officer Ornelas to give warning of the

28   imminent use of force, and whether such warning was given;

(11) whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(12) whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

Ninth Circuit Model Civil Jury Inst. 9.25.

In general, all claims of excessive force, whether deadly or not, should be analyzed under the objective reasonableness standard of the Fourth Amendment as applied in *Scott v. Harris*, 550 U.S. 372, 381-85 (2007), *Graham v. Connor*, 490 U.S. 386, 397 (1989), *Tennessee v. Garner*, 471 U.S. 1, 7-12 (1985), and *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

In assessing reasonableness, the fact-finder should give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (citation omitted). In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

The Ninth Circuit has repeatedly emphasized that the most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *See, e.g.*, *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (internal quotation marks omitted); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). It is well-established that where a suspect threatens an officer with a weapon or where the

officer has probable cause to believe that the suspect poses a threat of death or

serious physical harm to the officer or others, the officer is justified in using deadly

force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Wilkinson v. Torres,* 610 F.3d

546, 546 (9th Cir. 2010).

Claim 2: The elements of a claim for battery claim by a peace officer are:

A peace officer may use deadly force only when necessary in defense of human

life.  Plaintiffs claim that Officer Ornelas unnecessarily used deadly force on

Charles Sesma. To establish this claim, plaintiffs must prove all of the following:

1. That Officer Ornelas intentionally touched Charles Sesma or caused

Charles Sesma to be touched;

2. That Officer Ornelas used deadly force on Charles Sesma;

3. That Officer Ornelas's use of deadly force was not necessary to defend

human life;

4. That Charles Sesma was killed;

5. That Officer Ornelas's use of deadly force was a substantial factor in

causing Charles Sesma's death; and

6. That Plaintiffs Candido Sesma and Cecilia Sesma are successors-in-

interest to Charles Sesma.

Officer Ornelas's use of deadly force was necessary to defend human life

only if a reasonable officer in the same situation would have believed, based on the

totality of the circumstances known to or perceived by Officer Ornelas at the time,

that deadly force was necessary to defend against an imminent threat of death or

serious bodily harm to Officer Ornelas.

A person being arrested/detained has a duty not to use force to resist the

peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing

death or serious bodily injury, including, but not limited to, the discharge of a

1    firearm.

2          A threat of death or serious bodily injury is "imminent" when, based on the

3    totality of the circumstances, a reasonable officer in the same situation would

4    believe that a person has the present ability, opportunity, and apparent intent to

5    immediately cause death or serious bodily injury to the peace officer or another

6    person. An imminent harm is not merely a fear of future harm, no matter how great

7    the fear and no matter how great the likelihood of the harm, but is one that, from

8    appearances, must be instantly confronted and addressed.

9          "Totality of the circumstances" means all facts known to the peace officer at

10   the time, including the conduct of Officer Ornelas and Charles Sesma leading up to

11   the use of deadly force. In determining whether Officer Ornelas's use of deadly

12   force was necessary in defense of human life, you must consider Officer Ornelas's

13   tactical conduct and decisions before using deadly force on Charles Sesma and

14   whether Officer Ornelas used other available resources and techniques as an

15   alternative to deadly force, if it was reasonably safe and feasible to do so.

16   A peace officer who makes or attempts to make an arrest does not have to retreat or

17   stop because the person being arrested is resisting or threatening to resist. Tactical

18   repositioning or other deescalation tactics are not retreat. A peace officer does not

19   lose the right to self-defense by use of objectively reasonable force to effect the

20   arrest or to prevent escape or to overcome resistance. A peace officer does,

21   however, have a duty to use reasonable tactical repositioning or other de-escalation

22   tactics.

23   CACI 1305B.

24         The same *Graham* factors apply to the reasonableness of the use of force as

25   under a Fourth Amendment claim.  *Hernandez v. City of Pomona*, 46 Cal. 4th. 501,

26   514 (2009).  As with Fourth Amendment claims, a claim for battery is a personal

27   right that may not be vicariously asserted. See, Cal. Civ. Proc. Code § 377.32.

