ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General
DAVID KLEHM
Deputy Attorney General
State Bar No. 165302
Emily Williams
Deputy Attorney General
State Bar No. 316724
  600 W Broadway, Ste 1800
  San Diego, CA 92101-3375
  Ph: (619) 738-9733
  Fax: (916) 731-2120
  E-mail: David.Klehm@doj.ca.gov
*Attorneys for Defendants*
*State of California and Andrew Ornelas*

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
*Attorneys for Plaintiffs Candido Sesma*
*and Cecilia Sesma*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CANDIDO SESMA AND CECILIA SESMA, INDIVIDUALLY AND AS SUCCESSORS IN INTEREST TO CHARLES SESMA, DECEASED,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**STATE OF CALIFORNIA; AND DOES 1-20, INCLUSIVE,**<br><br>Defendants. | 5:21-cv-1694-JWH (KKx)<br><br>**JOINT DISPUTED JURY INSTRUCTIONS**<br><br>FPTC Date:  June 7, 2024<br>Time:        1:00 p.m.<br>Courtroom:  9D<br><br>Judge:       The Honorable John W. Holcomb<br><br>Trial Date:  July 1, 2024<br>Action Filed: July 30, 2021 |

1       **PLEASE TAKE NOTICE** that Defendants State of California and Andrew

2   Ornelas and Plaintiffs Candido Sesma and Cecilia Sesma do hereby submit the

3   following Disputed Jury Instructions for the trial of this matter, which is currently

4   scheduled to take place on July 1, 2024, in Courtroom 9D of the above entitled

5   court, the Honorable John W. Holcomb presiding.

6
7   Dated:  May 24, 2024                        Respectfully submitted,

8                                        ROB BONTA
        Attorney General of California

9           DONNA M. DEAN
        Supervising Deputy Attorney General

10           */s/David Klehm*
        DAVID KLEHM

11           EMILY WILLIAMS
        Deputy Attorney General

12           *Attorneys for Defendants*
        *State of California and Andrew*

13           *Ornelas*

14
15   DATED:  April 24, 2024        LAW OFFICES OF DALE K. GALIPO

16
17           By:            */s/ Cooper Alison-Mayne*

18               Dale K. Galipo

19               Cooper Alison-Mayne
            Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

## <u>DISPUTED JURY INSTRUCTIONS</u>

| <u>NUMBER</u> | <u>TITLE</u> | <u>SOURCE</u> | <u>PAGE</u> |
|---|---|---|---|
| 1 | Claims and Defenses | 9th Cir. 1.5 | 10-12 |
| 2 | Evidence for a Limited Purpose | 9th Cir. 1.11 | 13 |
| 3 | Publicity During Trial | 9th Cir. 1.16 | 14 |
| 4 | Use of Interrogatories of a Party | 9th Cir. 2.11 | 15 |
| 5 | Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Excessive Force | 9th Cir. 9.25 | 16-22 |
| 6 | Negligent Use of Deadly Force by Peace Officer—Essential Factual Elements | CACI 441 | 23-28 |
| 7 | Causation: Multiple Causes | CACI 431 | 29 |
| 8 | Section 1983 Claim – Causation | 9th Cir. 9.2 | 30 |
| 9 | Police Officers Forced to Make Split-Second Judgments | *Graham v. Connor*, 490 U.S. 386, 396-397 (1989) | 31 |
| 10 | A Police Officer May Reasonably Use Deadly Force | *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2005), abrogated on other grounds by *County of* | 32 |

| NUMBER | TITLE | SOURCE | PAGE |
|--------|-------|--------|------|
| | | *Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017) | |
| 11 | Reasonable Use of Deadly Force | *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) | 33 |
| 12 | The Fourth Amendment Does Not Require Officers to Wait | *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996) | 34-35 |
| 13 | A Police Officer Can Act Based on Apparent Danger | *People v. Minifie*, 13 Cal. 4th 1055, 1068 (1996); *Moreland v. Las Vegas Metro Police Dep't*, 159 F.3d 365, 371, n.4 (9th Cir. 1998) | 36-37 |
| 14 | Mistaken Perception | *Krueger v. Fuhr*, 991 F.2d 435,439 (8th Cir. 1993) | 38 |
| 15 | Fourth Amendment Does Not Require Omniscience | *Elliott v. Leavitt*, 99 F.3d 640,644 (4th Cir. 1996) | 39-40 |

| NUMBER | TITLE | SOURCE | PAGE |
|---|---|---|---|
| 16 | Police Officer Not Required to Avail Himself of Least Intrusive Means of Responding to a Situation | *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994) | 41-42 |
| 17 | Determination of Reasonableness –at Moment of Use of Force | *Graham v. Connor*, 490 U.S. 386, 396, (1989); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) | 43 |
| 18 | Willful Resistance, Delay, or Obstruction of a Peace Officer | Cal. Pen. Code § 148(a)(l); *People v. Yuen,* 32 Cal.App.2d 151 (1939); *People v. Alaniz*, 182 Cal.App.3d 903, 908 (1986); *Smith v. City of Hemet*, 394 F.3d 689, 697 (9th Cir. 2004) | 44 |
| 19 | Instruction Concerning "Pre-Shooting Conduct" | *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002), abrogated on other grounds by *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017); *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 | 45-46 |

| **NUMBER** | **TITLE** | **SOURCE** | **PAGE** |
|---|---|---|---|
| | | (2015); *Pettersen v. County of Los Angeles*, No. CV 14-4699 DSF (AGRx), 2015 WL 13333499, at *6 (C.D. Cal. 2015); *Fewell v. California*, No. CV 16-1934 DSF (JEMx), 2017 WL 6043080, at *4 (C.D. Cal. 2017) | |
| 20 | Law Enforcement Agency's Internal Policies | *Whren v. United States*, 517 U.S. 806, 815 (1996); *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986); *Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001); *Smith v. Freland,* 954 F.2d 343, 347 (6th Cir. 1992); *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir. 1989); *Lehto v. City of Oxnard*, 171 Cal.App.3d 285, 294-295 (1985); *Campbell v. Burt*, 141 F. 3d 927, 930 (9th Cir. | 47-49 |

| NUMBER | TITLE | SOURCE | PAGE |
|--------|-------|--------|------|
| | | 1998); *Hovater v. Robinson*, 1 F.3d 1063, 1068  n.4 (10th Cir. 1993); *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993); *Doe v. Connecticut Dept of Child & Youth Services*, 911 F.2d 868, 869 (2nd Cir. 1990) | |
| 21 | Expert Witness Testimony Concerning Use of Force | *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994); *Reynolds v. County of San Diego*, 84 F.3d 1162 (9th Cir. 1996); *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002), abrogated on other grounds by *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017) | 50-51 |
| 22 | Merely Negligent Conduct is Not a Civil Rights Violation | *Daniels v. Williams*, 474 U.S. 327 (1986); *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir, 2002 abrogated on other grounds by *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017); *Brower v. County of lnyo*, 489 | 52-53 |

| **NUMBER** | **TITLE** | **SOURCE** | **PAGE** |
|:---:|:---:|:---:|:---:|
|  |  | U.S. 593, 596-97 (1989) |  |
| 23 | Negligence – Essential Factual Elements | CACI 400 | 54 |
| 24 | Police Officer Not Required to Use "Most Reasonable" Action | *Hayes v. County of San Diego,* 57 Cal.4th 622, 632 (2013) (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537-538 (2009)) | 55 |
| 25 | Exercise of Discretion | Cal. Gov. Code § 820.2 | 56-57 |
| 26 | Execution or Enforcement of Laws | Cal. Gov. Code § 820.4 | 58 |
| 27 | Persons Resisting Arrest | Cal. Gov. Code § 845.8(b)(3) | 59 |
| 28 | No Punitive Damages | CACI 3924 | 60 |
| 29 | Punitive Damages – Calculation<br><br>**[*To Be Read in Punitive Damages Phase of Trial Only*]** | 9th Cir. 5.5 | 61 |

| **NUMBER** | **TITLE** | **SOURCE** | **PAGE** |
|:---:|:---:|:---:|:---:|
| 30 | Introduction to the Special Verdict Form | CACI 5012 | 62 |
| 31 | Cautionary Instructions | 9th Cir. 2.0 | 63-64 |
| 32 | Vicarious Liability—Legal Relationship Not Disputed | CACI 3703 | 65-66 |

**INSTRUCTION NO. 1.**

**PLAINTIFFS' INSTRUCTION RE CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

This case involves the shooting of Charles Sesma by California Highway Patrol Officer Andrew Ornelas.  The plaintiffs are Candido Sesma and Cecilia Sesma, who are the parents of the decedent, Charles Sesma. The defendants are Andrew Ornelas and the State of California.  Plaintiffs claim that Andrew Ornelas used excessive and unreasonable force against the decedent and was negligent. The Plaintiffs seek damages as permitted by law.

