**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

CANDIDO SESMA and CECILIA SESMA, individually and as successors in interest to CHARLES SESMA, deceased,

Plaintiffs,

v.

STATE OF CALIFORNIA, ANDREW ORNELAS, and DOES 2-20, inclusive,

Defendants.

Case No. 5:21-cv-01694-JWH-KKx

**ORDER REGARDING PLAINTIFFS' MOTIONS *IN LIMINE* [ECF Nos. 70, 72, 74, & 75] AND DEFENDANTS' MOTIONS *IN LIMINE* [ECF Nos. 71, 73, 76, & 77]**

Before the Court are four motions *in limine* filed by Plaintiffs Candido Sesma and Cecilia Sesma, individually and as successors in interest to Charles Sesma ("Sesma") (jointly, "Plaintiffs"),[1] and four motions *in limine* filed by Defendants State of California and Andrew Ornelas (jointly, "Defendants").[2] After considering the papers filed by the parties, as well as the argument of counsel during the hearing on these Motions,[3] the Court orders that the Motions are **GRANTED in part** and **DENIED in part**, for the reasons set forth herein.

## I. LEGAL STANDARD

Motions *in limine* are a well-recognized judicial practice authorized under case law. *See Ohler v. United States*, 529 U.S. 753, 758 (2000). The Court's power to rule on motions *in limine* stems from "the court's inherent power to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

Regardless of its initial decision on a motion *in limine*, a court may revisit the issue at trial. *See* Fed. R. Evid. 103, Advisory Committee's note to 2000 Amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce*, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). "The Supreme Court has recognized that a ruling on a motion *in limine* is essentially a preliminary opinion that falls entirely within the discretion of the district court." *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce*, 469 U.S. at 41-42).

---

1 Pls.' Mots. *in Limine* ("Plaintiffs' MIL Nos. 1-4") [ECF Nos. 70, 72, 74 & 75].

2 Defs.' Mots. *in Limine* ("Defendants' MIL Nos. 1-4") [ECF Nos. 71, 73, 76 & 77].

3 *See* Minute Order re: Plaintiffs' MIL Nos. 1-4 & Defendants' MIL Nos. 1-4 [ECF No. 98].

## II. ANALYSIS

### A. Plaintiffs' Motions *in Limine*

#### 1. MIL No. 1

Plaintiffs move to exclude, under Rules 401, 402, and 403 of the Federal Rules of Evidence, evidence of trace amounts of marijuana found in Sesma's system at the time of his death and any evidence of Sesma's past use of drugs or alcohol, including hospital records from Canyon Ridge Hospital, Pomona Valley Hospital, and Temecula Valley Hospital.[4] Plaintiffs contend that the key issue in this case is whether the shooting was excessive and unreasonable and that evidence of Sesma's past use of drugs or alcohol has no bearing on the central dispute in this case. If the Court concludes that such evidence is admissible to the issue of damages, then Plaintiffs request the bifurcation of the trial on the issues of liability and compensatory damages.[5]

Defendants' opposition to Plaintiffs' MIL No. 1 was due on May 10, 2024.[6] No opposition was filed by the deadline.

Under the Local Rules, this Court "may decline to consider any memorandum . . . not filed within the deadline set by order or by local rule." L.R. 7-12. The failure to file a timely opposition "may be deemed consent to the granting . . . of the motion." *Id.*; *see, e.g.*, *Payne v. City of Los Angeles*, 2023 WL 6850045, at *6 (C.D. Cal. Aug. 30, 2023) ("the Court construes the failure to file an opposition as consent to the granting of defendant's MIL").

The Court regards the absence of opposition as Defendants' consent to granting Plaintiffs' MIL No. 1. Accordingly, Plaintiffs' MIL No. 1 is **GRANTED**.

---

[4] *See* Plaintiffs' MIL No. 1.

[5] Plaintiffs' MIL No. 4 5:20-23.

[6] Scheduling Order [ECF No. 67] 2.

