ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General
DAVID KLEHM
Deputy Attorney General
State Bar No. 165302
TAMMY KIM
Deputy Attorney General
State Bar No. 262510
 600 W Broadway, Ste 1800
 San Diego, CA 92101-3375
 Ph: (619) 738-9733
 Fax: (916) 731-2120
 E-mail: David.Klehm@doj.ca.gov
*Attorneys for Defendants*
*State of California and Andrew Ornelas*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CANDIDO SESMA AND CECILIA SESMA, INDIVIDUALLY AND AS SUCCESSORS IN INTEREST TO CHARLES SESMA, DECEASED,**<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF CALIFORNIA; AND DOES 1-20, INCLUSIVE,**<br><br>Defendants. | 5:21-cv-01694-JWH-DTB<br><br>**DEFENDANTS' REQUEST TO RECALL ANDREW ORNELAS DURING DEFENSE CASE-IN-CHIEF**<br><br>Courtroom: 9D<br>Judge: The Honorable John W. Holcomb<br><br>Trial Date: December 2, 2024<br>Action Filed: July 30, 2021 |

Defendants State of California, acting by and through the California Highway Patrol (CHP) and Andrew Ornelas hereby request, pursuant to Federal Rule of Evidence 611(a), to recall Defendant Ornelas during the defense case-in-chief.

1

Federal Rule of Evidence 611(a) provides:

The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

  (1) make those procedures effective for determining the truth;

  (2) avoid wasting time; and

  (3) protect witnesses from harassment or undue embarrassment.

Fed. R. Evid. 611(a). Thus, the court has discretion to order a witness recalled for further examination – e.g., when questioner has forgotten to ask one or more key questions or new matters have been raised later in the trial. See, e.g., *United States v. Manglona*, 414 F.2d 642, 644 (9th Cir. 1969) (proper for court to permit recall of special agent who had forgotten to testify to one element of *Miranda*-type warning). "Unlike the vast majority of the other Evidence Rules, Rule 611 does not purport to regulate the admissibility of evidence. Instead, the rule gives trial courts broad powers to control the 'mode and order' of what is otherwise admissible evidence." § 6162 Policy, 28 Fed. Prac. & Proc. Evid. § 6162 (2d ed.) (footnote omitted). Thus, Fed. R. Evid. 611 indirectly affects whether proof is admitted, but the Rule does not provide an independent ground for excluding otherwise admissible evidence. *Id.* § 6163. This result is borne out by the Advisory Committee note to Rule 611 indicating that questions may arise during trial that "can be solved only by the judge's common sense and fairness in view of the particular circumstances."

Federal Rule of Evidence 103 aids this analysis by providing that a party may claim error in a ruling to exclude evidence if the error "affects a substantial right of the party" and the "party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Fed. R. Evid. 103(a). When deciding on whether to recall a witness, "[t]he court must 'consider the party's explanation for failing to introduce the evidence earlier, the admissibility of the evidence, its relevance, and the degree to which the opposing party would be

1    prejudiced by reopening the case.'" *United States v. Fields*, 763 F.3d 443, 465 (6th
2    Cir. 2014), quoting *United States v. Wilson*, 27 F.3d 1126, 1129 (6th Cir. 1994).
3        "In the usual case, the order and mode of the presentation of evidence and
4    interrogation of witnesses are determined by legal conventions and the parties'
5    choice of trial tactics.  The court steps in only in certain situations . . . ." 2 Moore's
6    Federal Rules Pamphlet § 611.6 (2024).  "The court should defer to the parties'
7    preferences respecting the mode of questioning and order of proof, so long as they
8    promote the efficient ascertainment of the truth.  Even if the court is trying to save
9    time, which is one of the objectives of Rule 611(a), it must bear in mind that
10   counsel are far more familiar with the case, so that a seemingly trivial ruling may
11   impede rather than expedite the search for truth." *Id.*
12       In the present case, allowing defendants to recall Defendant Ornelas in the
13   defense case-in-chief will avoid undue prejudice to defendants and will not
14   prejudice plaintiffs. Defendants would be undue prejudiced by the absence of
15   Defendant Ornelas' non-cumulative, facially relevant and admissible testimony
16   regarding his educational background and training at the California Highway Patrol
17   Academy, factors affecting his decision to fire his weapon at the suspect- including
18   testimony describing the metal object's physical characteristics, i.e. size, shape,
19   color he observed in the suspect's hand, and the location of the metal object in
20   relation to the other items depicted in Exhibits already admitted into Evidence.
21   Further, Defendant Ornelas would testify that he did not form the belief the suspect
22   had any mental health issues before discharging his weapon. Notably, the mental
23   health of the suspect had not been raised as an issue in this case until Plaintiff's
24   Opening Statement. Therefore, the probative value of Defendant Ornelas's
25   additional requested testimony is not substantially outweighed by considerations of
26   waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.
27       Further, allowing defendants to recall Defendant Ornelas to testify in the
28   defense case-in-chief will be effective for determining the truth, will not waste

time, and will not cause harassment or undue embarrassment consistent with Fed. R. Evid. 102 which advises, "These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."

