1  ROB BONTA
   Attorney General of California
2  DONNA M. DEAN
   Supervising Deputy Attorney General
3  DAVID KLEHM
   Deputy Attorney General
4  State Bar No. 165302
   TAMMY KIM
5  Deputy Attorney General
   State Bar No. 262510
6   300 South Spring Street, Suite 1702
    Los Angeles, CA  90013-1230
7   Telephone:  (213) 269-6182
    Fax:  (916) 731-2119
8   E-mails:  David.Klehm@doj.ca .gov;
    Tammy.Kim@doj.ca.gov
9  *Attorneys for Defendants*
   *State of California and Andrew Ornelas*
10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14

15
   | | |
   |---|---|
16 **CANDIDO SESMA AND CECILIA SESMA, INDIVIDUALLY AND AS SUCCESSORS IN INTEREST TO CHARLES SESMA, DECEASED,** | 5:21-cv-01694-JWH-DTB
17
   | | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW; MEMORANDUM OF POINTS AND AUTHORITIES**
18                                  Plaintiffs,
19       v.                         [Fed. R. Civ. P. 50(a)(1)(B)]
20 **STATE OF CALIFORNIA; AND DOES 1-20, INCLUSIVE,**
21                                  Courtroom:   9D
                                    Judge:       The Honorable John W.
22                                  Defendants.              Holcomb
                                    Trial Date:  December 2, 2024
23                                  Action Filed: 7/30/2021

24

25

26     TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

27     PLEASE TAKE NOTICE that defendants State of California and Andrew

28 Ornelas (collectively, "Defendants") hereby move for judgment as a matter of law

                                    1

1    pursuant to FRCP 50(a)(1)(B).

2        Plaintiffs have failed to prove a 42 U.S.C. § 1983 violation based on the

3    Fourth Amendment against Defendant Ornelas for the following reasons:

4        1.   Plaintiffs have failed to prove that Defendant Ornelas' use of force was

5            objectively unreasonable under all of the circumstances, as the evidence

6            showed that decedent Charles Sesma ("Sesma"), unprovoked, ran at

7            Officer Ornelas with a solid metal pipe and was 2.8 seconds away from the

8            officer before Officer Ornelas fired his weapon; Officer Ornelas yelled

9            verbal commands to "Don't move! Drop it!" and, four seconds later, fired

10           the initial shots when Sesma continued charging; Officer Ornelas had no

11           reasonable means of retreat; the shots fired were within 1.1 second of each

12           other in the first volley and stopped once it appeared the threat had

13           stopped; the first volley of shots had not incapacitated the threat, as Sesma

14           then lunged towards Officer Ornelas with the pipe, forcing Officer Ornelas

15           to fire two shots within one-half of one second of each other; and, after the

16           threat was then finally stopped, Officer Ornelas ceased fire.

17       2.  Qualified immunity bars Plaintiffs' claim.

18       Plaintiffs have failed to prove their state law claims for battery and negligence

19    against both Defendants for the following reasons:

20       1.  Plaintiffs have failed to prove battery and negligence for the same reasons

21           as the lack of evidence on their Fourth Amendment claim and, in addition,

22           that Officer Ornelas had no information that Sesma was mentally ill or,

23           prior to Sesma charging at Officer Ornelas, no reason to think that Sesma

24           would react with the apparent intent, ability and opportunity to cause

25           Officer Ornelas serious bodily injury;

26       2.  Plaintiffs have failed to prove that Defendant Ornelas' use of deadly force

27           was not necessary to defend human life;

28

3.  Defendant Ornelas acted in self-defense, as the evidence showed what is summarized above and below;

4.  California Government Code section 820.2 bars Plaintiffs' state law claims against Defendant Ornelas, as the evidence shows that Office Ornelas sought to apprehend Sesma, who was a fleeing suspect from multiple hit-and-run accidents, and used justified lethal force in defense of Officer Ornelas's safety as summarized above and below;

5.  California Government Code section 820.4 bars Plaintiffs' state law claims against Defendant Ornelas for the same reasons as Government Code section 820.2;

6.  California Penal Code sections 835, 835a, 196(b), and Government Code section 845.3(b)(3) bar Plaintiffs' state law claims against Defendant Ornelas for the same reasons discussed above;

7.  California Government Code section 815.2(b), bars Plaintiffs' state law claims against Defendant State for any or all of the reasons set forth above as to immunity to Defendant Ornelas.

For these reasons, judgment as a matter of law as to Plaintiffs' claims should be entered in Defendants' favor.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed in support thereof, the pleadings on file in this action, all matters of which this Court must or may take judicial notice, and such further evidence and argument as the Court may allow.

1    Dated:  December 10, 2024                    Respectfully submitted,

2                                                ROB BONTA
                                                 Attorney General of California
3                                                DONNA M. DEAN
                                                 Supervising Deputy Attorney General
4

5
                                                 /s/ Tammy Kim
6                                                TAMMY KIM
                                                 Deputy Attorney General
7                                                *Attorneys for Defendants*
                                                 *State of California and Andrew*
8                                                *Ornelas*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 8

SUMMARY OF EVIDENCE ...................................................................................... 8

STANDARDS FOR JUDGMENT AS A MATTER OF LAW ............................... 12

ARGUMENT ............................................................................................................ 12

I.    OFFICER ORNELAS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW IN HIS FAVOR ON THE FOURTH AMENDMENT CLAIM ............................................................................ 12

    A.    Plaintiffs Have Not Proved That the Use of Force Was Unreasonable. ................................................................................ 12

    B.    Qualified Immunity Bars Plaintiffs' Section 1983 Claim. ........ 15

II.    OFFICER ORNELAS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW IN HIS FAVOR AS TO PLAINTIFF'S STATE LAW CLAIMS FOR BATTERY AND NEGLIGENCE ..... 22

    A.    Plaintiffs Have Not Proved That Officer Ornelas's Use of Force Was Unreasonable; Therefore He Is Entitled to Judgment on the State Law Claims. ................................................ 22

    B.    Plaintiffs' State Law Claims Are Barred by State Law Immunities. ............................................................................ 24

        1. Self-Defense ................................................................. 24

        2. Government Code section 820.2 .................................. 24

        3. Government Code section 820.4 .................................. 25

        4. Penal Code sections 835, 835a, 196(b) and Government Code section 845.8(b)(3) ............................................ 26

III.    BECAUSE THE STATE LAW CLAIMS AGAINST OFFICER ORNELAS ARE BARRED, THE CLAIMS AGAINST THE STATE OF CALIFORNIA ARE ALSO BARRED. ......................... 27

CONCLUSION ......................................................................................................... 28

# TABLE OF AUTHORITIES

**Page**

CASES

*Abuka v. City of El Cajon*
No. CV 14-9639-PJW, 2019 WL 8112469 (C.D. Cal. Oct. 16, 2019) ................................................................................... 20, 22

*Alston v. Read*
663 F.3d 1094 (9th Cir. 2011) ............................................. 16

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011) ............................................................ 15

