FILED

CLERK, U.S. DISTRICT COURT

12/11/24

CENTRAL DISTRICT OF CALIFORNIA

BY: _____ cla _____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDIDO SESMA and CECILIA SESMA, individually and as successors in interest to CHARLES SESMA, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA, ANDREW ORNELAS,<br><br>Defendants. | Case No. 5:21-cv-01694- JWH (DTBx)<br><br>**FINAL JURY INSTRUCTIONS** |

# FINAL INSTRUCTIONS

## COURT'S INSTRUCTION NO. 12

### Duty of Jury

Members of the Jury:  Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.  A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

## COURT'S INSTRUCTION NO. 13

### Claims and Defenses

You have heard testimony from Roger Clark, Clarence Chapman, Rocky Edwards, and Parris Ward, who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of these witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized training, knowledge, skills, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

## COURT'S INSTRUCTION NO. 14

### Evidence in Electronic Format

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  The necessary equipment will be available to you in the jury room.

You will also be provided with a paper list of all exhibits received in evidence. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the bailiff, signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose.  Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

## COURT'S INSTRUCTION NO. 15

### Section 1983 Claim—Introductory Instruction

Plaintiffs bring a claim under the federal statute, 42 U.S.C. § 1983, which provides that any person or persons who, under color of law, deprives another of any rights, privileges, or immunities secured by the Constitution or laws of the United States shall be liable to the injured party.

## COURT'S INSTRUCTION NO. 16

### Section 1983 Claim Against Defendant in Individual Capacity—
### Elements and Burden of Proof

In order to prevail on a § 1983 claim against Defendant Officer Andrew Ornelas, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

      1.     Officer Andrew Ornelas acted under color of state law;

      2.     The acts of Officer Andrew Ornelas deprived the Charles Sesma of his rights under the United States Constitution as explained in later instructions; and

      3.     Officer Andrew Ornelas's conduct was an actual cause of the claimed injury.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance, or regulation. The parties have stipulated that Officer Andrew Ornelas acted under color of state law.

Defendant's conduct is an actual cause of a Charles Sesma's injury only if the injury would not have occurred "but for" that conduct, and the conduct has a sufficient connection to the result.

If you find Plaintiffs have proved each of these elements, and if you find Plaintiffs have proved all the elements they are required to prove under Instruction 17, your verdict should be for Plaintiffs on that claim. If, on the other hand, you find that Plaintiffs have failed to prove any one or more of these elements, your verdict should be for Officer Andrew Ornelas on that claim.

## COURT'S INSTRUCTION NO. 17

### Plaintiffs' Instruction re Fourth Amendment—Unreasonable Seizure of Person—Excessive Force

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest, defending himself, or in attempting to stop a fleeing or escaping suspect. Therefore, in order to establish an unreasonable seizure in this case, the Plaintiffs must prove by a preponderance of the evidence that Officer Andrew Ornelas used excessive force against the decedent, Charles Sesma.

Under the Fourth Amendment, an officer may only use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, the officer's subjective intent or motive is not relevant to your inquiry.

In determining whether Officer Andrew Ornelas used excessive force in this case, consider all of the circumstances known to Officer Andrew Ornelas, including:

1. The nature of the crime or other circumstances known to the officer at the time force was applied;

2. Whether the decedent posed an immediate threat of death or serious bodily injury to the officer or to others;

3. Whether the decedent was actively resisting arrest or attempting to evade arrest by flight;

4. The amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5.    The relationship between the need for the use of force and the amount of force used;

6.    The extent of the decedent's injury;

7.    Any effort made by the officer to temper or to limit the amount of force;

8.    The severity of the security problem at issue;

9.    The availability of alternative methods to take the decedent into custody;

10.    The number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability, *i.e.*, which party created the dangerous situation, and which party is more innocent;

11.    Whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;

12.    Whether it should have been apparent to the officer that the person he used force against was emotionally disturbed; and

13.    Whether a reasonable officer would have or should have accurately perceived a mistaken fact.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the decedent has committed or was committing a crime.

## COURT'S INSTRUCTION NO. 18

### Battery by Peace Officer (Deadly Force)

A peace officer may use deadly force only when necessary in defense of human life. Plaintiffs claim that Officer Andrew Ornelas unnecessarily used deadly force on Charles Sesma. To establish this claim, Plaintiffs must prove all of the following:

1.    That Officer Andrew Ornelas used deadly force on the Charles Sesma;

2.    That Officer Andrew Ornelas's use of deadly force was not necessary to defend human life;

3.    That Charles Sesma was killed; and

4.    That Officer Andrew Ornelas' use of deadly force was a substantial factor in causing the Charles Sesma's death.

Officer Andrew Ornelas' use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Andrew Ornelas at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily harm to Officer Andrew Ornelas or to another person.

A peace officer must not use deadly force against a person based only on the danger that person poses to himself, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A person being arrested or detained has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of Officer Andrew Ornelas and Charles Sesma leading up to the use of deadly force. In determining whether Officer Andrew Ornelas's use of deadly force was necessary in defense of human life, you must consider Officer Andrew Ornelas's tactical conduct and decisions before using deadly force on Charles Sesma and whether Officer Andrew Ornelas used other available resources and techniques as alternatives to deadly force, if it was reasonably safe and feasible to do so. You must also consider whether Officer Andrew Ornelas knew or had reason to know that the person against whom they used force was suffering from a physical, mental health, developmental, or intellectual disability that may have affected the person's ability to understand or comply with commands from the officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other de-escalation tactics.