28   While plaintiffs may step into decedent's shoes to prosecute this claim on his

behalf, they have no standing to do so for themselves because Officer Ornelas did not commit a battery against plaintiffs.  Indeed, it has been established that "wrongful death" damages compensate a plaintiff for his or her own independent pecuniary injury suffered by loss of the decedent, and are separate and distinct from any damages recoverable by decedent had he or she survived.  *See*, Cal. Civ. Proc. Code §§ 377.22, 377.60; *Earley v. Pacific Elec. Ry. Co*., 176 Cal. 79, 81 (1917); *Justus v. Atchison*, l 9 Cal.3d 564, 572, 573 (1977).

Claim 3:   The elements of a negligence claim against a peace officer for use of deadly force are:

1. Officer Ornelas was a peace officer;

2. Officer Ornelas used deadly force on Charles Sesma;

3. Officer Ornelas's use of deadly force was not necessary to defend human life;

4. Charles Sesma was killed; and

5. Officer Ornelas's use of deadly force was a substantial factor in causing Charles Sesma's death.

Officer Ornelas's use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Ornelas at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Officer Ornelas.

A person being arrested/detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another

1    person. An imminent harm is not merely a fear of future harm, no matter how great
2    the fear and no matter how great the likelihood of the harm, but is one that, from
3    appearances, must be instantly confronted and addressed.

4        "Totality of the circumstances" means all facts known to or perceived by the
5    peace officer at the time, including the conduct of Officer Ornelas and Charles
6    Sesma leading up to the use of deadly force. In determining whether Officer
7    Ornelas's use of deadly force was necessary in defense of human life, you must
8    consider Officer Ornelas's tactical conduct and decisions before using deadly force
9    on Charles Sesma and whether Officer Ornelas used other available resources and
10   techniques as an alternative to deadly force, if it was reasonably safe and feasible to
11   an objectively reasonable officer.

12       A peace officer who makes or attempts to make an arrest does not have to
13   retreat or stop because the person being arrested is resisting or threatening to resist.
14   Tactical repositioning or other deescalation tactics are not retreat. A peace officer
15   does not lose the right to self-defense by using objectively reasonable force to
16   arrest/detain or overcome resistance.
17   CACI 441.

18       Plaintiffs contend that defendants are liable for negligence based on alleged
19   tactical mistakes prior to the shooting.  Under California law negligence liability
20   "can arise if the tactical conduct and decisions leading up to the use of deadly force
21   [by law enforcement] show, as part of the totality of circumstances, that the use of
22   deadly force was unreasonable." *Hayes v. County of San Diego*, 57 Cal. 4th 622,
23   626 (2013).  The California, Supreme Court has held that:

24       [W]here the preshooting conduct did not cause the plaintiff any injury
25       independent of the injury resulting from the shooting, the reasonableness
26       of the officers' preshooting conduct should not be considered in isolation.
27       Rather, it should be considered in relation to the question whether the
28       officers' ultimate use of deadly force was reasonable.

1    *Hayes*, 57 Cal. 4th at 632.

2

3         **C.    Defendants' Evidence in Opposition**

4         The key relevant evidence in opposition to plaintiffs' claims will be:

5         1.    The prior statements and testimony of Officer Ornelas.

6         2.    Testimony by eyewitnesses.

7         3.    Evidence gathered of the incident, including but not limited to,

8    photographs, witness statements, dispatch recordings and logs, videos, and the

9    reports and testimony of law enforcement investigators and forensic specialists

10   regarding the evidence.

11        4.    Decedent's prior criminal, employment and medical records.

12        5.    Decedent's writings.

13        6.    Plaintiffs' responses to discovery.

14        7.    Expert testimony by Clarence Chapman regarding police procedures,

15   including all the underlying evidence he relied on in reaching his conclusions.

16        8.    Expert testimony by Rocky Edwards regarding shooting reconstruction,

17   including all the underlying evidence he relied on in reaching his conclusions

18        9.    Expert testimony by Parris Ward regarding the forensic analysis of audio

19   and video evidence, including all the underlying evidence he relied on in reaching

20   his conclusions.

21   **II.   DEFENDANTS' AFFIRMATIVE DEFENSES**

22        **A.    Legal Theories**

23   Defendants have several key affirmative defenses:

24   <u>Affirmative Defense 1:</u>  Qualified immunity against the Section 1983 claim.