The Defendants deny Plaintiffs' claims and contend the use of force was reasonable under the circumstances.

Source: Ninth Circuit Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.5

**Plaintiffs' Contentions in Support of Proposed Instruction**

This instruction is concise and to the point. The jury needs to be informed in the clearest way possible what the nature of the claims are. Detailed information about the burden of proof or the methods of proving these claims should be left out at this point, because those details are fully fleshed out in later jury instructions.

**Defendants' Objections to Proposed Instruction**

This proposed instruction makes minimal reference to Defendants' contentions, and thereby unfairly deprives Defendants of a fair initial representation to the jury about the content of the case.  See Defendants' Proposed Instruction based on Ninth Circuit Model Jury Instr. 1.5.

**INSTRUCTION NO. 1**

**DEFENDANTS' INSTRUCTION RE CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiffs Candido Sesma and Cecilia Sesma claim that California Highway Patrol Officer Andrew Ornelas used excessive force and was negligent during a law enforcement encounter that occurred on August 6, 2020, on a railroad bridge in Ontario, California.  During that encounter, Andrew Ornelas shot Decedent Charles Sesma, plaintiffs' son.  The shooting resulted in the death of Charles Sesma.  The plaintiffs have the burden of proving that the shooting amounted to excessive force and that Andrew Ornelas was negligent.

Andrew Ornelas denies each and all of plaintiffs' claims and contends that he acted reasonably under the totality of the circumstances during the incident involving Charles Sesma, using only reasonable force on Charles Sesma in self-defense under circumstances that were tense, uncertain, and rapidly evolving. Andrew Ornelas further contends that he was not negligent and that Charles Sesma's negligence caused or contributed to his death.


Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.5 (modified)


**Defendants' Contentions in Support of Proposed Instruction**

Defendants submit the proposed instruction, which more accurately and completely captures the central claims and theories to be advanced by the parties at trial, including a more complete representation of Defendants' position than that reflected in Plaintiffs' proposed instruction.

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs content that this instruction is unnecessarily complex and includes

1   excessive details for a case statement.

2

3   Plaintiffs maintain that information about the burden of proof should be omitted

4   from this instruction, as there is a separate, dedicated jury instruction addressing

5   this topic. Likewise, Plaintiffs assert that it is inappropriate to include a limited

6   selection of factors for determining whether the shooting was excessive or negligent

7   in this instruction, as there are multiple jury instructions that comprehensively

8   address these factors. Plaintiffs contend that the inclusion of a subset of factors here

9   allows the defendants to highlight those factors in a manner that favors their case.

10  Plaintiffs propose that the case statement should be concise and focused on

11  informing the jury of the claims being brought, while leaving the detailed

12  explanations of these claims to be addressed in separate, specific instructions.

13  Plaintiffs propose the simpler language proposed by Plaintiff above.

**INSTRUCTION NO. 2.**

**DEFENDANTS' INSTRUCTION RE EVIDENCE FOR A LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and for no other purpose.]

Authority: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.11

**Defendants' Contentions in Support of Proposed Instruction**

Defendants submit this proposed instruction with the expectation that, based on the parties' respective Motions in Limine, evidence may be admitted at trial for specific and limited purposes. The proposed instruction is an unmodified model instruction provided by the Ninth Circuit, which means the content of the instruction should not be subject to reasonable dispute.

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs are not sure at the moment whether this proposed instruction is necessary. Plaintiff doubt there will be significant news coverage of this trial and believe that the jury need not receive this instruction.

1
2

## INSTRUCTION NO. 3.

## DEFENDANTS' INSTRUCTION RE PUBLICITY DURING TRIAL

3      If there is any news media account or commentary about the case or anything

4  to do with it, you must ignore it. You must not read, watch or listen to any news

5  media account or commentary about the case or anything to do with it. The case

6  must be decided by you solely and exclusively on the evidence that will be received

7  in the case and on my instructions as to the law that applies. If any juror is exposed

8  to any outside information, please notify me immediately.

9

10  <u>Authority</u>: Manual of Model Jury Instructions for the Ninth Circuit (2017), 1.16

11

12  **<u>Defendants' Contentions in Support of Proposed Instruction</u>**

13  Defendants submit this proposed instruction with the expectation that, given that

14  the case arises from an officer involved shooting, there will likely be media

15  coverage of the trial. The proposed instruction is an unmodified model instruction

16  provided by the Ninth Circuit, which means the content of the instruction should

17  not be subject to reasonable dispute.

18  **<u>Plaintiffs' Objections to Proposed Instruction</u>**

19  Plaintiffs are not sure at the moment whether this proposed instruction is necessary.

20  Plaintiff doubt there will be significant news coverage of this trial and believe that

21  the jury need not receive this instruction.

22
23
24
25
26
27
28

# INSTRUCTION NO. 4.

## DEFENDANTS' INSTRUCTION RE USE OF INTERROGATORIES OF A PARTY

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

<u>Authority:</u> Manual of Model Jury Instructions for the Ninth Circuit (2017), 2.11

**<u>Defendants' Contentions in Support of Proposed Instruction</u>**

Defendants submit this proposed instruction with the expectation that they will submit evidence of plaintiffs' answer to interrogatories at trial. The proposed instruction is an unmodified model instruction provided by the Ninth Circuit, which means the content of the instruction should not be subject to reasonable dispute.

**<u>Plaintiffs' Objections to Proposed Instruction</u>**

Plaintiffs object to this instruction as Plaintiffs are not sure this instruction is necessary at this time.

**INSTRUCTION NO. 5**

**PLAINTIFFS' INSTRUCTION RE FOURTH AMENDMENT—**

**UNREASONABLE SEIZURE OF PERSON—EXCESSIVE FORCE**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or defending himself.  Therefore, in order to prove an unreasonable seizure by excessive force in this case, the Plaintiffs must prove by a preponderance of the evidence that Andrew Ornelas used excessive force against the decedent, Charles Sesma.

Under the Fourth Amendment, an officer may only use only such force as is "objectively reasonable" under all of the circumstances.  You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, the officer's subjective intent or motive is not relevant to your inquiry.

In determining whether Andrew Ornelas used excessive force in this case, consider all of the circumstances known to Andrew Ornelas, including:

    1.    The nature of the crime or other circumstances known to the officer at the time force was applied;

    2.    Whether the decedent posed an immediate threat to the safety of the officer or to others;

    3.    Whether the decedent was actively resisting arrest or attempting to evade arrest by flight;

    4.    The amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

    5.    The relationship between the need for the use of force and the amount of force used;

6.      The extent of the decedent's injury;

7.      Any effort made by the officer to temper or to limit the amount of force;

8.      The severity of the security problem at issue;

9.      The availability of alternative methods to take the decedent into custody;

10.    Whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;

11.    Whether it should have been apparent to the officer that the person he used force against was emotionally disturbed;

12.    Whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm;

13.    How quickly the officer used deadly force after encountering the individual

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the decedent has committed or was committing a crime.

Source:  Ninth Circuit Manual of Model Jury Civil Instructions (2022) No. 9.25 (modified).

**Plaintiffs' Contentions in Support of Proposed Instruction**

Plaintiffs propose this version of Model Jury Civil Instructions No. 9.25 as the most appropriate given the facts of this case.

Responding to Defendants' objections below:

The comment to Model Jury Civil Instructions No. 9.25 lists Plaintiffs' 13th

factor as an "[a]dditional factors set forth by Ninth Circuit in prior cases include" and states that when "deadly force is at issue, how quickly the officer used deadly force after encountering the individual." (citing *A. K. H v. City of Tustin*, 837 F.3d 1005, 1012 (9th Cir. 2016) (finding "most important" that officer at issue "escalated to deadly force very quickly").