**2. MIL No. 2**

Plaintiffs move to exclude evidence of Sesma's prior criminal history and past displays of aggression or violence, as irrelevant, unduly prejudicial, impermissible character evidence, and inadmissible hearsay.[7] Plaintiffs assert that Ornelas was unaware of Sesma's alleged previous criminal or aggressive acts and that, therefore, those references are irrelevant to the excessive force inquiry.[8] If that evidence is admissible to the issue of damages, then Plaintiffs request the bifurcation of the issues of liability and compensatory damages.[9]

Defendants seek to admit that evidence solely to counter Plaintiffs' damages claims, because that evidence "speaks to life expectancy" and "the quality of Plaintiffs' relationship with [Sesma]."[10]

**a. Applicable Law**

**i. Decedent's Criminal History**

In an excessive force case, the officer's "use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Facts about which an officer is not aware are not relevant to liability. *See Hayes v. Cnty of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013). District courts have consistently concluded that evidence of a decedent's prior criminal history, of which the officer was unaware at the time of the incident, is irrelevant and inadmissible to prove liability. *See V.V. v. City of Los Angeles*, 2022 WL 3598167, at *5–*6 (C.D. Cal. July 6, 2022) (concluding that such evidence is irrelevant,

---

7 Plaintiffs' MIL No. 2.

8 *Id.*

9 Plaintiffs' MIL No. 4 5:20-23.

10 *See generally* Defs.' Opp'n to Plaintiffs' MIL No. 2 ("Opposition to Plaintiffs' MIL No. 2")[ECF No. 82].

unduly prejudicial, and improper character evidence to prove liability); *Morgan v. City of Los Angeles*, 2020 WL 6048831, at *2 (C.D. Cal. June 23, 2020) (concluding that the defendants should be precluded from introducing evidence, to prove liability, that the decedent was on probation at the time of the incident).

However, evidence of a decedent's prior criminal history may be admissible to the issue of damages. *See V.V.*, 2022 WL 3598167, at *6 ("The decedent's criminal history is relevant to the damages phase. The length of time the decedent spent in jail and the nature of his convictions go directly to the quality of his familial relationship with Plaintiffs."); *Morgan*, 2020 WL 6048831, at *2 ("During the damages phase, Defendants may offer evidence that [the decedent] was on probation[.]").

**ii. Bifurcation**

The Court may bifurcate a trial "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b). Rule 42(b) of the Federal Rules of Civil Procedure "confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (citing *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir. 1995)). In excessive force cases, district courts often bifurcate the trial into liability and damages phases. *See, e.g.*, *Conan v. City of Fontana*, 2017 WL 8941499, at *7 (C.D. Cal. Oct. 6, 2017) (bifurcating the trial into a liability phase and a damages phase in an excessive force case when evidence of the plaintiff's criminal history and prior drug use were relevant only to damages, not to liability); *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 606 (9th Cir. 2016) (concluding that the district court abused its discretion by failing to bifurcate liability issues from compensatory damages issues in an excessive force case).

**b. Application**

The Court concludes that Sesma's prior criminal history is irrelevant, and unfairly prejudicial, to the issue of liability. It appears to be undisputed that Ornelas was not aware of Sesma's prior criminal history at the time of the incident. Therefore, that evidence does not make any fact more or less probable to the issue of whether Ornelas used excessive force. Accordingly, Plaintiffs' MIL No. 2 is **GRANTED in part**, and evidence of Sesma's prior criminal history is **EXCLUDED** from the liability portion of the trial.

In view of the above legal authority, Sesma's prior criminal history is relevant to the issue of damages. That evidence will not be excluded as character evidence, because it is not being offered to "prove conformity of [Sesma] with a particular character trait during the incident."[11] Based upon the briefing, Plaintiffs have not shown that that evidence constitutes inadmissible hearsay, though Plaintiffs may re-raise this issue, with additional supporting facts and law, at the appropriate time. Accordingly, Plaintiffs' MIL No. 2 is **DENIED in part** because evidence of Sesma's prior criminal history is admissible with respect to damages.

Because the Court has concluded that some of the evidence presented is admissible only to prove damages, not to prove liability, the Court is inclined to exercise its discretion to bifurcate trial into a liability phase and, if necessary, a damages phase. As discussed during the hearing, the Court will postpone this decision until the final pretrial conference.