### 1. Defendants will be prejudiced if Defendant Ornelas is not permitted to testify in the defense case-in-chief.

There was no explicit order or stipulation that Defendant Ornelas would not be recalled in the defense case-in-chief. There was no discussion at the Final Pretrial Conference that party witnesses – Defendant Ornelas – would not be recalled to testify in the defense-case-in-chief. In addition, the Final Pretrial Conference Order does not address this topic. The first time the "one and done" approach was raised in this case was in a tangential manner on the first day of trial when the following exchange occurred during a discussion about admitting the pipe into evidence:

> THE COURT: So, I think there's a couple of issues here. Mr. Klehm, from what I understand, Mr. Galipo calls a particular witness in his case-in-chief. During your cross-examination -- because we're doing one and done, right?
>
> MR. KLEHM: That's my goal, Your Honor, yes.

(See attached excerpt from the daily trial transcript for December 2.)

Counsel for Defendants did not understand this "one and done" discussion to be a Court order rather than a "goal". More particularly, since Plaintiff's counsel had expressed his intention to call several non-party CHP witnesses, counsel for Defendants did not understand that the "one and done" approach would also apply to Defendant Ornelas – as opposed to the other non-party CHP witnesses called during Plaintiff's case-in-chief.

Defendants will be unduly and severely prejudiced if Defendant Ornelas is unable to present his entire testimony to the jury regarding his background and

4

training and his observations of the suspect during the officer involved shooting incident. Additionally, Defendants intend to have Defendant Ornelas testify about his analysis of the facts he was aware of at the time he decided to discharge his weapon, including factors pertaining to the mental health of the suspect.

## 2. **Plaintiffs will not be prejudiced if Defendant Ornelas is permitted to testify in the defense case-in-chief.**

Plaintiffs' counsel can cross-examine Defendant Ornelas after his direct examination in the defense case-in-chief.

## 3. **Allowing Defendant Ornelas to testify in the defense case-in-chief will be effective for determining the truth and will not waste time.**

Defendants intend to elicit testimony only on topics not covered already during plaintiffs' case in chief. Accordingly, further testimony of Defendant Ornelas will assist the jury in determining the truth and will not waste the Court's or the jury's time. During Defendants' case-in-chief, Defendants intend to offer the testimony of Defendant Ornelas on the topics of his career as an Emergency Medical Technician before entering the CHP Academy; a brief description of his collegiate history; testimony regarding the size, shape and color of the metal object he observed the suspect holding as the suspect was running towards him, and his opinion about the mental health of the suspect. The expected length of Defendant Ornelas' testimony of these topics is 45 minutes.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /


**Conclusion**

To avoid undue prejudice, Defendants respectfully request the Court allow Defendant Ornelas to be recalled in Defendants' case-in-chief to provide the trier of fact non-cumulative, relevant and admissible testimony in an expeditious manner that would not extend Defendants' overall time limit of 18 hours.

Dated:  December 4, 2024              Respectfully submitted,

ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General

s/ David Klehm

DAVID KLEHM
TAMMY KIM
Deputy Attorneys General
*Attorneys for Defendants*
*State of California and Andrew Ornelas*

# ATTACHMENT 1

```
 1                  UNITED STATES DISTRICT COURT
 2                  CENTRAL DISTRICT OF CALIFORNIA
 3          HONORABLE JOHN W. HOLCOMB, JUDGE PRESIDING
 4   CANDIDO SESMA, ET AL.,        )
                                   )
 5                                 )
                                   )
 6                 Plaintiffs,     )
                                   )
 7                                 )
                                   )
 8        Vs.                      )   No. CV21-01694-JWH
                                   )
 9                                 )
                                   )
10   STATE OF CALIFORNIA, ET AL.,  )
                                   )
11                                 )
                                   )
12                 Defendants.     )
                                   )
13   _____)
14
15
16           REPORTER'S TRANSCRIPT OF PROCEEDINGS
17                    JURY TRIAL, DAY 1
18                 LOS ANGELES, CALIFORNIA
19                MONDAY, DECEMBER 2, 2024
20
21
22
23         MIRIAM V. BAIRD, CSR 11893, CCRA
          OFFICIAL U.S. DISTRICT COURT REPORTER
24        411 WEST FOURTH STREET, SUITE 1-053
             SANTA ANA, CALIFORNIA 97201
25            VELIZBAIRDMIRIAM@GMAIL.COM
```

UNITED STATES DISTRICT COURT

have any audiovisual material?

       MR. KLEHM: I probably will not be using any AV material but possibly just photographs, which I will clear with Mr. Galipo beforehand. And these are exhibits that I believe have already been deemed authenticated and to be admissible according to the joint exhibit list.

       THE COURT: Okay. Yes. Please clear them ahead of time so we don't have any glitches. Anything else?