*Barber v. City of Santa Rosa*
No. C-08-5649 MMC, 2010 WL 5069868 (N.D. Cal. Dec. 7, 2010) .......... 20, 22

*Blanford v. Sacramento Cty.*
406 F.3d 1110 (9th Cir. 2005) ........................................ 19, 22

*Bratt v. City and County of San Francisco*
50 Cal. App.3 d 550, 553 (1975) ......................................... 24

*Brosseau v. Haugen*
543 U.S. 194 (2004) (per curiam) .................................... 16, 17

*Brown v. Ransweiler*
171 Cal. App. 4th 516 (2011) .................................... 22, 23, 27

*Chavez v. Las Vegas Metropolitan Police Dept.*
No. 2:11–CV–01445–LRH–GWF, 2014 WL 374444 (D. Nev., Feb. 3, 2014) .......... 21, 22

*Conway v. County of Toulumne*
231 Cal. App. 4th 1005 (2014) ........................................... 25

*County of Sacramento v. Superior Court*
8 Cal. 3d 479 (1972) ........................................................... 27

*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*
348 F.3d 271 (1st Cir. 2003) ...................................... 12, 25, 26

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3    *Davis v. Scherer*

4         468 U.S. 183 (1984) ................................................................. 15

5    *District of Columbia v. Wesby*

6         583 U.S. 48 (2018) ............................................................ 15, 16

7    *Estate of Hernandez by & through Hernandez v. City of Los Angeles*
          96 F.4th 1209 (9th Cir.) .................................................... 17, 18

8

9    *Estate of Yanira Serrano v. Trieu*
          2016 WL 1089225 ............................................................. 20, 22

10

11   *Eyre v. City of Fairbanks*
          No. 23-35206, 2024 WL 3688540 (9th Cir. Aug. 7, 2024) ................. 22

12

13   *Garcia v. United States*
          826 F.2d 806 (9th Cir. 1987) .............................................. 20, 22

14

15   *Gilmore v. Superior Court*
          230 Cal. App. 3d 416 ........................................................... 27

16   *Graham v. Connor*

17        490 U.S. 386 (1989) ................................................... 13, 14, 22

18   *Han v. City of Folsom*

19        551 Fed.App'x 923 (9th Cir. 2014) ...................................... 20, 22

20   *Hart v. City of Redwood City*
          99 F.4th 543 (9th Cir. 2024) ................................................. 19

21

22   *Hart v. City of Redwood City*
          99 F.4th 543 (9th Cir. 2024) ................................................. 22

23

24   *Hayes v. County of San Diego*
          57 Cal.4th 622 (2013) ......................................................... 23

25

26   *Hernandez v. City of Huntington Beach*
          798 Fed. Appx. 85 (9th Cir. 2019) ...................................... 20, 22

27   *Hernandez v. City of Pomona*

28        46 Cal. 4th 501 (2009) ............................................... 22, 23, 24

iii

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*Hopson v. Alexander*

4
    71 F.4th 692 (9th Cir. 2023)..................................................................15, 16, 17

5

*J.J. v. M.F.*

6
    223 Cal.App.4th 968 (2014)................................................................................24

7

*Kisela v. Hughes*

8
    584 U.S. 100 (2018) ...........................................................................................13

9

*Koussaya v. City of Stockton*
    54 Cal. App. 5th 909 (2020)........................................................................23, 27

10

*Lal v. State of California.*

11
    746 F.3d 1112 (9th Cir. 2014).........................................................15, 19, 21, 22

12

*Langfitt v. Pierce County*

13
    No. 23-35121, 2024 WL 3617318 (9th Cir. Aug. 1, 2024)..........................21, 22

14

*MacEachern v. City of Manhattan Beach*

15
    623 F.Supp.2d 1092 (C.D. Cal. 2009)........................................................21, 22

16

*Malley* v. *Briggs*

17
    475 U. S. 335 (1986) ..........................................................................................16

18

*Mattos v. Agarano*

19
    661 F.3d 443 (9th Cir. 2011) .............................................................................15

20

*McCarthy v. Frost*

21
    33 Cal. App. 3d 872 (1973)................................................................................24

22

*McCorkle v. City of Los Angeles*
    70 Cal. 2d 252 (1969)........................................................................................25

23

*Michenfelder v. City of Torrance*

24
    28 Cal. App. 3d 202 (1972)...............................................................................24

25

*Mitchell v. Forsyth*

26
    472 U.S. 511 (1985) ..........................................................................................15

27

*Mullenix v. Luna*

28
    577 U.S. 7 (2015) .........................................................................................16, 17

iv

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Munoz v. City of Union City*
120 Cal. App. 4th 1077 (2004) ........................................................................ 23

5

6

*Munoz v. Olin*
24 Cal.3d 629 (1979) ...................................................................................... 23

7

8

*Nehad v. Browder*
929 F.3d 1125 (9th Cir. 2019) ........................................................................ 13

9

*Orn v. City of Tacoma*
949 F.3d 1167 (9th Cir. 2020) ........................................................................ 15

10

11

12

*Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial
Services, Inc.*
537 F.3d 1184 (10th Cir. 2008) ...................................................................... 12

13

14

*Pearson v. Callahan*
555 U.S. 223 (2009) ........................................................................................ 15

15

16

*Plumhoff v. Rickard*
572 U.S. 765 (2014) .................................................................................. 14, 18

17

18

*Reich v. City of Elizabethwon*
945 F.3d 968 (6th Cir. 2019) .......................................................................... 21

19

*Reichle v. Howards*
566 U.S. 658 (2012) ........................................................................................ 15

20

21

*Reynolds v. County of San Diego*
858 F.Supp. 1064 (S.D. Cal. 1994) ................................................................ 25

22

23

*Rivas-Villegas v. Cortesluna*
595 U.S. 1 (2021) ............................................................................................ 17

24

25

*S.B. v. County of San Diego*
864 F.3d 1010 (9th Cir. 2017) .............................................................. 13, 19, 22

26

27

*Saucier v. Katz*
533 U.S. 194 (2001) ........................................................................................ 17

28

v

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Shafer v. County of Santa Barbara*
    868 F.3d 1110 (9th Cir. 2017) ................................................................. 15

*Smith v. Agdeppa*
    81 F.4th 994 (9th Cir. 2023) ............................................................. 16, 22

*Smith v. City of Hemet*
    394 F.3d 689 (9th Cir. 2005) ................................................................. 13

*Waid v. County of Lyon*
    87 F.4th 383 (9th Cir. 2023) ................................................................. 19

*Watkins v. City of San Jose*
    No. 15-CV-05786-LHK, 2017 WL 173915 (N.D. Cal. May 4,
    2017) ................................................................................................ 20, 22

*Williams v. City of Sparks*
    112 F.4th 635 (9th Cir. 2024) ............................................................. 13, 14

*Woodward v. City of Tucson*
    870 F.3d 1154 (9th Cir. 2017) ................................................. 18, 19, 21, 22

**STATUTES**

42 United States Code
    § 1983 ........................................................................................... 2, 8, 15