## COURT'S INSTRUCTION NO. 19

### Plaintiffs' Instruction—Negligent Use of Deadly Force by Peace Officer— Essential Factual Elements

A peace officer may use deadly force only when necessary in defense of human life.  Plaintiffs claim that Officer Andrew Ornelas was negligent in using deadly force to detain Charles Sesma.  To establish this claim, Plaintiffs must prove all of the following:

1.      That Officer Andrew Ornelas was a peace officer;

2.      That Officer Andrew Ornelas used deadly force on Charles Sesma;

3.      That Officer Andrew Ornelas's use of deadly force was not necessary to defend human life;

4.      That Charles Sesma was killed; and

5.      That Officer Andrew Ornelas's use of deadly force was a substantial factor in causing Charles Sesma's death.

Officer Andrew Ornelas' use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by Officer Andrew Ornelas at the time, that deadly force was necessary to defend against an imminent threat of death or serious bodily injury to Officer Andrew Ornelas or any other person.

A peace officer must not use deadly force against a person based only on the danger that person poses to himself, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.

A person being arrested/detained has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.

"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.

"Totality of the circumstances" means all facts known to or perceived by Officer Andrew Ornelas at the time of the shooting, including the conduct of Officer Andrew Ornelas and the decedent leading up to the use of deadly force. In determining whether Officer Andrew Ornelas' use of deadly force was necessary in defense of human life, you must consider Officer Andrew Ornelas' tactical conduct and decisions before using deadly force against the decedent and whether Officer Andrew Ornelas used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer. You must also consider whether Officer Andrew Ornelas knew or had reason to know that the person against whom they used force was suffering from a physical, mental health, developmental, or intellectual disability that may have affected the person's ability to understand or comply with commands from the officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other de-escalation tactics are not retreat. A peace

officer does not lose the right to self-defense by using objectively reasonable force to arrest/detain or overcome resistance.

**COURT'S INSTRUCTION NO. 20**

**Comparative Fault of Decedent**

Officer Andrew Ornelas claims that Charles Sesma's own negligence contributed to his death. To succeed on this defense, Officer Andrew Ornelas must prove both of the following:

      1.        That Charles Sesma was negligent; and

      2.        That Charles Sesma's negligence was a substantial factor in causing his death.

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.

A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation. You must decide how a reasonably careful person would have acted in Charles Sesma's situation.

If Officer Andrew Ornelas proves the above, Plaintiffs' damages are reduced by your determination of the percentage of Charles Sesma's responsibility. I will calculate the actual reduction.

## COURT'S INSTRUCTION NO. 21

### Causation—Substantial Factor

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

## COURT'S INSTRUCTION NO. 22

### Plaintiffs' Instruction re Causation—Multiple Causes

A person's negligence may combine with another factor to cause harm.  If you find that Officer Andrew Ornelas' negligence was a substantial factor in causing Charles Sesma's harm, then Officer Andrew Ornelas is responsible for the harm.  Officer Andrew Ornelas cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Charles Sesma's harm.

## COURT'S INSTRUCTION NO. 23

### Plaintiffs' Damages

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, I do not mean to suggest for which party your verdict should be rendered.

If you find for Plaintiffs on any of their claims, you must determine Plaintiffs' damages. Plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the Plaintiffs or decedent for any injury you find was caused by the defendants.

You should consider the following as to the decedent's damages:

    1.     The nature and extent of the injuries;

    2.     The loss of enjoyment of life experienced; and

    3.     The mental, physical, and emotional pain and suffering experienced prior to death.

You should consider the following as to the damages for Plaintiffs:

    1.     The past and future loss of the decedent's love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

    2.     Funeral and burial expenses.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork, or conjecture.

## COURT'S INSTRUCTION NO. 24

### Duty to Deliberate

Before you begin your deliberations, elect one member of the jury as your
presiding juror.  The presiding juror will preside over the deliberations and serve as
the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if
you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only
after you have considered all of the evidence, discussed it fully with the other
jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course,
only if each of you can do so after having made your own conscientious decision.

Do not be unwilling to change your opinion if the discussion persuades you
that you should.  But do not come to a decision simply because other jurors think it
is right or change an honest belief about the weight and effect of the evidence
simply to reach a verdict.

## COURT'S INSTRUCTION NO. 25

### Consideration of Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter or X, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved— including the parties, the witnesses, or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

## COURT'S INSTRUCTION NO. 26

### Communication with Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

## COURT'S INSTRUCTION NO. 27

### Return of Verdict

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

# CLOSING INSTRUCTION

You may decide when and how often you wish to take breaks and recesses during your deliberations. However, you may only deliberate when all jurors are present in the jury room, and only in the jury room. If a juror leaves in order to use the restroom, or to enjoy a breath of fresh air, or for any reason, all deliberations and discussion of the case must cease.

As I instructed at the beginning of the case, you will not have a transcript of the trial testimony to consult. If you need to have certain testimony from the trial read back to you, you may send us a note asking for that. If so, you will return to the courtroom, and, in the presence of all of the parties, counsel, and me, the court reporter will read back to you the portions of the testimony you request. Please make any requests for testimony to be read back as specific as possible.

In the jury room, you will have with you all of the exhibits that were actually admitted into evidence. You will also have copies for each of you of my instructions, and of the verdict form. In a folder, you have the original of the verdict form, and blank note forms. If any member or members of the jury have a question, you may write it on one of the note forms provided and hand it to the bailiff to give to me. One of the first things we ask you to do is to inform us, by sending us a note signed by whoever is your elected foreperson, about how long you intend to deliberate today.