25   <u>Affirmative Defense 2:</u> Self-defense and defense of others against the state law

26   negligence and battery claims.

27   <u>Affirmative Defense 3:</u> Comparative fault of decedent.

28   <u>Affirmative Defense 4:</u> Immunity under California Government Code § 820.2.

**Affirmative Defense 5**: Immunity under California Government Code § 820.4.

**Affirmative Defense 6**: Immunity under California Penal Code §§ 835, 835a.

**Affirmative Defense 7**: Immunity under California Government Code § 845.8(b)(3).

**Affirmative Defense 8**: Immunity under California Penal Code § 196(b).

**Affirmative Defense 9**: Immunity under California Government Code § 815.2(b)

**B.    Elements of Affirmative Defenses**

**Affirmative Defense 1**:  Qualified immunity is a legal defense for the Court to decide when raised by a non-suit or post-verdict motion. *Ortiz v. Jordan*, 562 U.S. 180, 191 (2011) (holding qualified immunity must be raised by a Rule 50 motion following trial where disputed facts precluded resolution on summary judgment).

**Affirmative Defense 2**: The elements of self-defense are:

1. Officer Ornelas reasonably believed decedent was going to harm him; and

2. Officer Ornelas only used the amount of force necessary to protect himself.

CACI 1304 - Self-Defense/Defense of Others.

**Affirmative Defense 3**:  The elements of comparative fault are:

1. Charles Sesma was negligent; and

2. Charles Sesma's negligence was a substantial factor in causing his death or plaintiffs' harm.

CACI 406, Comparative Fault.

**Affirmative Defense 4**: Immunity under California Government Code § 820.2.  The elements for this affirmative defense are:

1.    Officer Ornelas exercised discretion in using force on Charles Sesma;

2.    The discretion was vested in Officer Ornelas pursuant to his duties as a peace officer.

9

1        <u>Affirmative Defense 5</u>: Immunity under California Government Code §

2    820.4.  The elements for this affirmative defense are:

3            1.    Officer Ornelas was exercising due care;

4            2.    Officer Ornelas was enforcing the law.

5        <u>Affirmative Defense 6</u>: Immunity under California Penal Code §§ 835, 835a.

6    The elements for this affirmative defense are:

7            1.    Officer Ornelas had reasonable cause to believe Charles Sesma

8    committed a public offense;

9            2.    The force used was reasonable to overcome Charles Sesma's resistance

10   and in protection of the life and safety of Officer Ornelas;

11           3.    Charles Sesma was subject to restraint reasonable to overcome his

12   resistance and in protection of the life and safety of Officer Ornelas.

13       <u>Affirmative Defense 7</u>: Immunity under California Government Code §

14   845.8(b)(3).  The element for this affirmative defense is:

15       Decedent was resisting arrest at the time he was injured.

16       <u>Affirmative Defense 8</u>: Immunity under California Penal Code § 196(b).  The

17   elements for this affirmative defense are:

18       Officer Ornelas is not liable for the death of Charles Sesma so long as:

19           1.    Officer Ornelas had reasonable cause to believe Charles Sesma

20   committed a public offense;

21           2.    The force used was reasonable to overcome Charles Sesma's

22   resistance and in protection for the life and safety of Officer Ornelas; and

23           3.    Charles Sesma was subject to restraint reasonable to overcome his

24   resistance and in protection of the life and safety of Officer Ornelas.

25       <u>Affirmative Defense 9</u>: Immunity under California Government Code §

26   815.2(b).  Defendant State of California is not "liable for an injury resulting from

27   an act or omission of an employee of the public entity where the employee is

28   immune from liability."

**C.    Defendants' Evidence in Support of Affirmative Defenses**

Defendants' evidence in support of their affirmative defenses include:

1.    The prior statements and testimony of Officer Ornelas.

2.    Testimony by eyewitnesses.

3.    Evidence gathered of the incident, including but not limited to, photographs, witness statements, dispatch recordings and logs, videos, and the reports and testimony of law enforcement investigators and forensic specialists regarding the evidence.