The instruction that discusses number of lives at risk and cites motorists as an example is more appropriate for cases that involve a car chase. The instruction is not helpful here.

The model instruction does not contain language saying that the most important factor is "whether the suspect posed an immediate threat to the safety of the officer or others." Plaintiffs believe this language was left out wisely, as it is for the jury to weight the factors.

**<u>Defendants' Objections to Proposed Instruction</u>**

This instruction is inconsistent with the current Ninth Circuit Manual of Model Jury Civil Instructions No. 9.25 (*Revised Dec. 2023*)

The ninth factor is inapplicable because Officer Ornelas was not trying to take the decedent into custody at the time decedent ran at him while armed with a pipe.

The thirteenth factor is not a factor listed in the current version of Ninth Circuit Manual of Model Jury Civil Instructions No. 9.25 (*Revised Dec. 2023*), and is unnecessaeily repetitive of the fourth factor.

The proposed instruction is incomplete with respect to the factors to be considered.  The instruction should include the following factors: (1) "the number of lives at risk (motorists, police officers) and the parties' relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;" (3) "the severity of the security problem at issue."

1          The instruction also does not explain that the most important factor is

2    "whether the suspect posed an immediate threat to the safety of the officer or

3    others."  The Ninth Circuit has repeatedly emphasized that the most important

4    factor is "whether the suspect posed an immediate threat to the safety of the officers

5    or others."  *See, e.g., S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir.

6    2017) (internal quotation marks omitted); *Orn v. City of Tacoma*, 949 F.3d 1167

7    (9th Cir. 2020).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 5.**

**DEFENDANTS' INSTRUCTION RE PARTICULAR RIGHTS—FOURTH
AMENDMENT—UNREASONABLE SEIZURE OF PERSON—EXCESSIVE
FORCE**

In general, a seizure of a person is unreasonable under the Fourth
Amendment if a police officer uses excessive force in making a lawful arrest or in
defending himself or others.  Therefore, to establish an unreasonable seizure in this
case, the plaintiffs must prove by a preponderance of the evidence that Andrew
Ornelas used excessive force.

Under the Fourth Amendment, a police officer may use only such force as is
"objectively reasonable" under all of the circumstances.  You must judge the
reasonableness of a particular use of force from the perspective of a reasonable
officer on the scene and not with the 20/20 vision of hindsight.  Although the facts
known to Andrew Ornelas are relevant to your inquiry, Andrew Ornelas's
subjective intent or motive is not relevant to your inquiry.

In determining whether Andrew Ornelas used excessive force in this case,
consider all of the circumstances known to Andrew Ornelas on the scene,
including:

1. the nature of the crime or other circumstances known to Officer Ornelas at
the time force was applied;

2. whether Charles Sesma posed an immediate threat to the safety of Officer
Ornelas or others;

3. whether Charles Sesma was actively resisting arrest or attempting to evade
arrest by flight;

4. the amount of time Officer Ornelas had to determine the type and amount
of force that reasonably appeared necessary, and any changing circumstances
during that period;

5. the relationship between the need for the use of force and the amount of

force used;

6. any effort made by Officer Ornelas to temper or to limit the amount of force;

7. the severity of the security problem at issue;

8. the availability of alternative methods to subdue Charles Sesma;

9. the number of lives at risk (motorists, police officers) and the parties' relative culpability; *i.e.*, which party created the dangerous situation, and which party is more innocent;

10. whether it was practical for Officer Ornelas to give warning of the imminent use of force, and whether such warning was given;

11. whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

12. whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime involving the infliction or threatened infliction of serious physical harm.

The most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others." Where deadly force is used, the officer need only have "probable cause to believe that the suspect poses a significant threat of death of serious physical injury." "Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that a suspect posed such a threat.

Authority: Ninth Circuit Manual of Model Jury Civil Instructions No. 9.25 (*Revised Dec. 2023*)

**Defendants' Contentions in Support of Proposed Instruction**

Defendants' proposed instruction conforms to current Ninth Circuit Manual of Model Jury Civil Instructions No. 9.25 (*Revised Dec. 2023*). Defendants' proposed instruction also includes factors omitted by plaintiffs that are relevant and

1   applicable in this case.

2

3   **<u>Plaintiffs' Objections to Proposed Instruction</u>**

4   Plaintiffs object to this instruction because there is no factual basis for element (9),

5   given that this instruction generally only applies to vehicle chase cases. Further,

6   Plaintiffs object to this instruction as incomplete, and propose the inclusion of the

7   factors listed above in Plaintiffs version of this instruction.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 6**

**PLAINTIFFS' VERSION: NEGLIGENT USE OF DEADLY FORCE BY PEACE OFFICER—ESSENTIAL FACTUAL ELEMENTS**

A peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Andrew Ornelas was negligent in using deadly force to detain Charles Sesma. To establish this claim, plaintiffs must prove all of the following:

1.  That Andrew Ornelas was a peace officer;

2.  That Andrew Ornelas used deadly force on Charles Sesma;

3.  That Andrew Ornelas's use of deadly force was not necessary to defend human life;

4.  That Charles Sesma was killed; and

5.  That Andrew Ornelas's use of deadly force was a substantial factor in causing Charles Sesma's death.

Andrew Ornelas' use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Andrew Ornelas at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Andrew Ornelas or any other person.

A peace officer must not use deadly force against a person based only on the danger that person poses to himself, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A person being arrested/detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by Andrew Ornelas at the time of the shooting, including the conduct of Andrew Ornelas and the decedent leading up to the use of deadly force. In determining whether Andrew Ornelas' use of deadly force was necessary in defense of human life, you must consider Andrew Ornelas' tactical conduct and decisions before using deadly force against the decedent and whether Andrew Ornelas used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer. You must also consider whether Andrew Ornelas knew or had reason to know that the person against whom they used force was suffering from a physical, mental health, developmental, or intellectual disability that may have affected the person's ability to understand or comply with commands from the officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance.

1    <u>Source</u>: CACI 441.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' VERSION: NEGLIGENT USE OF DEADLY FORCE BY PEACE OFFICER—ESSENTIAL FACTUAL ELEMENTS**

A peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Andrew Ornelas was negligent in using deadly force to arrest/detain or overcome resistance to him by Charles Sesma. To establish this claim, plaintiffs must prove all of the following:

6. That Andrew Ornelas was a peace officer;

7. That Andrew Ornelas used deadly force on Charles Sesma;

8. That Andrew Ornelas's use of deadly force was not necessary to defend human life;

9. That Charles Sesma was killed; and

10. That Andrew Ornelas's use of deadly force was a substantial factor in causing Charles Sesma's death.

Andrew Ornelas' use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Andrew Ornelas at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Andrew Ornelas or any other person.

A peace officer must not use deadly force against a person based only on the danger that person poses to himself, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A person being arrested/detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

1

2

3

4

5

6

7

 A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

8

9

10

11

12

13

14

15

16

17

18

19

 "Totality of the circumstances" means all facts known to or perceived by Andrew Ornelas at the time of the shooting, including the conduct of Andrew Ornelas and the decedent leading up to the use of deadly force. In determining whether Andrew Ornelas' use of deadly force was necessary in defense of human life, you must consider Andrew Ornelas' tactical conduct and decisions before using deadly force against the decedent and whether Andrew Ornelas used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer. You must also consider whether Andrew Ornelas knew or had reason to know that the person against whom they used force was suffering from a physical, mental health, developmental, or intellectual disability that may have affected the person's ability to understand or comply with commands from the officer.

20

21

22

23

24

 A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance.

25

26

Source: CACI 441.

27

28

**<u>Defendants' Contentions in Support of Proposed Instruction</u>**

This instruction is tailored made for the facts of this case because Officer Ornelas had probable cause to arrest Mr. Sesma and was in the process of locating him to make the arrest after Mr. Sesma fled the scene of multiple hit and run collisions. Mr. Sesma's conduct of assaulting the peace officer attempting to arrest him falls squarely within the definitions of "resisting" as that term is used in this instruction.