**3. MIL No. 3**

Plaintiffs move to exclude, under Rules 402 and 403, evidence of (1) the Ontario Police Department's investigation into the incident, including any reference to the District Attorney's decision not to press charges against

[11] Opposition to Plaintiffs' MIL No. 2 4:1-16.

Ornelas; and (2) the findings and conclusions of the California Highway Patrol's internal Critical Incident Investigation Team report regarding Ornelas's use of force.[12] Plaintiffs assert that "there is a significant risk that the jury might give undue reference to the findings of a governmental body" and that the "jury might feel bound to abide by the conclusions of the Ontario Police Department, the District Attorney's office, or the California Highway Patrol, rather than reaching its own independent conclusions based on all of the evidence."[13] If that evidence is admissible to the issue of damages, then Plaintiffs request the bifurcation of the liability and compensatory damages phases of the trial.[14]

Defendants acknowledge that that evidence "may have a limited application in this trial."[15] But Defendants assert that a wholesale exclusion would be misleading and unduly prejudicial. For example, Defendants contend that "evidence of these findings and conclusions is relevant as it pertains to potential award of punitive damages" against Ornelas.[16]

The Court concludes that the evidence relating to the findings, opinions, and conclusions of the various governmental agencies is irrelevant and inadmissible to prove liability. *See, e.g.*, *Speer v. Cnty. of San Bernardino*, 2021 WL 5969521, at *2 (C.D. Cal. Aug. 9, 2021) (excluding the District Attorney's conclusion regarding the deputy's use of force, the District Attorney's decision not to press charges against the deputy, and the County's investigation and findings regarding the deputy's use of force as irrelevant and unduly prejudicial

---

12 Plaintiffs' MIL No. 3.

13 *Id.* at 4:8-13.

14 Plaintiffs' MIL No. 4 5:20-23.

15 Defs.' Opp'n to Plaintiffs' MIL No. 3 ("Opposition to Plaintiffs' MIL No. 3") 2:13.

16 *Id.* at 3:15-16.

in an excessive force case); *Morgan*, 2020 WL 6048831, at *4 (excluding the City's findings that the shooting was "within policy" and the District Attorney's conclusions and decision not to press charges as irrelevant during the liability phase of an excessive force case). The Court agrees that "there is a significant risk that the jury might give undue deference to the findings of a governmental body. . . rather than reaching its own independent conclusions based on all of the evidence."[17]

Accordingly, the Motion is **GRANTED in part**, and that evidence is **EXCLUDED** from the liability phase of this trial. The Court defers ruling on whether that evidence is admissible during the damages phase of this trial. The parties may re-raise this issue at the appropriate time.

As discussed during the hearing, the Court **DIRECTS** the parties to meet and confer regarding whether any of this evidence may be admissible with regard to forensics evidence (such as the location of shell casings). Accordingly, the Motion is **DEFERRED in part**, until the final pretrial conference.

**4. MIL No. 4**

Plaintiffs move to exclude, under Rule 401, evidence of Sesma's history of mental illness, including hospital records from Canyon Ridge Hospital, Pomona Valley Hospital, and Temecula Valley Hospital, and notebooks found in Sesma's vehicle after the incident, which show that Sesma may have been suffering from delusions.[18] Plaintiffs assert that that evidence, which was unknown to Ornelas at the time of the incident, is irrelevant to the excessive force inquiry.[19] If that

---

[17] Plaintiffs' MIL No. 3 4:10-14.

[18] Plaintiffs' MIL No. 4.

[19] *Id.*

evidence is admissible to the issue of damages, then Plaintiffs request bifurcation.[20]

Defendants assert that that evidence is relevant to Plaintiffs' damages claims.[21] Defendants also contend that that evidence is relevant to determine the reasonableness of Ornelas's actions in response to Sesma's conduct.[22] According to Defendants, Ornelas was aware that Sesma "had rammed his vehicle into multiple other vehicles in an erratic manner" and that Sesma "pick[ed] up a jagged metal pipe and then r[a]n towards [Ornelas] in a threatening manner."[23]

**a. Applicable Law**

In *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 n.8 (9th Cir. 2011)—an excessive force case—the Ninth Circuit concluded that the district court could not consider evidence that a witness told a 911 operator that the decedent "was threatening to kill everybody" and "might 'run at the cops with a knife,'" because the officers did not know of those statements.