       We have the issue with the pipe. I received a filing -- I received something about an issue with a potential exhibit, the lead pipe. I didn't do anything with it when I received the communication. Again, I can't remember how I received that communication.

       Has that been resolved? Is that something I need to rule on? Where are we on that, please?

       MR. KLEHM: Your Honor, that was my request, I believe, and that was we -- defendants have subpoenaed several officers and forensic people from the Ontario Fire Department who conducted the investigation, the homicide investigation, at the scene.

       One of the people we subpoenaed was the evidence person, the CSI person in charge of the evidence, and we asked her to bring several pieces of evidence including the lead, solid metal pipe. I'm not referring to it as lead. I don't know what composition it is, but it's a solid, heavy

1  metal pipe.
2           In any event, because she wouldn't be coming here
3  to testify until defendant's case-in-chief, which ostensibly
4  would start either this Thursday afternoon or Monday, I was
5  wondering if the Court -- she's under subpoena for today but
6  she's on on-call agreement until we need her -- I was
7  wondering if the Court would allow her to deliver that item
8  under subpoena so that we could have it in court during
9  plaintiff's case-in-chief so I could question, for instance,
10 plaintiff's expert about it and the officers who -- based on
11 Mr. Galipo's prior MO, I believe he's going to call my
12 clients in his case-in-chief.
13          So I would like to be able to present this piece of
14 evidence to my clients and to the jury so they could -- so
15 the jury could see it while I'm examining my clients who are
16 going to be called in Mr. Galipo's case-in-chief.
17          THE COURT: Mr. Galipo, is there an issue here? Is
18 there something I need to rule on?
19          MR. GALIPO: I don't think so. There's not a --
20 I'm not going to raise a foundational issue with respect to
21 the pipe to say how do we know this is the pipe or what's
22 been the chain of custody. I'm not going to do that. We
23 have pictures of the pipe, so I think we'll know.
24          My concern more was how it would be used. The
25 reason I say that is because I believe, although there's

1   disputes in the testimony about the distance, whether it was
2   15 feet or 40 feet or what have you, I think it's undisputed
3   that the pipe was never closer to the officer than that.  And
4   the officer never held the pipe, for example, or examined it
5   within a foot or two before the shooting.
6           So I'm concerned that if, for example, they want to
7   pass it to the jurors so they can look at it or see how heavy
8   it is, for example, or have someone stand in front of the
9   jurors and hold it, you know, hold it up from three or
10  five feet away.  That, I mean, from my perspective would be
11  unfair to the plaintiffs because the officer didn't see it
12  that way.
13          If they want to show it from a distance, the
14  witness stand or somewhere else, then I would probably be
15  okay with that, although I'll note that there are
16  photographs, several photographs of it.  And we have this
17  issue in other cases, as you can imagine, with knives and
18  other weapons.  So that really was my concern.
19          I don't want to put counsel through hoops of having
20  to wait until Monday to have this person come to say this is
21  the pipe.  I mean, if it comes here earlier, I don't think
22  that's the issue.  I'm more concerned prejudicially how it
23  may be dealt with and whether Your Honor thinks it should be
24  displayed at all; and if so, in what manner.  That's the
25  concern.

1     As the Court is also aware, at least in watching
2  the video, we don't see the pipe.  So that was more my issue
3  than the pipe itself.
4     THE COURT:  So I think there's a couple of issues
5  here.  Mr. Klehm, from what I understand, Mr. Galipo calls a
6  particular witness in his case-in-chief.  During your
7  cross-examination -- because we're doing one and done, right?
8     MR. KLEHM:  That's my goal, Your Honor, yes.
9     THE COURT:  Because we're doing one and done, in
10 your cross-examination you may want to use this pipe, the
11 physical pipe as an exhibit.  So if you want to do that,
12 you'll have to get it admitted into evidence.  Maybe it's
13 agreed to; maybe it's not, whatever.  If it's in evidence,
14 what do you plan to do with it?  Just have the witness hold
15 it, look at it, testify about it?
16    MR. KLEHM:  No.  I would like to approach the
17 witness and ask him if this was similar to the distance that
18 he saw the suspect approaching him from initially and when he
19 fired his first volley of shots so the jury can see more or
20 less what my client's perspective was in relation to the
21 suspect approaching him with this pipe in the hand.
22    THE COURT:  Well, I don't want you without
23 permission leaving -- you've got to stay within an arm's
24 distance of the lectern.
25    MR. KLEHM:  Fair enough, Your Honor.  But I think

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Candido Sesma, et al. v. State of California, et al.** | No. | **5:21-cv-01694-JWH-DTB** |

I hereby certify that on **December 4, 2024**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' REQUEST TO RECALL ANDREW ORNELAS DURING DEFENSE CASE-IN-CHIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on **December 4, 2024**, at San Diego, California.

| | |
|---|---|
| G. Lopez | *[signature]* |
| Declarant | Signature |

LA2021603706
84858574.docx