California Government Code
    § 815.2(a) .............................................................................................. 27
    § 815.2(b) .......................................................................................... 3, 27
    § 820.2 ................................................................................. 3, 24, 25, 26
    § 820.4 ...................................................................................... 3, 25, 26
    § 845.3(b)(3) .......................................................................................... 3
    § 845.8(b)(3) .................................................................................... 26, 27

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

California Penal Code

    § 196(b).................................................................................3, 26

    § 835......................................................................................3, 26

    § 835a....................................................................................3, 26

    § 835a.........................................................................................27

    § 835a, subd. (d) .......................................................................27

**CONSTITUTIONAL PROVISIONS**

Fourth Amendment ..........................................................*passim*

**COURT RULES**

Federal Rule of Civil Procedure

    § 50(a)(1)(A).................................................................................12

    § 50(a)(1)(B)............................................................................2, 12

    § 50(a)(2) .....................................................................................12

1
2

**INTRODUCTION**

3   This lawsuit arises out of the shooting of Charles Sesma (Sesma) by California
4   Highway Patrol Officer (CHP) Officer Andrew Ornelas (Officer Ornelas). The
5   shooting occurred after Sesma, who was suspected of multiple hit-and-run accidents
6   on a freeway, ignored officer commands to stop while he was on foot, armed
7   himself with a solid metal, jagged-edged pipe, and, without provocation, suddenly
8   and inexplicably charged at Officer Ornelas, twice, with the pipe.

9   The remaining claims are for an alleged 42 U.S.C. § 1983 violation for
10  excessive force based on the Fourth Amendment as against Officer Ornelas, and
11  two state law claims for battery and negligence as against Defendants Ornelas and
12  Defendant State of California (the State). There is insufficient evidence for a
13  reasonable jury to find that Officer Ornelas' use of force was objectively
14  unreasonable, and qualified immunity bars the Section 1983 claim. Insufficient
15  evidence exists for the state law claims, and the claims are barred by immunities.
16  Accordingly, Defendants move for judgment as a matter of law as to all three
17  claims.

18  **SUMMARY OF EVIDENCE**

19  According to the testimony of all CHP officers, audio dispatch, and the
20  MVARS, Officer Ornelas responded to a call concerning a suspect on foot bail
21  from multiple hit-and-run accidents on the freeway, and after having crashed
22  through a fence. Through radio communications, and in separate patrol vehicles,
23  Officers Steen and Ornelas first encountered the suspect, Sesma, at the Mercedes
24  Benz parking lot. There, video evidence and the testimony of Officers Steen and
25  Ornelas show that Sesma was on a hill by railroad tracks, and stood looking directly
26  at them while they gave commands for him to stop walking. Sesma walked a few
27  steps in Officer Ornela's direction, stared at the officers, and picked up the metal
28  pipe down by his feet. Defense video expert Parris Ward testified that this object,

the dark pixels of the pipe, can be seen on Officer Ornelas's MVARS. According to the MVARS, audio dispatch, and the testimony of Officer Steen, after picking up the pipe, Sesma walked in a westerly direction along the train tracks. Ornelas broadcasted over the radio that the suspect had picked up a metal object, was carrying it in his hand, and was walking westbound towards Haven Avenue. (12/4/24, Steen testimony; Tr. Exhs. 1, 2, & 20.)

Per the testimony of Officers Ornelas and Steen, they briefly discussed their tactical plan. Officer Steen was to stay in the parking lot and maintain visual contact of Sesma, while Ornelas drove to Haven Avenue to go to the other side of Sesma. Ornelas also broadcasted to Officer Nichols to "go to Haven on the tracks, just west of our location, stand by there, he's going to walk to you." (12/3/24, Nichols testimony; Tr. Exs. 1 & 20.)

During the entire time that Sesma made his way west to the overpass bridge, Officer Steen kept visual contact of Sesma and saw that Sesma carried the pipe that he had picked up earlier as he made his way to the middle of the bridge. (12/4/24, Steen testimony.) Per the testimony of Officers Ornelas and Steen, Officer Ornelas climbed up the embankment from Haven Avenue to the top of the embankment by the east end of the overpass bridge above Haven.

Officer Ornelas looked east of his location but did not see Sesma.  (12/3/24, Ornelas testimony.) Officer Ornelas then looked to his west, and saw Sesma sitting on the bridge, approximately 5 to 7 feet from the fence, above the center divider of Haven Avenue. (12/3/24, Ornelas testimony; Nichols testimony; 12/4/24, Steen testimony; see Tr. Ex. 3 at 3:01.)

According to three of the four CHP officers on scene, Officer Ornelas stood within the first fence post section or at the edge of the eastern most edge of the bridge. (12/3/24, Nichols testimony; 12/4/24, Ornelas and Steen testimony; 12/9/24, Cichella testimony.) Officer Ornelas stood a step or two west of the east edge of the bridge, on loose gravel, flanked by parked railcars 12 to 15 feet to his right, the

walled fence of the bridge 7 to 8 feet to his left, and a steep embankment behind him. (12/3/24, Ornelas testimony; see Tr. Ex. 14-2.) The only other officer, Officer Nichols, did not see Ornelas' location because his view of Ornelas was obscured by a tree. (12/3/24, Nichols testimony.) At that point in time, Sesma was faced in a northerly direction, and not in the direction of Officer Ornelas. (12/3/24, Nichols testimony; 12/4/24, Steen testimony.)

Without any provocation or command from Officer Ornelas, and without any words from Sesma, Sesma stood up and began running full speed at Officer Ornelas. (12/3/24, Ornelas testimony; Nichols testimony; 12/9/24, Cichella testimony; see Tr. Exhs. 1 & 3.) According to all three CHP officers who observed Sesma running (Ornelas, Nichols and Cichella), corroborated by the MVARS video evidence, Sesma charged towards Ornelas from the center divider of the bridge, with arms pumping, and holding the heavy, solid metal pipe. All four CHP officers on scene saw the pipe either just before or during Sesma's run. (12/3/24, Ornelas and Nichols testimony; 12/4/24, Ornelas and Steen testimony; 12/9/24, Cichella testimony.) Officer Cichella's MVARS video (Tr. Exh. 3), and its freeze frame at approximately 3 minutes and 3 seconds, as well as the testimony and demonstrative evidence of defense video expert Parris Ward, also show the pixelation of the pipe in Sesma's right hand against the blue sky as he charged at Officer Ornelas.

As depicted on Ornelas's MVARS (Tr. Exh. 1), Sesma began to run, Officer Ornelas yelled, "Don't move! Don't move! Drop it! Drop it," and waited four seconds from the start of shouting this command before firing any shots. (Tr. Exh. 1, at 5:02 to 5:07.) Based on the uncontradicted testimony of expert Ward, Sesma ran at Ornelas at a speed of 14.1 feet per second (12/9/24, Ward testimony). Accepting the 40-foot distance calculated by Plaintiffs' expert Roger Clark from which Ornelas fired the first volley, Sesma was a **mere 2.8 seconds away from being upon Officer Ornelas** before the first five shots were fired.