4.    Decedent's prior criminal, employment and medical records.

5.    Decedent's writings.

6.    Plaintiffs' responses to discovery.

7.    Expert testimony by Clarence Chapman regarding police procedures, including all the underlying evidence he relied on in reaching his conclusions.

8.    Expert testimony by Rocky Edwards regarding shooting reconstruction, including all the underlying evidence he relied on in reaching his conclusions

9.    Expert testimony by Parris Ward regarding the forensic analysis of audio and video evidence, including all the underlying evidence he relied on in reaching his conclusions.

**III.    THIRD PARTIES**

There are no third parties asserting claims or defenses in this matter.

**IV.    ANTICIPATED EVIDENTIARY ISSUES**

There are no witnesses that are anticipated to be presented by deposition testimony at this time.

Defendants have filed the following motions in limine:

1.    Defendants' Motion in Limine No. 1 to exclude evidence of gruesome post-mortem photographs.

2.    Defendants' Motion in Limine No. 2 to exclude evidence of officers' personnel records.

1    3.  Defendants' Motion in Limine No. 3 to bifurcate punitive damages.

2    4.  Defendants' Motion in Limine No. 4 to exclude improper expert opinions.

3  **V.    OTHER GERMANE ISSUES OF LAW**

4    Officer Ornelas plans to raise the defense of qualified immunity by Rule 50

5  motion.  If raised after the close of evidence, the qualified immunity defense may

6  require special interrogatories. "In a proper case, the use of special jury

7  interrogatories going to the qualified immunity defense is not discretionary with the

8  court." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002).  "Because a

9  public official who is put to trial is entitled to have the true facts underlying his

10 qualified immunity defense decided, a timely request for jury interrogatories

11 directed toward such factual issues should be granted."  *Id; see also Lampkins v.*

12 *Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003) (holding district court properly

13 allowed special interrogatories relating to facts underpinning qualified immunity

14 defense); *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use

15 of special interrogatories in this case resolves the difficulty of requiring the jury to

16 decide 'what the facts were that the officer faced or perceived' and requiring the

17 court to make the ultimate legal determination of whether qualified immunity

18 attaches on those facts.").

19    There is no law clearly establishing that a law enforcement officer is not

20 entitled to use deadly force when confronted with a subject under the circumstances

21 in this case.  Even if Officer Ornelas may have been mistaken about the nature of

22 the threat posed by Charles Sesma, any such mistake was reasonable.  *Anderson v.*

23 *Creighton*, 483 U.S. at 641; *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Elliott*, 99

24 F.3d at 644.  There is not a "robust 'consensus of cases of persuasive authority'" on

25 this issue, either.  To the contrary, officers are on notice that they are permitted to

26 use deadly force when there is probable cause to believe there is an immediate

27 threat of serious bodily injury or death, which was the case here.

28 //

1  **VI.    BIFURCATION OF ISSUES**

2          Defendants seek bifurcation of the issue of punitive damages.

3  **VII.   JURY TRIAL**

4          All issues are triable to a jury (except as discussed in Sections IV and V), and

5  timely demands for jury have been made by all parties.

6  **VIII.  ATTORNEYS' FEES**

7          Defendants do not waive their right to attorneys' fees if the court finds the

8  action was brought in bad faith.

9  **IX.    ABANDONMENT OF ISSUES**

10         No affirmative defenses have been abandoned by defendants.

11

12  Dated:  May __, 2024                    Respectfully submitted,

13                                          ROB BONTA
                                            Attorney General of California
14                                          DONNA M. DEAN
                                            Supervising Deputy Attorney General
15

16

17                                          DAVID KLEHM
                                            EMILY WILLIAMS
18                                          Deputy Attorney General
                                            *Attorneys for Defendants State of*
19                                          *California and Andrew Ornelas*

20  LA2021603706

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

| | |
|---|---|
| Case Name: | **Candido Sesma, et al. v. State of California, et al.** |
| USDC Case No. | **5:21-cv-01694-JWH-DTB** |

I hereby certify that on **May 17, 2024**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on **May 17, 2024**, at San Diego, California.

| A. Dotson | |
|---|---|
| Declarant | Signature |

LA2021603706
84541714.docx