**<u>Plaintiffs' Objections to Proposed Instruction</u>**

The parties only have a dispute regarding the second sentence. Plaintiffs contend that the model instruction implies that we should choose the most appropriate options instead of including all the optional language provided in the model instruction. Plaintiffs believe their version is the most appropriate given the facts of this case because Ornelas was not arresting Sesma and Sesma was not resisting.

**INSTRUCTION NO. 7**
**PLAINTIFF'S INSTRUCTION RE CAUSATION: MULTIPLE CAUSES**

A person's negligence may combine with another factor to cause harm. If you find that Andrew Ornelas' negligence was a substantial factor in causing Charles Sesma's harm, then Andrew Ornelas is responsible for the harm. Andrew Ornelas cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Charles Sesma's harm.

Source:  CACI 431.

1
2
3

**INSTRUCTION NO. 8**

**DEFENDANTS' INSTRUCTION RE SECTION 1983 CLAIM –**

**CAUSATION**

4    It is plaintiffs' burden to prove that Andrew Ornelas's conduct was the

5  actionable cause of their claimed injuries.  This inquiry must be individualized and

6  focus on the duties and responsibilities of Andrew Ornelas and the acts or

7  omissions of Andrew Ornelas alleged to have caused a constitutional deprivation.

8

9  Authority: Manual of Model Jury Instructions for the Ninth Circuit (Dec. 2023),

10 9.2 comment; *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008);

11 *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)

12

13 **Defendants' Contentions in Support of Proposed Instruction**

14 Defendants' proposed instruction tracks governing law on causation for claims

15 pursued through 42 U.S.C. § 1983, including cases cited in the comment to

16 Manual of Model Jury Instructions for the Ninth Circuit (Dec. 2023), 9.2.

17 **Plaintiffs' Objections to Proposed Instruction**

18 Plaintiffs object to this instruction in its entirety because it should be included in

19 modified 9th Circuit model instruction 9.3 and not as a separate instruction.

20 Delivering this instruction as a separate instruction unnecessarily emphasizes this

21 element of the cause of action. This instruction is especially inappropriate here

22 because there is only one officer allegedly at fault so instruction the jury that the

23 "inquiry must be individualized" is unnecessary. This instruction is better suited to

24 cases where multiple officers are involved in a constitutional violation and the jury

25 needs to be reminded that each of their liability needs to be determined

26 individually.

27

28

1

2

3

## INSTRUCTION NO. 9

## DEFENDANTS' INSTRUCTION RE POLICE OFFICERS FORCED TO MAKE SPLIT-SECOND JUDGMENTS

4

5

6

7

All determinations of unreasonable force must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

8

9

10

Authority: *Graham v. Connor*, 490 U.S. 386, 396-397 (1989)

11

### Defendants' Contentions in Support of Proposed Instruction

12

13

14

15

16

17

18

Defendants' proposed instruction is not cumulative or duplicative of Defendants' proposed "excessive force" instruction. Rather, it supplements that instruction by advising the jury that peace officers are to be given a reasonable amount of breathing room to make, often times, life or death decisions in a split-second. The facts of this case support this instruction, as the subject shooting evolved and ended quickly, with Defendant making a snap-judgment concerning the lives and safety of himself and others.

19

### Plaintiffs' Objections to Proposed Instruction

20

21

22

23

24

25

Plaintiffs object to this proposed instruction as unnecessary, improper, and confusing the jury.  The language contains in Model Instruction 9.25 already addresses this issue with less prejudicial language when it advises the jury that reasonableness must be judged from the perspective of an officer at the scene and not with 20/20 hindsight.  Moreover, singling out an element of the use of force "totality of the circumstances" analysis is unduly prejudicial to Plaintiffs.

26

27

28

# INSTRUCTION NO. 10

## DEFENDANTS' INSTRUCTION RE A POLICE OFFICER MAY REASONABLY USE DEADLY FORCE

A police officer may reasonably use deadly force against an unarmed suspect where he has a reasonable belief that the suspect poses a threat of serious physical harm or death, either to the officer or to others.

Authority: *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2005), abrogated on other grounds by *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017)

**Defendants' Contentions in Support of Proposed Instruction**

Defendants' proposed instruction is not cumulative or duplicative of any proposed "excessive force" instruction. In fact, the Model Ninth Circuit instruction no longer uses the word "deadly" in its title, and Plaintiffs' proposed "excessive force" instruction omits the word entirely. While the overarching standard for use of force is "reasonable under the circumstances," deadly force carries with it the requirement stated in this proposed instruction. Given that this case is a "deadly force" case, this instruction should be provided to enhance and guide the jury's assessment of "reasonableness of force."

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this instruction in its entirety because its substance is already embodied in model instruction 9.25. To reiterate and single out this instruction is improper, misleading, and unduly prejudicial. Plaintiffs object to this proposed instruction as unnecessary, improper, and confusing the jury. In addition, Plaintiffs objects in that the proper test is "immediate threat of death or serious bodily harm" to be precise.

# INSTRUCTION NO. 11.

## DEFENDANTS' INSTRUCTION RE REASONABLE USE OF DEADLY FORCE

A reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable.

Authority: *Wilkinson v. Torres,* 610 F.3d 546, 551 (9th Cir. 2010); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

**Defendants' Contentions in Support of Proposed Instruction**

Defendants' proposed instruction is not cumulative or duplicative of any proposed "excessive force" instruction. Rather, it supplements Ninth Circuit Model Instruction 9.25 (as modified by the parties) by clarifying for the jury that consideration of the "type and amount of force used" and "alternative methods" for subduing a suspect does not require the officer to resort to the least or a lesser-intrusive force option.

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this proposed instruction as unnecessary, improper, and confusing the jury, and prejudicial.  Plaintiffs object to this instruction in its entirety because its substance is already embodied in model instruction 9.25. To reiterate and single this element out would be misleading the jury, confuse the issues, and be unduly prejudicial to Plaintiffs.

# INSTRUCTION NO. 12.

## DEFENDANTS' INSTRUCTION RE THE FOURTH AMENDMENT DOES NOT REQUIRE OFFICERS TO WAIT

The Fourth Amendment does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.

Authority: *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010); *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996).

**Defendants' Contentions in Support of Proposed Instruction**

Defendants' proposed instruction is not cumulative or duplicative of any proposed "excessive force" instruction. Rather, it supplements the Model Ninth Circuit instruction on "excessive force" (as modified by the parties) by advising the jury that peace officers are to be given a reasonable amount of breathing room to make, often times, life or death decisions in a split-second. It is supported by authority that holds peace officers are entitled to defend themselves and must not wait to be attacked before doing so. *See, Terry v. Ohio*, 392 U.S. 1, 23-24 (1968) ("Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties."); *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1072 (S.D.C al. 1994)("In these circumstances, Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer."). Indeed, it is the ***potential*** for injury which justifies the use of deadly force. *See, e.g., Wilkinson*, 610 F.3d 546, 553 (9th Cir. 2010) ("[A]bsolute certainty of harm need not precede an act of self-protection."). The facts of this case support this instruction, as the subject shooting evolved and ended quickly, with Defendant making a snap-judgment concerning the lives and safety of himself and others.

1   **Plaintiffs' Objections to Proposed Instruction**

2   Plaintiffs object to this proposed instruction as unnecessary, improper, and

3   confusing the jury, and prejudicial. Such a consideration has already been

4   factored into the language of Model Instruction 9.25 and should not be further

5   singled out. This instruction is also misleading as it implicitly instructs the jury

6   that the circumstances were in fact tense and dangerous. Whether or not the

7   circumstances of this case were tense and dangerous should be left to the jury to

8   decide.

# INSTRUCTION NO. 13.

## DEFENDANTS' INSTRUCTION RE A POLICE OFFICER CAN ACT BASED ON APPARENT DANGER

If a police officer is confronted by the appearance of danger which he believes, and a reasonable person in the same position would believe, would result in death or great bodily injury, the officer may act upon those circumstances. The right of self-defense is the same whether the danger is real or merely apparent.

Authority: *People v. Minifie*, 13 Cal. 4th 1055, 1068 (1996); *Moreland v. Las Vegas Metro Police Dep't*, 159 F.3d 365, 371, n.4 (9th Cir. 1998).