However, evidence pertaining to suicidal ideation may be admissible. *See Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009) (allowing the defendants to present a "suicide by cop" theory); *Sullivan v. City of Buena Park*, 2022 WL 2965664, at *4 (C.D. Cal. Apr. 11, 2022) (concluding that evidence of the decedent's suicidal ideation was admissible to bolster the defendants' theory that the decedent "was making distinct reaching motions to simulate reaching for a weapon, rather than a normal running motion").

---

20 Plaintiffs' MIL No. 4 5:20-23.

21 Defs.' Opp'n to Plaintiffs' MIL No. 4 ("Opposition to Plaintiffs' MIL No. 4") [ECF No. 84] 2:5-13.

22 *Id.* at 2:18-3:27.

23 *Id.* at 3:8-12.

Evidence of mental health status may also be admissible as it relates to damages. *See Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1139 (E.D. Cal. 2020) ("As to the mental health statuses, Defendants' argument that such evidence is relevant and not unduly prejudicial as it relates to [the plaintiff's] damages could be correct such that admission is proper.").

**b. Application**

The Court concludes that that evidence is inadmissible to prove liability. Ornelas "had no knowledge of Sesma's mental health history."[24] The Court agrees that that evidence would impermissibly "extend the scope of the excessive force analysis [allowed] under *Graham*."[25]

Defendants do not present a suicide-by-cop theory. Instead, Defendants assert that "it was evident to CHP Officer Ornelas that [Sesma] was angry and acting in an aggressive manner. Whether [Sesma's] threatening conduct was due to being under the influence of a drug such as PCP or because [Sesma] was suffering from mental illness is relevant to determining whether the force used in this instance was reasonable."[26] Although Defendants may present evidence regarding Sesma's behavior at the time of the incident, as well as Defendants' reactions to Sesma's behavior, Defendants cannot use such after-acquired evidence to contest liability. Accordingly, Plaintiffs' MIL No. 4 is **GRANTED in part**, and that evidence is **EXCLUDED** from the liability phase of trial.

In view of the above authority, that evidence is admissible to the issue of damages. Accordingly, Plaintiff's MIL No. 4 is **DENIED in part**, and that evidence is admissible regarding the damages phase of trial.

---

24 Plaintiffs' MIL No. 4 4:18-19.

25 *Id.* at 4:25.

26 Opposition to Plaintiff's MIL No. 4 3:22-26.

**B. Defendants' Motions *in Limine***

**1. MIL No. 1**

Defendants move to exclude, under Rules 401, 402, and 403, post-mortem photographs depicting Sesma, including autopsy photographs, "which are gruesome, gory, and bloody."[27] Defendants assert that those photographs are being offered solely "to inflame the passions of the jury."[28]

While Plaintiffs do not intend to introduce evidence that is unnecessarily bloody or graphic, Plaintiffs assert that those photographs are relevant.[29] According to Plaintiffs, those photographs reveal the extent of Sesma's injuries, and they resolve a factual dispute regarding Sesma's body position when he was shot.[30] Plaintiffs will provide Defendants "with the proposed photos that they intend to use in an effort to reach a stipulation."[31]

The Court directs Plaintiffs to select a narrow selection of photographs alleged to be most relevant and to confer with Defendants regarding any remaining dispute on this issue. *See Herrera v. City of Ontario*, 2016 WL 9176322, at *2 (C.D. Cal. Oct. 24, 2016) (ordering the plaintiffs' counsel to choose a narrow selection of relevant photographs and to confer with the defendants' counsel). The parties should attempt to agree to the admissible photographs. If a dispute remains, then the parties may present the objectionable photographs to the Court for ruling. Accordingly, Defendants' Motion *in Limine* No. 1 is **DENIED without prejudice**.

---

27 Defendants' MIL No. 1.

28 *Id.* at 7:9-10.

29 Pls.' Opp'n to Defendants' MIL No. 1 ("Opposition to Defendants' MIL No. 1") [ECF No. 78].

30 *Id.* at 2:10-19.