Further, according to the uncontradicted testimony of defense police practices expert Clarence Chapman, Ornelas did not have enough perception reaction time to see that Sesma had been struck. (12/10/24, Chapman testimony.) As the defense ballistics expert Rocky Edwards testified, a hollow point bullet such as those in Ornelas's gun travel at approximately 11,000 feet per second. (12/9/24, Edwards testimony.) The five shots in the first volley were fired within the span of 1.11 seconds, hundredths of a second apart from each other. (12/9/24, Ward testimony; Tr. Exh. 45.) According to medical examiner Dr. Huss-Bawab and ballistics expert Edwards, none of the five shots from the first volley were imminently fatal.

After an approximate 6 second pause, still armed with the solid metal pipe, video evidence and Officer Ornelas' testimony show that Sesma then got up and lunged towards Officer Ornelas before two more shots were fired. (12/3/24, Ornelas testimony; 12/4/24, Ornelas testimony.) According to ballistics expert Edwards and Dr. Huss-Bawab, the trajectory of these shots indicate that they went from the face to the chest and, per Edwards, the trajectory was consistent with Sesma being in a forward position, not on his knees, such that head and chest were positioned in line with the muzzle. Despite that Plaintiffs' expert Clark opined that, by the first volley, Sesma was no longer a "credible threat," Ornelas's MVAR video (Tr. Exh. 1), the trajectory of the last two shots, and even the testimony and reports of paramedics Bumanlag and Bowen observing that Sesma was combative and uncooperative 13 minutes or more after <u>all seven shots</u> from <u>both</u> volleys had been sustained, support Ornelas' testimony that Sesma lunged toward him at the time Ornelas fired the second volley.

As for the pipe's final location, all of the evidence supports only the conclusion that Sesma carried the pipe farther east through the second volley. Officer Ornelas testified consistently that Sesma never threw the pipe, and Plaintiffs' expert Clark even adopted that as a fact in his opinions. (12/3/24, Ornelas testimony; 12/4/24, Clark testimony.) The only testimony has been that the

pipe was by placard 7 in the scene photographs (e.g., Tr. Exh. 31-41) and, per the testimony of Steen and Cichella, between 4 to 7 feet away from Sesma's resting position after the second volley. (12/4/24, Ornelas and Steen testimony; 12/9/24, Cichella testimony.)[1]

## STANDARDS FOR JUDGMENT AS A MATTER OF LAW

A motion for judgment as a matter of law "may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may grant judgment as a matter of law against that party as to a claim or issue. Fed. R. Civ. P. 50(a)(1)(A) and (B). While the Court may not weigh witness credibility, it may "assume the veracity 'of any admissions made and stipulations entered into by the party opposing the Rule 50 motion . . . as well as any evidence derived from disinterested witnesses that has not been contradicted or impeached.'" *Cruz-Vargas v. R.J. Reynolds Tobacco Co.,* 348 F.3d 271, 275 (1st Cir. 2003) (citation omitted, ellipses in original). The question is whether there is evidence upon which the jury could properly find for the nonmoving party. *Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Services, Inc.,* 537 F.3d 1184, 1191 (10th Cir. 2008).

## ARGUMENT

I. **OFFICER ORNELAS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW IN HIS FAVOR ON THE FOURTH AMENDMENT CLAIM**

   A. **Plaintiffs Have Not Proved That the Use of Force Was Unreasonable.**

---

[1] If plaintiffs' expert Clark's version of events were accepted, with the first volley of shots being fired from a distance of 40 feet away, the pipe would have to have been thrown by Sesma 40-plus feet in order to have landed by the location next to placard 7 by the railroad tracks. Even if Plaintiffs were to concede that Sesma held the pipe before the second volley, assuming that Sesma fell from the second volley at 25 feet from the east end of the bridge, the pipe would still have been flung 20-plus feet in order to have landed by the placard 7 location.

1    Judgment as a matter of law should be granted in favor of Officer Ornelas as
2    to Plaintiff's Fourth Amendment claim because Plaintiffs have proffered no
3    evidence from which a reasonable jury could conclude that the use of force was
4    unreasonable.

5    A claim of excessive force against a police officer is considered a seizure that
6    is analyzed under the objective reasonableness standard of the Fourth Amendment.
7    *Graham v. Connor*, 490 U.S. 386, 397 (1989). Courts analyze reasonableness from
8    the perspective of a reasonable officer on the scene, and under a totality-of-
9    circumstances analysis with the facts and circumstances that existed at the time. *Id*.
10   at 396-397. "*Graham* identified several factors to consider when evaluating the
11   strength of the government's interest in the force used: (1) the severity of the crime
12   at issue, (2) whether the suspect poses an immediate threat to the safety of the
13   officers or others, and (3) whether [the suspect] is actively resisting arrest or
14   attempting to evade arrest by flight." *Williams v. City of Sparks*, 112 F.4th 635, 643
15   (9th Cir. 2024). "The most important *Graham* factor is whether the suspect posed
16   an immediate threat to anyone's safety." *Id.* (quoting *Nehad v. Browder*, 929 F.3d
17   1125, 1132 (9th Cir. 2019); *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th
18   Cir. 2017). The Ninth Circuit has repeatedly emphasized that, as a matter of
19   common sense, an armed criminal suspect represents the paradigm threat to officer
20   safety. *See, Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) ("[W]here a
21   suspect threatens an officer with a weapon such as a gun or a knife, the officer is
22   justified in using deadly force.")

23   Three key principles must be kept in mind when these competing factors are
24   weighed. First, the "reasonableness" of a particular use of force must be judged
25   from the perspective of a reasonable officer on the scene, rather than with the
26   benefit of 20/20 vision of hindsight. *Kisela v. Hughes*, 584 U.S. 100, 103
27   (2018) (quoting *Graham*, 490 U.S. at 396); *Williams,* 112 F.4th at 643. Second, a
28   court must allow "for the fact that police officers are often forced to make split-

second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 396-97 (internal quotations omitted)); *Williams*, 112 4th at 643. Third, "officers need not employ the least intrusive means available, so long as they act within a range of reasonable conduct." *Id.*

Here, the evidence presented is that Officer Ornelas's use of force was reasonable given the totality of the circumstances. Sesma ran at Ornelas armed with a heavy metal pipe, at 14.1 feet per second, and was 2.8 seconds away from Ornelas. Ornelas, trapped on the embankment with railcars to his right, the fence to his left, a slope to his rear, and on loose, gravelly terrain, had no reasonable means to retreat. The pipe itself was nearly 6 pounds and nearly 11 inches long, with a near 2-inch circumference, and a capable deadly weapon. (12/6/24, Chapman testimony; Tr. Exhs. 31-45 – 31-47.) Before firing the first shots, Ornelas commanded Sesma to "Don't move! Drop it!" four seconds before firing, but Sesma continued running full speed. Five shots in a span of 1.1 second was not excessive; as testified by defense police practices expert Clarence Chapman, officers are trained for defensive shooting purposes to stop the threat. (12/6/24, Chapman testimony.) The five shots did not incapacitate Sesma and, being a credible threat, Sesma lunged towards Officer Ornelas for a second time at a closer distance still armed with the pipe, forcing Ornelas to fire the last two shots. These last shots were within one-half of one second of each other, and were the shots that finally stopped the threat. As the Ninth Circuit recognizes, "[i]t stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Williams*, 112 F.4th at 645 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (internal quotation marks omitted)). "In other words, 'if lethal force is justified, officers are taught to keep shooting until the threat is over.'" *Id.* (quoting *Plumhoff,* 572 U.S. at 777).