## **Defendants' Contentions in Support of Proposed Instruction**

Defendants' proposed instruction is not cumulative or duplicative of any proposed "excessive force" instruction. Rather, it supplements the Model Ninth Circuit instruction on "excessive force" (as modified by the parties) by advising the jury that peace officers are to be given a reasonable amount of breathing room to make, often times, life or death decisions in a split-second. It is supported by authority that holds peace officers are entitled to defend themselves based on what they reasonably perceive. *See, Terry v. Ohio*, 392 U.S. 1, 23-24 (1968) ("Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties."); *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1072 (S.D.C al. 1994) ("In these circumstances, Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer."). Indeed, it is the ***potential*** for injury which justifies the use of deadly force. *See, e.g., Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) ("[A]bsolute certainty of harm need not precede an act of self-protection."); *Waterman v. Batton*, 393 F.3d 471, 478 (4th Cir. 2005) ("At the instant that [the suspect's] vehicle lurched forward, the vehicle ***could*** have reached Officers Batton and Heisey in

36

about one second even without accelerating further, and in even less time if it had
continued to accelerate. Thus, if the officers paused for even an instant, they risked
losing their last chance to defend themselves.") (emphasis added); *Robinson v.
Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005) ("Even if in hindsight the facts
show that [Officer] Arrugueta perhaps could have escaped unharmed, we conclude
that a reasonable officer ***could*** have perceived that Walters was using the [vehicle]
as a deadly weapon. Arrugueta had ***probable cause*** to believe that Walters posed a
***threat*** of serious physical harm.") (emphasis added); *Scott v. Edinburg*, 346 F.3d
752, 759 (7th Cir. 2003) ("Deadly force may be exercised if the suspect's actions
place the officer, his partner, or those in the immediate vicinity in imminent ***danger***
of death or serious bodily injury.") (citations omitted) (emphasis added). The facts
of this case support this instruction, as the subject shooting evolved and ended
quickly, with Defendant making a snap-judgment concerning the lives and safety of
himself and others during which the actions of Decedent were uncertain and
unpredictable.

**<u>Plaintiffs' Objections to Proposed Instruction</u>**

Plaintiffs object to this proposed instruction as unnecessary, improper, and
confusing the jury, and prejudicial.  This is a reiteration of language already
contained in Model Instruction 9.25. It is improper and prejudicial to reiterate and
single out this element again in language that is prejudicial to Plaintiffs.

1

**INSTRUCTION NO. 14.**

2

**DEFENDANTS' INSTRUCTION RE MISTAKEN PERCEPTION**

3
4

An act taken based on a mistaken perception or belief, if objectively
reasonable, does not violate the Fourth Amendment.

5

6

Authority: *Krueger v. Fuhr*, 991 F.2d 435,439 (8th Cir. 1993).

7

8

**Defendants' Contentions in Support of Proposed Instruction**

9
10
11
12
13
14

Defendants' proposed instruction is not cumulative or duplicative of any proposed
"excessive force" instruction. Rather, it supplements the Model Ninth Circuit
instruction on "excessive force" (as modified by the parties) by advising the jury
that peace officers are to be given a reasonable amount of breathing room to make,
often times, life or death decisions in a split-second. This includes mistaken
perceptions or beliefs, so long as that mistake is reasonable.

15

16

**Plaintiffs' Objections to Proposed Instruction**

17
18
19
20
21

Plaintiffs object to this proposed instruction as unnecessary, improper, and
confusing the jury. This is already a factor defendants have included in their
proposed 9.25 instruction. It is improper and prejudicial to reiterate and single out
this element again in language that is prejudicial to Plaintiffs. Moreover, Plaintiff
contends that this factor does not apply to the circumstances of this case.

22

23

24

25

26

27

28

38

# INSTRUCTION NO. 15.

## DEFENDANTS' INSTRUCTION RE FOURTH AMENDMENT DOES NOT REQUIRE OMNISCIENCE

The Fourth Amendment does not require omniscience. Officers need not be absolutely sure of the nature of the threat or the suspect's intent to cause them harm - the Constitution does not require that certitude precede the act of self-protection.

Authority: *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996).

**Defendants' Contentions in Support of Proposed Instruction**

Defendants' proposed instruction is not cumulative or duplicative of any proposed "excessive force" instruction. Rather, it supplements the Model Ninth Circuit instruction on "excessive force" (as modified by the parties) by advising the jury that peace officers are to be given a reasonable amount of breathing room to make, often times, life or death decisions in a split-second. It is supported by authority that holds peace officers are entitled to defend themselves based on what they reasonably perceive. *See, Terry v. Ohio*, 392 U.S. 1, 23-24 (1968) ("Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties."); *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1072 (S.D.C al. 1994) ("In these circumstances, Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer."). Indeed, it is the ***potential*** for injury which justifies the use of deadly force. *See, e.g., Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) ("[T]he Fourth Amendment does not require omniscience,' and absolute certainty of harm need not precede an act of self-protection."); *Waterman v. Batton*, 393 F.3d 471, 478 (4th Cir. 2005) ("At the instant that [the suspect's] vehicle lurched forward, the vehicle ***could*** have reached Officers Batton and Heisey in about one second even without accelerating further, and in even less time if it had continued to accelerate.

1    Thus, if the officers paused for even an instant, they risked losing their last chance
2    to defend themselves.") (emphasis added); *Robinson v. Arrugueta*, 415 F.3d 1252,
3    1256 (11th Cir. 2005) ("Even if in hindsight the facts show that [Officer] Arrugueta
4    perhaps could have escaped unharmed, we conclude that a reasonable officer ***could***
5    have perceived that Walters was using the [vehicle] as a deadly weapon. Arrugueta
6    had ***probable cause*** to believe that Walters posed a ***threat*** of serious physical
7    harm.") (emphasis added); *Scott v. Edinburg*, 346 F.3d 752, 759 (7th Cir. 2003)
8    ("Deadly force may be exercised if the suspect's actions place the officer, his
9    partner, or those in the immediate vicinity in imminent ***danger*** of death or serious
10   bodily injury.") (citations omitted) (emphasis added). The facts of this case support
11   this instruction, as the subject shooting evolved and ended quickly, with Defendant
12   making a snap-judgment concerning the lives and safety of himself and others.
13
14   **Plaintiffs' Objections to Proposed Instruction**
15   Plaintiffs object to this proposed instruction as unnecessary, improper, and
16   confusing the jury, and prejudicial. This consideration is already embodied in the
17   reasonableness analysis language contained in Model Instruction 9.25.
18
19
20
21
22
23
24
25
26
27
28

# INSTRUCTION NO. 16.

## DEFENDANTS' INSTRUCTION RE OFFICER NOT REQUIRED TO AVAIL HIMSELF OF LEAST INTRUSIVE MEANS OF RESPONDING TO A SITUATION

A police officer is not required to avail himself of the least intrusive means of responding to a situation; rather, the officer need only act within that range of conduct which is identified as reasonable.  The appropriate inquiry is whether the officer acted reasonably, not whether he had less intrusive alternatives available to him.

Authority: *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994)

**Defendants' Contentions in Support of Proposed Instruction**

Defendants' proposed instruction is not cumulative or duplicative of any proposed "excessive force" instruction. Rather, it supplements Ninth Circuit Model Instruction 9.25 (as modified by the parties) by clarifying for the jury that consideration of the "type and amount of force used" and "alternative methods" for subduing a suspect does not require the officer to resort to the least or a lesser-intrusive force option.

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this proposed instruction as unnecessary, improper, and confusing the jury, and prejudicial.  This factor is already listed in Model Instruction 9.25 in neutral terms. Moreover, the language suggested by Defendants is misleading and an incorrect statement of the law. The Ninth Circuit has held that it is appropriate to consider whether an officer had alternative less-intrusive means to subdue or take a suspect into custody under the totality of the circumstances. See Nehad v. Browder, 929 F.3d 1125, 1138 (9th Cir. 2019) ("Police need not employ

the least intrusive means available…[h]owever, police are required to consider what other tactics if any were available and if there were clear, reasonable, less intrusive alternatives to the force employed that militate against finding the use of force reasonable.").

**INSTRUCTION NO. 17.**

**DEFENDANTS' INSTRUCTION RE DETERMINATION OF
REASONABLENESS –AT MOMENT OF USE OF FORCE**

The determination of whether Andrew Ornelas's use of deadly force was excessive is based on whether the use of deadly force was unreasonable at the moment of the shooting.  If Andrew Ornelas engaged in negligent conduct prior to the moment of shooting, such negligence should not be considered when deciding whether Andrew Ornelas's use of deadly force was unreasonable at the moment of shooting.