31 *Id.* at 2:20-21.

**2. MIL No. 2**

Defendants move to exclude evidence relating to personnel matters, prior complaints concerning job performance, or prior disciplinary issues regarding Ornelas.[32] Defendants assert that that evidence is privileged, irrelevant, and unfairly prejudicial.

Plaintiffs "do not oppose" that Motion, but Plaintiffs reserve the right to introduce those records for impeachment purposes "if Mr. Ornelas opens the door by testifying about his exemplary record, job performance, or lack of prior disciplinary issues or complaints."[33]

In view of Plaintiffs' non-opposition, the Court **GRANTS** Defendants' Motion *in Limine* No. 2. The Court will consider whether that evidence may be admissible for impeachment, or other purposes, if the issue arises during trial.

**3. MIL No. 3**

Defendants move to exclude improper anticipated testimony of Roger Clark, who Plaintiffs have designated as an expert witness.[34] Defendants seek the exclusion of portions of Clark's expected testimony on four grounds, which are outlined in detail below.

**a. Applicable Law**

Expert witness testimony is governed by Rule 702, which—as recently amended—provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

---

32 Defendants' MIL No. 2.

33 Pls.' Opp'n to Defendants' MIL No. 2 ("Opposition to Defendants' MIL No. 2") [ECF No. 79] 2:9-14.

34 Defendants' MIL No. 3.

opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b. the testimony is based on sufficient facts or data;

c. the testimony is the product of reliable principles and methods; and

d. the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

**b. Application**

First, Defendants move to exclude Clark's testimony, to the extent that he "erroneously bases his opinions on measurements in yards, rather than feet, and an incorrect assumption that [Sesma] was not armed with the pipe when he ran at Officer Ornelas."[35] Plaintiffs respond that Clark's testimony is admissible because the underlying issues are factual disputes that should be resolved by a jury.

With respect to measurement, in his initial interview Ornelas described the distance between himself and Sesma in yards, instead of feet.[36] Defendants assert that Ornelas misspoke and that he corrected this misstatement both during a subsequent interview and during his deposition.[37] But "Plaintiffs

---

[35] *Id.* at 5:6-8.

[36] Defendants' MIL No. 3 5:8-10; Opposition to Defendants' MIL No. 3 2:22-24.

[37] Defendants' MIL No. 3 5:11-12.

maintain that Officer Ornelas' initial statement, made closest in time to the incident, is the most reliable account of the distance."[38]

The Court concludes that that issue presents a factual dispute that should be resolved by the jury. Accordingly, Clark's testimony based upon the factual dispute that Ornelas was many yards away from Sesma is admissible. Defendants can address this issue on cross examination.

Second, regarding whether Sesma was armed with a pipe when he ran at Ornelas, this Court "cannot determine with any confidence—and certainly not with the confidence that a reasonable jury could return no other verdict—that Sesma was holding a pipe in his hand[.]"[39] Accordingly, Clark's testimony based upon the factual dispute that Sesma was not armed with a pipe is admissible. Defendants can address this issue on cross-examination.

Third, Defendants move to exclude Clark's testimony regarding his interpretation of what the videos of the incident in this case depict, his opinion regarding the ballistics evidence concerning the order of the shots fired by Ornelas, and his opinion that Sesma may have been experiencing a mental health crisis.[40]

Plaintiffs assert that Clark's opinions are "well within his expertise" as a police practices expert.[41] Clark "should be allowed to testify regarding his view of the video because it is precisely the type of evidence police practices experts typically rely on in former their opinions[.]"[42] Clark's opinion "regarding the

---

38 Opposition to Defendants' MIL No. 3 3:3-4.

39 Order Regarding Defendants' Mot. for Summ. J. [ECF No. 61] 6:2-4.

40 Defendants' MIL No. 3 6:15-23.

41 Opposition to Defendants' MIL No. 3 4:13-5:12.

42 *Id.* at 4:20-22.

order of shots are not based on ballistics[.]"[43] Clark's expertise in police practices "encompasses the evaluation of symptoms of mental crisis and how that evaluation affects the response that a reasonable officer is expected to have based on standard training and policies."[44]

Based upon the anticipated testimony, Clark's opinions regarding: (1) his interpretation of the video; (2) the order of the shots fired by Ornelas; and (3) the alleged mental health crisis, all fall within the purview of Clark's expertise, which "is the product of reliable principles and methods" and "reflects a reliable application of the principles and methods to the facts of the case". Fed. R. Evid. 702(c) & (d). If Defendants believe that Plaintiffs are asking Clark in-depth questions that are beyond the scope of Clark's expertise, then Defendants may make an objection at the appropriate time or may address the issue on cross-examination.