14

1

**B.    Qualified Immunity Bars Plaintiffs' Section 1983 Claim.**

2       Judgment should be granted in Officer Ornelas's favor because the evidence

3   and case law dictate that the claim is barred by the doctrine of qualified immunity.

4       Under the doctrine of qualified immunity, police officers are not liable

5   under § 1983 unless (1) they violated a federal statutory or constitutional right, and

6   (2) the unlawfulness of their conduct was "clearly established at the time." *District*

7   *of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566

8   U.S. 658, 664 (2012)); *Hopson v. Alexander*, 71 F.4th 692, 691 (9th Cir. 2023).

9   Courts have the discretion to decide which prong of this analysis to address first

10  under the circumstances of a particular case. *Pearson v. Callahan*, 555 U.S. 223,

11  236 (2009). A decision on either prong in the defendant's favor establishes

12  qualified immunity, even without consideration of the other prong. *See Reichle*, 566

13  U.S. at 663; *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir.

14  2017), *cert. denied sub nom. Shafer v. Padilla*, 138 S. Ct. 2582 (2018), citing

15  *Pearson*, 555 U.S. at 236; *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir.

16  2020) ("We have the discretion to skip the first step in certain circumstance, as

17  when the officer is plainly entitled to prevail at the second step.").

18      "[Q]ualified immunity shields an officer from liability even if his or her action

19  resulted from 'a mistake of law, a mistake of fact, or a mistake based on mixed

20  questions of law and fact[.]'" *Lal v. State of California.*, 746 F.3d 1112, 1116 (9th

21  Cir. 2014) (quoting *Mattos v. Agarano*, 661 F.3d 443, 440 (9th Cir. 2011) (en

22  banc)). This is to grant officials "breathing room to make reasonable but mistaken

23  judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743

24  (2011). Its purpose is to ensure that peace officers, in particular, will not always err

25  on the side of caution for fear of being held liable. *Mitchell v. Forsyth*, 472 U.S.

26  511 (1985); *Davis v. Scherer*, 468 U.S. 183, 196 (1984); *see also*, *Lal*, 746 F.3d at

27  1116. Thus, "[w]hen properly applied, [the doctrine of qualified immunity] protects

28  all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*,

563 U.S. at 743. *See also, Malley* v. *Briggs*, 475 U. S. 335, 341 (1986); *Hopson*, 71 F.4th at 697.

The burden of showing that the constitutional right at issue was clearly established is upon the plaintiffs. *Alston v. Read*, 663 F.3d 1094 (9th Cir. 2011); *Smith v. Agdeppa*, 81 F.4th 994, 1004 fn. 4 (9th Cir. 2023) ["*Agdeppa*"]. Defendants bear no such analogous burden and are neither required to find factually on-point cases that clearly establish the lawfulness of an officer's actions nor bring forward precedent that shows the *un*lawfulness of their conduct was *not* clearly established. *Hopson*, 71 F.4th at 708.

For a constitutional right to have been "clearly established", then-existing law must have placed the constitutionality of the officer's conduct "beyond debate," such that every reasonable official would have understood that what he is doing is unlawful. *Wesby*, 583 U.S. at 63; *Hopson*, 71 F.4th at 697 (quoting same). "[A] rule is only clearly established if it has been settled by controlling authority or a robust consensus of cases of persuasive authority that clearly prohibits the officer's conduct in the particular circumstances, with a high degree of specificity." *Hopson*, 71 F.4th at 697 (quoting *Wesby*, 583 U.S. at 63-64) (internal quotation marks omitted).

The Supreme Court has "stressed that the 'specificity' of the rule is 'especially important in the Fourth Amendment context." *Wesby*, 583 U.S. at 64 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix,* 577 U.S. at 13 (original emphasis). The inquiry must be undertaken in light of the specific context of the case, and not as a broad general proposition. *Id*.; *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer

confronts.'" *Mullenix,* 577 U.S. at 13 (quoting *Saucier v. Katz,* 533 U.S. 194, 205

(2001)). Thus, "Plaintiffs asserting excessive force claims must … point to an

existing rule that 'squarely governs' the facts at issue and that moves the officer's

actions outside the 'hazy border between excessive and acceptable force.'" *Hopson*,

71 F.4th at 698 (quoting *Brosseau*, 543 U.S. at 201 and citing *Rivas-Villegas v.

Cortesluna*, 595 U.S. 1 (2021)).

   Illustrative of how no clearly established law squarely governed the facts of

this case is a recently vacated opinion, reheard en banc in September 2024, and

pending an en banc opinion. As recently as March 21, 2024, in *Estate of Hernandez

by & through Hernandez v. City of Los Angeles,* 96 F.4th 1209, 1215 & 1221 (9th

Cir.), reh'g en banc granted, opinion vacated, 106 F.4th 940 (9th Cir. Jul. 8, 2024),

the Ninth Circuit panel held that it was not clearly established that three volleys of

six shots by an officer on an advancing suspect, armed with a boxcutter with two

short blades, was unconstitutional. There, the officer came upon a multi-vehicle

accident and was informed, by a bystander and over the police radio, that the

suspect had a knife. *Id.* at 1214. The officer saw the suspect climb out of his black

pick-up truck with his right arm extended, holding what the officer believed to be a

knife. *Id*. The suspect advanced towards the officer, the officer backed up several

steps until she was in front of her patrol vehicle, and ultimately fired three volleys

of shots. *Id.* at 1214. Before the first volley, the officer instructed the suspect to

"drop the knife" and fired two shots when the suspect was 41 to 44 feet away. *Id*.

The suspect fell to the ground, but then began to push himself up. *Id*. at 1215. The

officer yelled "drop it" and fired two shots in the second volley. *Id*. There was a

two-second pause between the first and second volley. *Id*. at 1217. The suspect then

began to roll over to his left, and the office fired a fifth shot. *Id*. at 1215. The fifth

shot was fired approximately one second after the second volley. *Id*. at 1217. On the

ground, the suspect put his left knee and elbow on the ground as if to push up,

started to collapse, and the officer fired the final sixth shot. *Id*. at 1215.  The *Estate*

*of Hernandez* panel squarely held that the first and second volleys of shots were
reasonable as a matter of law, because the "threat" that the suspect had posed had
not yet "ended." *Id.* at 1217 (quoting *Plumhoff,* 572 U.S. at 777.) Although the
*Estate of Hernandez* panel held that the third volley presented a "much closer
question" and a triable issue, the panel then went on to hold that, for purposes of
qualified immunity as to *all* volleys, "there is no clearly established law that
squarely governs the factual scenario presented here." *Id*. at 1220-21.

Although Defendants have no burden to find factually on-point cases, the case
law is settled that an officer faced with an armed and advancing suspect with no
reasonable means of retreat does not violate clearly established law by using deadly
force in self-defense. For example, in *Woodward v. City of Tucson*, 870 F.3d 1154,
1162-1163 (9th Cir. 2017), qualified immunity applied to two police officers in the
shooting death of a suspected trespasser, a former tenant, who brandished a broken
hockey stick while inside an apartment. There, the officers had responded to a call
of former tenants trespassing in an empty apartment. *Id.* at 1156. The call had been
made two hours earlier, assigned to the lowest level of priority, and neither the
property owner nor any other person was on scene to verify the reporting
allegations. *Id.* The officers arrived and found no signs of forced entry, went inside
the small and cluttered apartment with their guns drawn, heard a radio playing from
inside a bedroom, and when no one responded after they knocked on the bedroom
door, swung the door open to see a man holding a broken hockey stick with a
woman behind him. *Id.* at 1156-1157. The man then "charged" or advanced at a
"brisk walk" towards the officers with the stick. *Id*. at 1157 & fn. 4. One of the
officers yelled "police, stop" before the officers each fired their weapons. *Id*. at
1157. The man was fatally struck in the head and the woman shot twice in the leg.
*Id*. at 1157-1158. Despite the low-level priority of the call, low-level nature of the
trespassing offense, and the immediate presence of two officers at the time of the
immediate threat, the Ninth Circuit held that "reasonable officers in Defendants'

1   positions would not have known that shooting [the decedent] violated a clearly

2   established right." *Id*. at 1162.

3       As *Woodward* recognized, "the case law makes clear that the use of deadly

4   force can be acceptable in such a situation." *Id*. at 1162-1163. Neither Supreme

5   Court nor Ninth Circuit precedent would have put a reasonable officer in Officer

6   Ornelas' position on notice that the force he used in the circumstances he

7   confronted would violate the Fourth Amendment. In cases where an agitated

8   suspect refuses commands and advances upon an officer brandishing a perceived

9   weapon, courts find that an officer's use of deadly force is reasonable and does not

10  violate any clearly established constitutional right. *See e.g., Blanford v. Sacramento

11  Cty.*, 406 F.3d 1110, 1111-13, 1117-19 (9th Cir. 2005) (qualified immunity applied

12  in shooting a suspect outside a residence, which turned out to be the suspect's

13  home, after he wandered around neighborhood with a raised sword, made growling

14  noises, and ignored officer commands to drop the weapon); *Lal,* 746 F.3d at 1114-

15  1115, 1117 (qualified immunity applied where officer shot subject eight times

16  where subject was armed with football sized rock, advanced towards the officer at

17  an irregular pace, and refused a command to drop the rock); *Hart v. City of

18  Redwood City*, 99 F.4th 543, 546, 550 (9th Cir. 2024) (trial court's denial of

19  qualified immunity reversed; the law was not clearly established that shooting of

20  suicidal man in December 2018, at the same time that taser was deployed and

21  ineffective, was unlawful where man approached officers at either a "slow run" or

22  "brisk walk" while wielding a knife); *Waid v. County of Lyon,* 87 F.4th 383, 390

23  (9th Cir. 2023) (qualified immunity applied to two officers who shot unarmed

24  domestic violence suspect inside his home; "Even assuming that Anderson was

25  unarmed and not reaching for a weapon, there is no dispute that he used aggressive

26  language with the officers ["fuck you punks"], ignored an order from the officers,

27  and rushed towards them in a small and confined space"); *S.B.*, 864 F.3d at 1013

28  (denial of qualified immunity reversed; officer entitled to qualified immunity for

1  use of deadly force despite that non-lethal force option was available where suspect

2  grabbed knife from his pocket); *Hernandez v. City of Huntington Beach,* 798 Fed.

3  Appx. 85, 87 (9th Cir. 2019) (reversing district court's denial of qualified

4  immunity; "at the time of the shooting, it was not clearly established that

5  Defendants violated the Constitution when he was holding a sharp stick in a

6  threatening manner several feet away from bystanders."); *Garcia v. United States*,

7  826 F.2d 806, 812 (9th Cir. 1987) (deadly force reasonable where decedent

8  advanced on border patrol agent armed with rock and stick); *Han v. City of Folsom*,

9  551 Fed.App'x 923, 925-927 (9th Cir. 2014) (qualified immunity where officers

10  shot mentally-ill suspect who advanced towards them in close quarters with a knife,

11  despite repeated commands to drop the weapon); *Watkins v. City of San Jose*, No.

12  15-CV-05786-LHK, 2017 WL 173915, at *8-9 (N.D. Cal. May 4, 2017), *aff'd sub*

13  *nom. Buchanan v. City of San Jose,* 782 Fed.App'x 589 (9th Cir. 2019) (probable

14  cause to believe decedent posed immediate threat of death or serious bodily injury

15  when decedent walked towards officers with knife in hand, ignored commands to

16  stop, and then began running at officers); *Estate of Yanira Serrano v. Trieu*, No. C-

17  14-4082 MCC, 2016 WL 1089225, at *6-8 (N.D. Cal. Mar. 21, 2016), *aff'd sub*

18  *nom. Estate of Serrano v. Trieu*, 713 Fed.App'x 631 (9th Cir. 2018) (granting

19  summary judgment in favor of officer's use of deadly force when officer shot

20  mentally disturbed, overweight woman who limped towards officers with a knife);

21  *Abuka v. City of El Cajon,* No. CV 14-9639-PJW, 2019 WL 8112469, at *1-2 & *9-

22  10 (C.D. Cal. Oct. 16, 2019) (law not clearly established that deadly force

23  unlawful where officer shot suspect who officer believed to be intoxicated but with

24  no reports that suspect had injured or threatened anyone, when suspect moved a

25  vape from his pocket and held it in both hands towards officer; "The fact that the

26  officer could have handled the scenario leading up to the confrontation

27  differently…is insufficient for a federal constitutional violation."); *Barber v. City of*

28  *Santa Rosa*, No. C-08-5649 MMC, 2010 WL 5069868, at *6 (N.D. Cal. Dec. 7,

1   2010) (deadly force reasonable where suspect armed with knife advanced on

2   police); *MacEachern v. City of Manhattan Beach*, 623 F.Supp.2d 1092, 1103-1104

3   (C.D. Cal. 2009) (same); *Chavez v. Las Vegas Metropolitan Police Dept.*, No.

4   2:11–CV–01445–LRH–GWF, 2014 WL 374444, at *3 & *6-9 (D. Nev., Feb. 3,

5   2014) (qualified immunity applied to two officers who fired at suspect from 20-32

6   feet away where suspect was armed with knife, less lethal rounds of bean bags were

7   ineffective, suspect advanced towards them, and the entire encounter lasted less

8   than two minutes). *See also, Langfitt v. Pierce County*, No. 23-35121, 2024 WL

9   3617318, at *2-3 (9th Cir. Aug. 1, 2024) (no case existed that officer's use of lethal

10  force against a mentally disturbed suspect who pivoted his body toward and moved

11  to enter the open driver's side door of a running patrol car with bystanders nearby

12  was excessive; although dispute existed between the parties about how close the

13  suspect was to operating the patrol vehicle and whether he received warnings, the

14  plaintiff "failed to show that his right to be free from deadly force was clearly

15  established"). *See also, Reich v. City of Elizabethwon*, 945 F.3d 968, 982 (6th Cir.

16  2019) (deadly force was reasonable and qualified immunity applied where suspect

17  walked towards officers with knife; "Shooting Blough from a distance of twenty-

18  five to thirty-six feet would not have violated any clearly established right.")

19      Indeed, an officer faced with an armed and advancing suspect with no

20  reasonable means of retreat does not violate clearly established law by using deadly

21  force in self-defense. *Woodward*, 870 F.3d 1154; *Lal*, 746 F.3d at 1117 (where

22  confrontation was in a ditch alongside a freeway, the plaintiffs' contentions that

23  officers "should have retreated or that they somehow should have defused the

24  situation before Lal started advancing [were] not factually or legally persuasive";

25  "pepper spray would not have stopped Lal from hurling the rock at the officers";

26  and, "fact that Lal was intent on 'suicide by cop' did not mean that the officers had

27  to endanger their own lives by allowing Lal to continue in his dangerous conduct.")

28  Further, the Ninth Circuit has repeatedly made clear that "the absence of a warning

does not necessarily mean that [an officer's] use of deadly force was unreasonable."
*Agdeppa*, 81 F.4th at 1006-1007; *Eyre v. City of Fairbanks,* No. 23-35206, 2024
WL 3688540, at *2 (9th Cir. Aug. 7, 2024) ("the requirement of a warning 'is not a
one-size-fits-all proposition that applies in every case or context,' and here the
officers reasonably point out that a warning would have undermined their efforts at
deescalation.") (quoting *Agdeppa*, 81 F.4th at 1006).

Here, the question is whether the law, as it existed on August 6, 2020, was
clearly established that Officer Ornelas' use of deadly force against an armed
suspect, charging towards him with a pipe, was unlawful. It was not.  *See e.g.,*
*Blanford*, 406 F.3d at 1111-13; *Lal,* 746 F.3d at 1114-1115, 1117; *Woodward*, 870
F.3d at 1162-1163; *Hart,* 99 F.4th at 546, 550; *S.B.*, 864 F.3d at 1013; *Hernandez,*
798 Fed. Appx. at 87; *Garcia*, 826 F.2d at 812; *Han*, 551 Fed.App'x at 925-927;
*Watkins*, 2017 WL 173915, at *8-9; *Estate of Yanira Serrano v. Trieu*, 2016 WL
1089233, at *6-8; *Abuka,* 2019 WL 8112469, at *1-2 & *9-10; *Barber*, 2010 WL
5069868, at *6; *MacEachern*, 623 F.Supp.2d at 1103-1104; *Chaez*, 2014 WL
374444, at *3 & *6-9; *Langfitt*, 2024 WL 3617318, at *2-3. Accordingly, Officer
Ornelas is shielded by qualified immunity.

## II.   OFFICER ORNELAS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW IN HIS FAVOR AS TO PLAINTIFF'S STATE LAW CLAIMS FOR BATTERY AND NEGLIGENCE

### A.   Plaintiffs Have Not Proved That Officer Ornelas's Use of Force Was Unreasonable; Therefore He Is Entitled to Judgment on the State Law Claims.

Because there is no evidence that Officer Ornelas' use of force was
unreasonable, the state law claims for battery and negligence must be dismissed.

Similar to the federal excessive force claim, a state battery cause of action
requires proof of unreasonable force. *Brown v. Ransweiler*, 171 Cal. App. 4th 516,
527 (2011) ("*Ransweiler*"). The same *Graham* factors apply. *Hernandez v. City of
Pomona*, 46 Cal. 4th 501, 514 (2009). Police are not treated as ordinary battery
defendants, as they are charged with protecting public peace and order and use

force as part of their duties. *Id*. Police are therefore "entitled to the even greater use of force than might be in the same circumstances required for self-defense." *Id*. An officer's use of force is reasonable if he "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id*. at 528 (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1103 (2004)). The reasonable analysis is "highly deferential to the police officer's need to protect himself and others." *Munoz*, 120 Cal. App. 4th at 1103. "[T]here is no requirement that he or she choose the 'most reasonable' action or the conduct that is least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability…'"
*Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 936 (2020) (quoting *Hayes v. County of San Diego*, 57 Cal.4th 622, 632 (2013)).

Similarly on the negligence claim, officers have a duty to use deadly force in a reasonable manner under California law. *Munoz v. Olin*, 24 Cal.3d 629, 634 (1979). But an officer will not be liable for negligence as long as his conduct falls "within the range of conduct that is reasonable under the circumstances," and officers are not required to choose "the most reasonable" action. *Hayes,* 57 Cal. 4th at 632 (quoting *Ransweiler*, 171 Cal. App. 4th at 537-538). The reasonableness of the officers' pre-shooting conduct should not be considered in isolation where the pre-shooting conduct did not cause the decedent any injury resulting from the shooting. *Id.* Rather, pre-shooting conduct should be considered, as part of the totality of circumstances, in relation to the question of whether the officers' ultimate use of deadly force was reasonable. *Id*.

Here, Officer Ornelas did nothing to escalate his encounter with Sesma on the bridge. All Ornelas did was reach the top of the embankment. Sesma, without provocation and without any words exchanged, inexplicably charged full speed at Ornelas with the heavy pipe. Ornelas had no information that Sesma was mentally ill and, prior to that moment, no reason to think that Sesma would react violently.

Ornelas yelled for Sesma to "Don't move, drop it!" yet Sesma continued to charge at Ornelas with the apparent intent, opportunity, and ability to cause Ornelas serious bodily injury or death with the heavy pipe. With less than 3 seconds before Sesma was upon him, Ornelas was forced to fire. Not incapacitated, Sesma lunged again with the pipe, forcing Ornelas to shoot, as he was trained and as the law allows, to stop the threat.

**B.    Plaintiffs' State Law Claims Are Barred by State Law Immunities.**

**1.    Self-Defense** is a complete bar as the evidence shows that Officer Ornelas reasonably believed Sesma would harm him, and Officer Ornelas used only the amount of force necessary to defend himself. *J.J. v. M.F.,* 223 Cal.App.4th 968, 976 (2014).

**2.    Government Code section 820.2** provides immunity to Officer Ornelas for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.  The discretionary immunity has been found to apply to many areas of police work, including the decision to pursue a fleeing vehicle, *Hernandez*, 46 Cal. 4th at 519 & fn. 13 (noting that, while long line of  Court of Appeal decisions have held that negligence liability may not be based on officer's decision to engage in vehicle pursuit, the California Supreme Court has never ruled on the question); *Bratt v. City and County of San Francisco*, 50 Cal. App.3 d 550, 553 (1975); (2) the decision to investigate or not investigate a vehicle accident, *McCarthy v. Frost*, 33 Cal. App. 3d 872, 875 (1973); and, (3) the failure to make an arrest or to take some protective action less drastic than arrest, *Michenfelder v. City of Torrance*, 28 Cal. App. 3d 202, 206 (1972).

The immunity applies where the act in question is "discretionary", and not "ministerial." A decision is ministerial where it amounted "only to an obedience to orders, or the performance of a duty in which the officer is left no choice of his

own," and discretionary where it requires "personal deliberation, decision and judgment." *See, Conway v. County of Toulumne*, 231 Cal. App. 4th 1005, 1018 (2014); *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261 (1969). The essential requirement of section 820.2 is a causal connection between the exercise of discretion and the injury. *Id*.

Thus, in *Conway*, the decision to deploy the SWAT team, as well as the SWAT team's tactical decision to use tear gas in effectuating the arrest, were held to fall under the discretionary immunity of Government Code section 820.2. 231 Cal.App.4th at 1019. In so holding, *Conway* recognized that "each decision must be examined to determine whether it constitutes a discretionary or mistrial decision." *Id*. There, "the decision to use tear gas resulted from choices and judgments made in response to changing circumstances; it was not made in blind obedience to orders."

Similarly, here, Officer Ornelas's decision to make contact with Sesma on the embankment in order to apprehend him, and then to use deadly force to defend himself against the charging and armed suspect, were discretionary decisions based on the judgment of Officer Ornelas in response to, and based on, rapidly changing circumstances.

**3.**    __Government Code section 820.4__ provides immunity to an employee for his act or omission, exercising due care, in the execution or enforcement of any law. "In actions involving claims under state law, an officer's use of deadly force is privileged as a matter of law if he reasonably fears for his safety or that of others in the area." *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1074 (S.D. Cal. 1994). Thus, in *Reynolds*, state law immunities applied where an officer fatally shot a suspect, who was wielding a "marlin spike." There, the officer was stopped by a passerby who informed him that a suspect was acting strangely down the road and appeared to have a bottle in hand. The officer drove toward the gas station, encountered the suspect, and another customer indicated that the suspect had either

a knife or weapon. The officer drew his gun, saw the suspect's marlin spike and told the suspect to put his hands in the air, to which the suspect complied. The officer had the suspect lie on the ground and drop the weapon. Then, as the officer approached, the suspect suddenly sat up and grabbed the marlin spike. The officer put his knee on the suspect's back and told him to drop the weapon, but the suspect did not. Instead, the suspect made a motion that the officer believed was an attempt to open the marlin spike, like a switch blade. The officer pressed his gun into the suspect's neck and told him to drop the knife, whereupon the suspect jerked to the side and made a swinging motion with the weapon toward the officer. The officer pulled the trigger twice into the suspect's neck. The gun fired on the second squeeze, and the suspect died of a single gunshot wound to the neck. The *Reynolds* court found that the officer's acts were within his discretion and exercised with due care, and thus protected under both the discretionary immunity of section 820.2 and the enforcement immunity of section 820.4.

Here, the facts are much less escalating on the part of Officer Ornelas than in *Reynolds*. Ornelas approached the embankment to apprehend Sesma, and did not even initiate any verbal or physical contact with Sesma on the bridge before Sesma began charging Ornelas. Both experts Chapman and Clark agree that Ornelas was within his legal rights to apprehend and arrest Sesma. Ornelas exercised due care in approaching Sesma, for the purpose of apprehending him, and exercised justified lethal force in defense of his safety.

**4.      Penal Code sections 835, 835a, 196(b) and Government Code section 845.8(b)(3).** A peace officer is privileged to use reasonable force to effect an arrest, prevent escape, or overcome resistance of a person who the officer has reasonable cause to believe has committed a public offense. A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of resistance or threated resistance of the suspect, nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of such reasonable

1  force. Cal. Pen. Code § 835a, subd. (d).

2       A peace officer commits a justifiable homicide when the use of deadly force

3  complies with Penal Code section 835a. *Id.* § 196(b); *Ransweiler*, 171 Cal. App. 4th

4  at 533; *Gilmore v. Superior Court*, 230 Cal. App. 3d 416 (a justifiable homicide is a

5  privileged act, which precludes all tort liability arising from the act). The test for

6  whether a homicide was justifiable is whether the circumstances reasonably created

7  a fear of death or serious bodily harm to the officer or to another. *Brown*, 171 Cal.

8  App. 4th at 533; *Martinez*, 47 Cal. App. 4th at 349.

9       Moreover, a public entity and public employee may not be liable for any

10  injury caused by a person resisting arrest. Gov. Code § 845.8(b)(3). The immunity

11  is absolute, and applies to both ministerial and discretionary acts. *See, County of*

12  *Sacramento v. Superior Court,* 8 Cal. 3d 479, 481 (1972).

13       Here, as outlined above, the evidence shows Ornelas's use of lethal force was

14  justified.  Accordingly, all state law tort liability is precluded.

15  **III.  BECAUSE THE STATE LAW CLAIMS AGAINST OFFICER**
16  **ORNELAS ARE BARRED, THE CLAIMS AGAINST THE STATE OF CALIFORNIA ARE ALSO BARRED.**

17       All claims against the State are made based upon the vicarious liability of

18  Officer Ornelas under Government Code section 815.2(a). However, because

19  Officer Ornelas is not liable for the reasons discussed above, there can be no

20  liability against the State. Cal. Gov. Code § 815.2(b); *Koussaya*, 54 Cal. App. 5th at

21  946-947. Accordingly, judgment as matter of law should be granted in favor of the

22  State against all of Plaintiffs' claims.

23  **/ / /**

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

2    **CONCLUSION**

3    For reasons stated herein, judgment as a matter of law should be granted in

favor of Defendants.

4

5    Dated:  December 10, 2024                Respectfully submitted,

6                                             ROB BONTA
                                             Attorney General of California
7                                            DONNA M. DEAN
                                             Supervising Deputy Attorney General

8

9                                            */s/ Tammy Kim*
                                             TAMMY KIM
10                                           Deputy Attorney General
                                             *Attorneys for Defendants*
11                                           *State of California and Andrew*
                                             *Ornelas*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants State of California and Andrew Ornelas, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.


Dated:  December 10, 2024                    Respectfully submitted,

                                             ROB BONTA
                                             Attorney General of California
                                             DONNA M. DEAN
                                             Supervising Deputy Attorney General


                                             */s/ Tammy Kim*
                                             TAMMY KIM
                                             Deputy Attorney General
                                             *Attorneys for Defendants*
                                             *State of California and Andrew*
                                             *Ornelas*

29