Authority: *Graham v. Connor*, 490 U.S. 386, 396, (1989); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021)

**Defendants' Contentions in Support of Proposed Instruction**

Defendants' proposed instruction is not cumulative or duplicative of any proposed "excessive force" instruction. Rather, it supplements Ninth Circuit Model Instruction 9.25 (as modified by the parties) by clarifying for the jury that consideration of use of force must be at the moment force is used and not based on any prior conduct of Officer Ornelas.

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this proposed instruction as unnecessary, improper, and confusing the jury, and prejudicial.  Plaintiffs also object to the use of "Officer" as unnecessary and inconsistent with how individual defendants have been addressed in the operative complaint which are simply their full names such as "Andrew Ornelas."

1

2                                **INSTRUCTION NO. 18.**

3       **DEFENDANTS' INSTRUCTION RE WILLFUL RESISTANCE, DELAY, OR**

4                             **OBSTRUCTION OF A PEACE OFFICER**

5              A citizen is under a duty to obey the commands of a peace officer. It is a crime

6       to willfully resist, delay, or obstruct any peace officer in the discharge or attempt to

7       discharge his duty.

8

9       Authority: Cal. Penal Code § 148(a)(l); *People v. Yuen*, 32 Cal. App. 2d 151

10      (1939); *People v. Alaniz*, 182 Cal. App. 3d 903, 908 (1986); *Smith v. City of Hemet*,

11      394 F.3d 689, 697 (2004)

12

13      **Defendants' Contentions in Support of Proposed Instruction**

14      This proposed instruction is a straightforward recitation of California law that tells

15      the jury Decedent had a duty to refrain from willfully resisting arrest, or delaying or

16      obstructing Officer Ornelas from discharging his duties as a peace officer.

17

18      **Plaintiffs' Objections to Proposed Instruction**

19      Plaintiffs object to this proposed instruction as unnecessary, improper, misleading,

20      confusing the jury, and prejudicial. This is already a listed *Graham* factor in the

21      model language of Instruction 9.25. To single this factor out and with the language

22      as suggested by Defendants would be prejudicial to Plaintiffs. Moreover, this

23      instruction is misleading as it implicitly suggests that the officers were acting in the

24      lawful discharge of their duties at the time of the use of force. However, case law

25      states that if an officer uses excessive force, he is not acting lawfully in the

26      discharge of his duties. *People v. Olguin*, 119 Cal. App. 3d 39, 46-47 (1981).

27

28

**INSTRUCTION NO. 19.**

**DEFENDANTS' INSTRUCTION RE INSTRUCTION CONCERNING "PRE-SHOOTING CONDUCT"**

You may not find an officer's use of force unreasonable based merely on tactical errors that result in a confrontation that could have been avoided.  The fact that an officer negligently creates a dangerous situation does not mean it is unreasonable for him to use force.  Even if an officer negligently provokes a violent response, that negligent act does not mean the force used was unreasonable.

Authority: *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002), abrogated on other grounds by *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017); *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015) ("[B]ad tactics that result in a deadly confrontation" are insufficient to establish a Fourth Amendment violation); *Pettersen v. County of Los Angeles*, No. CV 14-4699 DSF (AGRx), 2015 WL 13333499, at *6 (C.D. Cal. Oct. 8, 2015) (District Judge Fischer: "Much of Plaintiff's unreasonableness argument hinges on the deputies' alleged failure to follow training guidelines that advise deputies to de-escalate situations with mentally ill suspects. Under federal law, however, a lawful action by police is not rendered unreasonable because it provokes a violent reaction…. Even assuming their tactics were poor, a reasonable officer would have believed force was justified at the time of the shooting, and that is what is required by the Constitution"); *Fewell v. California*, No. CV 16-1934 DSF (JEMx), 2017 WL 6043080, at *4 (C.D. Cal. 2017) (District Judge Fischer: "'It is reasonable for police to move quickly if delay 'would gravely endanger their lives or the lives of others.' This is true even when, judged with the benefit of hindsight, the officers may have made 'some mistakes.'").

**Defendants' Contentions in Support of Proposed Instruction**

Defendants contend this proposed instruction is necessary to appropriately define for the jury what may and may not be considered when deciding the central Fourth Amendment "excessive force" issue in this case. The proposed instruction is intended to blunt plaintiffs' attempts to color a jury's opinions on "excessive force" based upon tactical decisions made or not made by Officer Ornelas before his actual use of force. The *Billington* and *Sheehan* cases relied upon by defendants foreclose such an approach, and the jury should be instructed accordingly.

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this instruction in its entirety because its substance is already embodied in model instruction 9.25. Plaintiffs object to this proposed instruction as unnecessary, improper, misleading, confusing the jury, and prejudicial.

1

## INSTRUCTION NO. 20.

2

## DEFENDANTS' INSTRUCTION RE LAW ENFORCEMENT AGENCY'S

3

## INTERNAL POLICIES

4      A police department's internal policies and regulations do not create the legal

5  standard of care in this case. You are not to consider a violation of an internal

6  police department policy as the equivalent of a federal civil rights violation.

7      Departmental policy directives may prescribe what conduct is expected of

8  police personnel under particular circumstances.  However, such policy directives

9  cannot create a duty to individual citizens.  Accordingly, a violation of a

10  departmental policy does not alone, amount to a violation of the law.

11

12  Authority: See *Whren v. United States*, 517 U.S. 806, 815 (1996); *Baker v.*

13  *McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations

14  of rights protected by the Constitution, not for violations of duties of care arising

15  out of tort law.  Remedy for the later type of injury must be sought in state court

16  under traditional tort law principles."); *Davis v. Scherer*, 468 U.S. 183, 194 (1984)

17  ("Officials sued for constitutional violations do not lose their qualified immunity

18  merely because their conduct violates some [local] statutory or administrative

19  provision."); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986);

20  *Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001) (Fourth Amendment excessive

21  force claim cannot be based on violations of police guidelines and practices); *Smith*

22  *v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (pertinent issue is whether officer

23  violated Fourth Amendment, not whether he violated city policy because "[t]o hold

24  that cities with strict policies commit more constitutional violations than those with

25  lax policies would be a...violation of common sense."); *Pasco v. Knoblauch*, 566

26  F.3d 572, 579 (5th Cir. 2009) (fact officer failed to follow police department

27  protocol "is constitutionally irrelevant"); *Edwards v. Baer,* 863 F.2d 606, 608 (8th

28  Cir. 1989); *Lehto v. City of Oxnard*, 171 Cal. App. 3d 285, 294-295 (1985);

*Campbell v. Burt*, 141 F. 3d 927, 930 (9th Cir. 1998) ("As a general rule, a violation of state law does not lead to liability under Section 1983."); *Hovater v. Robinson*, 1 F.3d 1063, 1068  n.4 (10th Cir. 1993) ("[Plaintiff] argues that she has established a [Section 1983] violation by Sheriff Hill's failure to follow his own policies.  However, a failure to adhere to administrative regulations does not equate to a constitutional violation."); *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993) ("We need not determine whether Trooper Rice violated Missouri Highway Patrol Policy...for under section 1983 the issue is whether the government official violated the constitution or Federal law, not whether he violated the policies for a state agency.");  *Doe v. Connecticut Dept of Child & Youth Services*, 911 F.2d 868, 869 (2nd Cir. 1990) ("A violation of state law neither gives Plaintiffs a Section 1983 claim nor deprives Defendants of the defense of qualified immunity...").

**<u>Defendants' Contentions in Support of Proposed Instruction</u>**

Defendants contend this proposed instruction is necessary to inform the jury that they are not to find a violation of policy or training as tantamount to a constitutional violation or violation of state law. The proposed instruction is intended to blunt plaintiffs' attempts to color a jury's understanding of the appropriate legal standards, which are set by the Court through jury instructions.

**<u>Plaintiffs' Objections to Proposed Instruction</u>**

Plaintiffs object to this proposed instruction as unnecessary, improper, misleading, confusing the jury, and prejudicial. Defendants' proposed instruction is an incorrect statement of the law. See Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005) (holding a "rational jury could rely upon" evidence "that the officers' conduct violated applicable police standards" when "assessing whether the officers' use of force was unreasonable"). Further, under Plaintiffs' negligence claim, violation of a police department's policies and training can be considered evidence of negligence.

The imprecise language employed by Defendants can mislead the jury into believing that violation of internal policies cannot be considered for any of Plaintiffs' claims.

## INSTRUCTION NO. 21.

## DEFENDANTS' INSTRUCTION RE EXPERT WITNESS TESTIMONY
## CONCERNING USE OF FORCE

The fact that an expert witness disagrees with a peace officer's actions after the fact does not render the officer's actions unreasonable. It is up to you, as the jury, to decide whether a reasonable officer could have believed that the officer's conduct was justified under the circumstances.

Authority: *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994); *Reynolds v. County of San Diego*, 84 F.3d 1162 (9th Cir. 1996); *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002), abrogated on other grounds by *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017)

### Defendants' Contentions in Support of Proposed Instruction

Plaintiffs have retained long-time police practices expert Roger Clark to offer opinion testimony concerning the actions of Officer Ornelas. Mr. Clark is well-qualified. But his testimony is not to be deemed determinative just because he speaks from a wealth of experience. Indeed, "'in close cases, a jury does not automatically get to second-guess these life and death decisions, even though a plaintiff has an expert and a plausible claim that the situation could better have been handled differently.'" *Saucier v. Katz*, 533 U.S. 194, n. 6 (2001) (Ginsburg, J., concurring in judgment) (internal citation omitted). The jury should be advised accordingly.

### Plaintiffs' Objections to Proposed Instruction

Plaintiffs object to this proposed instruction as unnecessary, improper, misleading, confusing the jury, and prejudicial.  The imprecise language employed by Defendants can lead a jury to believe that an expert witness's opinion cannot inform

1   their decision of whether the officer's conduct was justified under the

2   circumstances. The opposite is true under the law. See Tabares v. City of

3   Huntington Beach, 988 F.3d 1119, 1127, 1128-29 (considering Plaintiff's police

4   practices expert's opinions on the reasonableness of the police officer's conduct and

5   that his opinions "place in material dispute any immediate or serious threat to [the

6   officer] at the time of the shooting.").

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 **INSTRUCTION NO. 22.**

3 **DEFENDANTS' INSTRUCTION RE MERELY NEGLIGENT CONDUCT IS**

4 **NOT A CIVIL RIGHTS VIOLATION**

5 Conduct that amounts to nothing more than negligence does not constitute a

6 Fourth Amendment or Fourteenth Amendment violation.  Negligence is the failure

7 to use reasonable care to prevent harm to oneself or to others.  Though

8 "reasonableness" is relevant both to Fourth Amendment excessive force claims and

9 to negligence claims, the standard of "reasonableness" for Fourth Amendment

10 excessive force is not the same as the standard of "reasonable care" for negligence.

11

12 <u>Authority</u>: *Daniels v. Williams*, 474 U.S. 327 (1986); *Billington v. Smith*, 292 F.3d

13 1177, 1190 (9th Cir, 2002), abrogated on other grounds by *County of Los Angeles v.*

14 *Mendez*, 137 S. Ct. 1539 (2017); *Brower v. County of lnyo*, 489 U.S. 593, 596-97

15 (1989); CACI 401

16

17 <u>**Defendants' Contentions in Support of Proposed Instruction**</u>

18 Defendants contend this proposed instruction is necessary to appropriately define

19 for the jury what may and may not be considered when deciding the central Fourth

20 Amendment "excessive force" issue in this case. The proposed instruction is

21 intended to blunt plaintiffs' attempts to color a jury's opinions on "excessive force"

22 based upon tactical decisions made or not made by Officer Ornelas before his actual

23 use of force. The *Billington* case relied upon by defendants forecloses such an

24 approach, and the jury should be instructed accordingly.

25

26 <u>**Plaintiffs' Objections to Proposed Instruction**</u>

27 Plaintiffs object to this proposed instruction as unnecessary, improper, misleading,

28 confusing the jury, and prejudicial.  There has been no suggestion in the jury

instructions under the Fourth and Fourteenth Amendment jury instructions that a jury could find for the Plaintiffs based on an officer's negligent conduct. It is unreasonable to assume that the jury will supplement their own beliefs and disregard specific jury instructions. Courts generally presume that a jury follows the instructions given to it. *Weeks v. Angleone*, 528 U.S. 225, 234 (2000).

# INSTRUCTION NO. 23.

## PLAINTIFFS' INSTRUCTION RE NEGLIGENCE–ESSENTIAL FACTUAL ELEMENTS

Plaintiffs claim that the Charles Sesma was harmed by Andrew Ornelas' negligence.  To establish this claim, Plaintiffs must prove all of the following:

    1.    That Andrew Ornelas was negligent;

    2.    That Andrew Ornelas' negligence was a substantial factor in causing the decedent's death.

Authority: CACI 400

**Plaintiffs' Contentions in Support of Proposed Instruction**

Plaintiffs bring a negligence claim in this case, therefor, the jury should be given the model instruction provided by the Ninth Circuit for negligence claims. CACI 441 provides further details regarding how the jury should apply the law in the context of a deadly police shooting, but it is still essential to inform the jury of the basic instruction related to negligence.

**Defendants' Objections to Proposed Instruction**

CACI 400 should not be used given the more specific instructions regarding a Peace Officer's negligent use of force in CACI 441.

54

# INSTRUCTION NO. 24.

## DEFENDANTS' INSTRUCTION RE POLICE OFFICER NOT REQUIRED TO USE "MOST REASONABLE" ACTION

As long as an officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the "most reasonable" action or the conduct that is the least likely to cause harm in order to avoid liability for negligence.

Authority: *Hayes v. County of San Diego,* 57 Cal.4th 622, 632 (2013) (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537-538 (2009))

**Defendants' Contentions in Support of Proposed Instruction**

Defendants contend this proposed instruction fosters continuity in the jury's understanding of the factors to be applied to plaintiffs' "Excessive Force," "Battery," and "Negligence" claims.

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this instruction in its entirety as its essence is embodied in CACI 441.

**INSTRUCTION NO. 25.**

**DEFENDANTS' INSTRUCTION RE EXERCISE OF DISCRETION**

Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Authority: Cal. Gov. Code § 820.2

**Defendants' Contentions in Support of Proposed Instruction**

Defendants contend this proposed instruction applies to plaintiffs' state law claims. Defendants contend that the instruction is appropriate because the use of force inherently calls for an exercise of the discretion vested in Defendant as a California peace officer—the very discretion the immunity is designed to protect. *See, Hayes v. County of San Diego*, 57 Cal.4th 622, 632 (2013) ("Law enforcement personnel have a degree of discretion as to how they choose to address a particular situation."); *see also, Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1075 (S.D. Cal. 1994) (finding deputy immune under Government Code § 820.2 from Plaintiff's state law claims when using deadly force; "[a]s discussed, supra, police officers are privileged to use force against assailants when the officers reasonably believe the assailants to be armed, and when officers reasonably believe their own safety is in jeopardy. Jackson's split-second decision to use force is exactly the kind of act which section 820.2 was enacted to shield from liability. That exercise of discretion is exactly what this immunity seeks to protect.").

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this instruction in its entirety as it is not applicable to this case. This is a question of law and is inappropriate for the jury to decide. "It is well-

established that §820.2 does not provide immunity from excessive force claims."
*Lifton v. City of Vacaville*, 72 Fed. Appx. 647, 649 (9th Cir. 2003) (citing *Robinson v. Solano County,* 278 F.3d 1007, 1016 (9th Cir. 2002).

# INSTRUCTION NO. 26.

## DEFENDANTS' INSTRUCTION RE EXECUTION OR ENFORCEMENT OF LAWS

A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.

If you find that Officer Ornelas was exercising due care when interacting with Charles Sesma, then your verdict as to plaintiffs' negligence and battery claims should be in favor of Officer Ornelas.

Authority: Cal. Gov. Code § 820.4

**Defendants' Contentions in Support of Proposed Instruction**

Defendants contend this proposed instruction applies to plaintiffs' state law claims. Courts have recognized uses of force like the type at issue here as conduct falling within and deserving the protection of this immunity. *See, Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1075 (S.D. Cal. 1994) (holding that a sheriff's deputy was immune from state law tort claims under Government Code § 820.2 and 820.4, even when using deadly force).

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this instruction in its entirety as its essence is already embodied in CACI 1305B, 441. Repeating said instruction would unfairly place emphasis on the purported reasonableness of Officer Ornelas's actions. Moreover, even if applicable, this is a legal question that should be resolved by the court, not the jury.

1

2

**INSTRUCTION NO. 27.**

3

**DEFENDANTS' INSTRUCTION RE PERSONS RESISTING ARREST**

4

Neither a public entity nor a public employee is liable for any injury caused

5

by a person resisting arrest.

6

7

<u>Authority</u>: Cal. Gov. Code § 845.8(b)(3)

8

9

**<u>Defendants' Contentions in Support of Proposed Instruction</u>**

10

Defendants contend this instruction supplements several of Defendants' proposed

11

instructions regarding an individual's duty to not resist arrest by explaining that a

12

public employee and his employer are not liable for injury in such circumstances.

13

14

**<u>Plaintiffs' Objections to Proposed Instruction</u>**

15

Moreover, this is inaccurate statement of the law under Plaintiffs' claims. The

16

California Supreme Court has held that officers are immune from liability under §

17

845.8 where a suspect's injuries are entirely self-inflicted, but not where the

18

suspect's injuries are caused by officers' use of excessive force. *Lifton v. City of*

19

*Vacaville*, 72 Fed. Appx. 647, 649-50 (9th Cir. 2003).

20

21

22

23

24

25

26

27

28

1
2

# INSTRUCTION NO. 28.

## DEFENDANTS' INSTRUCTION RE NO PUNITIVE DAMAGES

3    You must not include in your award any damages to punish or make an
4 example of defendants.  Such damages would be punitive damages, and they cannot
5 be a part of your verdict.  You must award only the damages that fairly compensate
6 plaintiffs for each of their losses.

7

8

9 <u>Authority</u>: CACI 3924

10

11 **<u>Defendants' Contentions in Support of Proposed Instruction</u>**

12 The jury should be instructed that any award of compensatory damages should not
13 include any amount to punish or make an example of Officer Ornelas, the State of
14 California, or the California Highway Patrol.

15

16 **<u>Plaintiffs' Objections to Proposed Instruction</u>**

17 Plaintiffs object to this instruction in its entirety punitive damages are recoverable
18 in this case against Officer Ornelas if the jury finds him liable for violating Charles
19 Sesma's Constitutional rights or the Bane Act.

20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 29.**

**DEFENDANTS' INSTRUCTION RE PUNITIVE DAMAGES –**

**CALCULATION**

*[TO BE READ IN PUNITIVE DAMAGES PHASE OF TRIAL ONLY]*

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct. You may not, however, set the amount of any punitive damages in order to punish the defendant for harm to anyone other than the plaintiff in this case.

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

Punitive damages may not be awarded against Defendant State of California. .

Authority: Ninth Circuit Model Jury Instr. (Mar. 2018), 5.5

**Defendants' Contentions in Support of Proposed Instruction**

An instruction on the amount of punitive damages will be necessary for the punitive damages phase of the trial if the jury decides to award punitive damages.

**Plaintiffs' Objections to Proposed Instruction**

Plaintiffs object to this instruction because it is duplicative of Ninth Circuit Model Instruction 3.5. Since this case is proceeding in federal court, it is more appropriate to give Model Instruction 3.5 than a modified version of CACI 5012.

**INSTRUCTION NO. 30.**

**DEFENDANTS' INSTRUCTION RE INTRODUCTION TO THE SPECIAL VERDICT FORM**

I will give you a verdict form with questions you must answer. I have already instructed you on the law that you are to use in answering these questions. You must follow my instructions and the forms carefully. You must consider each question separately. Although you may discuss the evidence and the issues to be decided in any order, you must answer the questions on the verdict form in the order they appear. After you answer a question, the form tells you what to do next.

All of you must deliberate on and answer each question. All of you must agree on an answer before you can move on to the next question.  Unless the verdict form tells all jurors to stop and answer no further questions, every juror must deliberate and vote on all of the remaining questions.

When you have finished filling out the form, your presiding juror must write the date and sign it at the bottom of the last page and then notify the [bailiff/clerk/court attendant] that you are ready to present your verdict in the courtroom.


<u>Authority</u>: CACI 5012 (modified)


**<u>Defendants' Contentions in Support of Proposed Instruction</u>**

Defendants' proposed instruction provides more specific instructions to the jury regarding how to work through and fill out the special verdict form.


**<u>Plaintiffs' Objections to Proposed Instruction</u>**

Plaintiffs object to this instruction because it is duplicative of Ninth Circuit Model Instruction 3.5. Since this case is proceeding in federal court, it is more appropriate to give Model Instruction 3.5 than a modified version of CACI 5012.

**INSTRUCTION NO. 31.**

**DEFENDANTS' INSTRUCTION RE CAUTIONARY INSTRUCTIONS**

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom.  This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case.  This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers.  You also must not communicate with anyone, in any way, about this case.  And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here.  So you must not learn any additional information about the case from sources outside the courtroom.  To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

Source: Ninth Circuit Manual of Model Jury Instructions for the Ninth Circuit (2020), 2.0.

**<u>Defendants' Contentions in Support of Proposed Instruction</u>**

Per the comment for this instruction: "This instruction is derived from the model instruction prepared by the Judicial Conference Committee on Court Administration and Case Management in June 2020. The practice in federal court of

1  repeatedly instructing jurors not to discuss the case until deliberations is

2  widespread. *See e.g., United States v. Pino-Noriega*, 189 F.3d 1089, 1096 (9th Cir.

3  1999)."

4

5  **<u>Plaintiffs' Objections to Proposed Instruction</u>**

6  Plaintiffs contend that this instruction is superfluous. This case is not likely to have

7  extensive media coverage. Further, the jurors will have already been informed of all

8  of this information from other jury instructions and this is repetitive.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### INSTRUCTION NO. 32.
### PLAINTIFFS' INSTRUCTION RE VICARIOUS LIABILITY—LEGAL RELATIONSHIP NOT DISPUTED

In this case, Andrew Ornelas was an employee of the State of California.

If you find Andrew Ornelas was acting within the scope of his employment when the incident occurred, then the State of California is responsible for any harm caused by Andrew Ornelas' wrongful conduct.

The parties have stipulated that Andrew Ornelas was acting within the scope of his employment during this incident.

<u>Source</u>:  CACI 3703, (2020 ed., 2022 update).

**Plaintiffs' Contentions in Support of Proposed Instruction**

Plaintiffs state law claims include a claim of vicarious liability. As Defendants point out, this instruction does explain the State of California's involvement in the case. But that is precisely what it is meant to do. The jury should be instructed about the law and keeping an instruction from them in the hopes that they don't realize that California is liable for Defendant Ornelas' actions would be a deceptive. Plaintiffs' are amenable to limiting this instruction to the state law claims.

**Defendants' Objections to Proposed Instruction**

Defendants admitted in their operative answers that Officer Ornelas was acting in the course and scope of employment; therefore, this instruction is unnecessary, as there is no issue for the jury to decide on this topic.  In addition,

this instruction is duplicative of the agreed instruction regarding stipulations of fact based on Ninth Circuit Manual of Model Jury Instructions for the Ninth Circuit (2017), 2.2.  The only possible effect of giving this instruction in light of these admissions and the agreed instruction is to flag to the jury that there is a "deep pocket" defendant, which is prejudicial to the State of California.

Separately, this proposed instruction misstates the law by using the words "wrongful conduct" instead of specifying that conduct for which an entity defendant may be vicariously liable.  By rule, entities like the State of California cannot be held vicariously liable for any civil rights violations caused by their employees.  *Monell v. Dep't of Social Services of City of New York*, 98 S.Ct. 2018, 2036 (1978); *Figueroa v. Kern County*, 2021 WL 826216, at *8 (E.D. Cal. 2021).  This proposed instruction fails to account for that important limitation.  If this instruction is to be given – and it should not be – it should be given in a form that specifies its application to only plaintiffs' state law tort theories.

LA2021603706