Fourth, Defendants move to exclude Clark's testimony regarding his opinion about ultimate issues of law.[45] Plaintiffs "have no objection to both police practices experts refraining from opining as to the ultimate issue; Plaintiffs only ask that any such rule applies to both experts equally."[46]

An "expert witness cannot give an opinion as to [his] *legal conclusion,* i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (emphasis in original).

The Court cautions both parties that their respective experts should refrain from opining regarding the ultimate issue of law. If this issue arises at

---

43 *Id.* at 5:4-5.

44 *Id.* at 5:7-9.

45 Defendants' MIL No. 3 7:1-8:15.

46 Opposition to Defendants' MIL No. 3 5:22-24.

trial during the examination of an expert witness, then the opposing party may make an appropriate objection.

Finally, Defendants ask for a limiting instruction providing that Clark's opinion that Ornelas's conduct violated various policies and police training standards is not applicable to Plaintiffs' Fourth Amendment and battery claims.[47] Plaintiffs respond that a limiting instruction is not necessary and that Defendants' request is "inconsistent and without merit."[48]

Defendants have not provided enough factual evidence or legal authority to support a limiting instruction. But Defendants may re-raise this issue, with additional authority, if Defendants deem it appropriate.

Accordingly, the Court **DENIES** Defendants' MIL No. 3.

**4. MIL No. 4**

Defendants move to bifurcate the issue of punitive damages.[49] Plaintiffs do not oppose the Motion.[50]

In view of Plaintiffs' non-opposition, the Court **GRANTS** Defendants' MIL No. 4.

Based upon the request of counsel, the Court is inclined to trifurcate the trial as follows: (1) liability; (2) compensatory damages (if necessary); and (3) punitive damages (if necessary). If the parties wish to combine compensatory damages and punitive damages into a single phase, then counsel should confer and file an appropriate stipulation. The Court will discuss this issue with counsel at the final pretrial conference.

---

47 Defendants' MIL No. 3 8:16-9:18.

48 Opposition to Defendants MIL No. 3 7:22.

49 Defendants' MIL No. 4.

50 Pls.' Opp'n to Defendants MIL No. 4 ("Opposition to Defendants MIL No. 4") [ECF No. 81].

## III. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Plaintiff's MIL No. 1 [ECF No. 70] is **GRANTED**.

2. Plaintiffs' MIL No. 2 [ECF No. 72] is **GRANTED in part** and **DENIED in part**, as detailed above.

3. Plaintiffs' MIL No. 3 [ECF No. 73] is **GRANTED in part** and **DEFERRED in part**, as detailed above.

4. Plaintiff's MIL No. 4 [ECF No. 75] is **GRANTED in part** and **DENIED in part**, as detailed above.

5. Defendants' MIL No. 1 [ECF No. 71] is **DENIED without prejudice**. The Court **DIRECTS** Plaintiffs to select a narrow range of relevant photographs and to confer with Defendants regarding any remaining dispute.

6. Defendants' MIL No. 2 [ECF No. 73] is **GRANTED**. The Court will consider whether this evidence is admissible for impeachment (or other) purposes during trial, if the parties raise an appropriate objection.

7. Defendants' MIL No. 3 [ECF No. 76] is **DENIED**.

8. Defendants' MIL No. 4 [ECF No. 77] is **GRANTED**.

9. Although the Court will rule on this issue during the final pretrial conference, the Court is inclined to trifurcate the trial into the following three phases:

   a. liability;

   b. compensatory damages (if necessary); and

   c. punitive damages (if necessary).

**IT IS SO ORDERED.**

Dated: October 28, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE