**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs*

# UNTIED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDIDO SESMA and CECILIA SESMA, individually and as successors in interest to CHARLES SESMA, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA, ANDREW ORNELAS,<br><br>Defendants. | Case No. 5:21-cv-1694- JWH (KKx)<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' BILL OF COSTS AGAINST PLAINTIFFS**<br><br><u>Judge</u>: Hon. John W. Holcomb<br><u>Court</u>: Ronald Reagan Federal Building, 411 W. 4th Street, Santa Ana, CA<br><u>Courtroom</u>: 9D |

## I. INTRODUCTION

Plaintiffs Candido and Cecilia Sesma hereby object to Defendants' Application to the Clerk to Tax Costs. (Dkt. 158.) The costs should be denied in their entirety because this case involves important civil rights issues that would be chilled by imposing costs on plaintiffs of modest means who challenge police shootings. Alternatively, if the Court awards any costs, they should be substantially reduced because many of Defendants' claimed costs are improper, inadequately documented, or not recoverable under the applicable rules.

On January 3, 2025, Plaintiffs' counsel, Cooper Alison-Mayne, met and conferred telephonically with Defendants' counsel, Mr. Klehm and Ms. Kim, regarding the issues raised below; unfortunately, differences of opinion were not resolved.

## II. COSTS SHOULD NOT BE TAXED AGAINST CIVIL RIGHTS PLAINTIFFS

Pursuant to Federal Rule of Civil Procedure 54(d)(1), costs other than attorney's fees "shall be allowed as of course to the prevailing party unless the court otherwise directs." This rule creates a presumption of that costs will be taxed against the losing party. *Ass'n of Mexican–Am. Educators v. California*, 231 F.3d 572, 591–93 (9th Cir. 2000) (en banc). However, a losing party may rebut this presumption if it can demonstrate why costs should not be awarded as the rule "vests in the district court discretion to refuse to award costs. *Id*. at 591. The Ninth Circuit has recognized "[a]ppropriate reasons for denying costs include: '(1) the substantial public importance of the case; (2) the closeness and difficulty of the issues in the case; (3) the chilling effect on future similar actions; (4) the plaintiff's limited financial resources; and (5) the economic disparity between the parties.'" *Escriba v. Foster Poultry Farms, Inc*., 743 F.3d 1236, 1247-48 (9th Cir. 2014) (citation omitted).

This case arose out of the officer-involved shooting of Plaintiffs' son, Charles Sesma. The plaintiffs alleged, among other things, that the shooting violated Charles Sesma's constitutional right to be free from excessive force. The issue in this case was

whether it was legally justifiable for California Highway Patrol Officer Andrew Ornelas to use deadly force against a mentally unstable man who had been involved in a misdemeanor hit-and-run, and specifically whether it was reasonable to fire a second volley of fatal shots at Mr. Sesma after he had already been shot multiple times and was struggling to get up from the ground.

This case raises critical questions about police use of force that have profound implications for public safety and civil rights in our society. The United States faces a crisis in law enforcement killings that puts us dramatically out of step with other developed nations. While countries like Germany (1.3 per 10 million), the United Kingdom (0.5 per 10 million), and Japan (0.2 per 10 million) see remarkably low rates of police killings, U.S. law enforcement kills approximately 33 people per 10 million inhabitants - a rate that places us alongside nations like Nigeria (44 per 10 million), Kenya (43.5 per 10 million), and Iran (36.6 per 10 million). *See* https://worldpopulationreview.com/country-rankings/police-killings-by-country. This disparity is particularly stark in cases like Mr. Sesma's, where officers use deadly force against individuals experiencing mental health crises, engaged in minor criminal conduct, who are not armed.

The question of when police may justifiably use deadly force - especially against wounded suspects who no longer pose an immediate threat - deserves careful scrutiny from our courts. Imposing substantial costs on plaintiffs who bring good faith challenges to police shootings would create a chilling effect that undermines this vital public discourse and accountability. It could serve to effectively close the courthouse doors to families of modest means seeking answers and justice when their loved ones die at the hands of law enforcement.

Further, the Court should consider that Plaintiffs Candido and Cecilia Sesma are elderly individuals on a fixed income; they are not wealthy people. The Ninth Circuit has instructed that in deciding whether to tax costs, "[d]istrict courts should consider the financial resources of the plaintiff and the amount of costs in civil rights cases." *Stanley v.*

*University of California*, 178 F.3d 1069, 1079 (9th Cir. 1999). Moreover, in considering the economic disparity between the parties, the Court should consider that the Defendant here is the State of California, whose economy, when compared head-to-head with nations around the world, consistently ranks as the 5th largest economy in the world. Plaintiffs, by contrast, are individuals of modest means. Moreover, courts have found that defendant officers, as public employees, "are in a vastly different financial situation that Plaintiffs" who have limited financial resources, *Hunter v. City & Cnty. of San Francisco*, Case No. 11–cv–4911 JSC, 2013 WL 6088409, at *3 (N.D. Cal. Nov. 19, 2013).

District courts in cases with similar facts have declined to tax costs against civil rights plaintiffs. *See, e.g., Aguilar v. City of Los Angeles*, Case No.: CV 17-4382-CBM-(MRWx), 2020 WL 2573468, at *1 (C.D. Cal. Mar. 4, 2020); *Berry v. City & Cnty. of San Francisco*, Case No. 17-cv-00056-EDL, 2018 WL 5733680, at *1 (N.D. Cal. Oct. 29, 2018); *Bonilla v. City of Los Angeles*, Case No. 15-cv-3932-CBM-SS, 2018 WL 5274589, at * 2 (C.D. Cal. July 13, 2018); *Hermosillo v. Cnty. of San Bernardino*, Case No. EDCV 15-00033-DTB, 2017 WL 5479646, at *3 (C.D. Cal. June 19, 2017); *Lopez v. Nguyen*, No. 13-cv-3870 CRB, 2017 WL 512773, at *2 (N.D. Cal. Feb. 8, 2017); *Knox v. City of Fresno*, 208 F. Supp. 3d 1114, 1116 (E.D. Cal. 2016); *Washburn v. Fagan*, No. C03-00869 MJJ., 2008 WL 361048, at *2 (N.D. Cal. Feb. 11, 2008). Accordingly, the Court should decline to award costs to Defendants. Should the Court decide that some costs are warranted, Plaintiffs request that the Court decline to award nontaxable costs as discussed below and exercise its discretion to further reduce costs given the factors discussed above.

## III. DEFENDANTS' CLAIMED COSTS SHOULD BE DENIED OR SUBSTANTIALLY REDUCED

If the Court decides to award some costs, many of Defendants' claimed costs should be denied or reduced because they are not properly taxable or are inadequately documented. "[I]tems proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co*., 379 U.S. 227, 235 (1964).

### A. Trial Transcript Costs Should Be Denied

Defendants claim $16,777.20 for trial transcripts. This claim directly conflicts with Local Rule 54-3.4, which requires prior court approval for such costs. Because Defendants never obtained the required approval, these costs should be denied in their entirety.

### B. Witness Fees Contain Mathematical Errors and Improper Charges

Defendants claim for $10,600.84 in witness fees should be denied. As an initial matter, their submitted witness fee chart totals only $3,282.77, and contains multiple errors requiring substantial reduction. The calculations on page 4 of their bill of costs contain mathematical errors, as the subtotals do not add up to $3,282.77. It is entirely unclear from the documentation submitted by Defendants how they came to either of their numbers, $10,600.84 or $3,282.77.

Additionally, in their witness fee chart, Defendants improperly claim mileage and service fees for witnesses who never appeared at trial. To properly evaluate these witness fees, Defendants should explain why they are charging fees for non-appearing witnesses and provide their calculations supporting both the $10,600.84 and $3,282.77 totals, allowing Plaintiffs a reasonable opportunity to challenge these claimed costs.

Additionally, some of the charges appear to be service fees related to serving trial subpoenas on witnesses to appear at our previous trial date. (See pages 45–74 of Application for Costs.) Postponement of the trial was by stipulation, and it would be unfair to burden Plaintiffs with the costs an agreed upon rescheduling of the trial. Further, many of the costs incurred by Defendants appear to be additional fees for expediting service of the subpoenas. (*Id*.) Expediting subpoenas is generally not taxable because Court's find that it is done for the convenience of counsel and is not necessary to litigate the case.

### C. Deposition Costs Are Inadequately Documented and Partially Non-Recoverable

Defendants' claimed deposition costs should be denied because their documentation contains multiple deficiencies. First, they fail to provide explanations for the different categories of charges listed in the deposition invoices, and there is no clear explanation of

the per-page charges incurred. *Gillam v. A. Shyman, Inc.*, 31 F.R.D. 271, 274–75 (D. Alaska 1962) (denying costs because reporter's fee was not separately documented). While courts may tax reasonably priced deposition costs that align with standard per-page rates, they should not tax costs for additional services that are not necessary to litigate the case. For example, the invoice at page 43 of their Application for Costs lists numerous unexplained add-on charges, including a $495 "Minimum Charge for Services Rendered," a $295 charge for "Veritext Virtual Primary Participants," a $55 "Litigation Package-Secure File Suite" fee, and a $45 "Electronic Delivery and Handling" fee. Defendants fail to explain why these additional services, which total $890 for a single deposition, were necessary to litigate the case rather than merely convenient add-ons that should not be taxed as costs. Some of the depositions include charges for rough drafts e.g., page 41 of the Application for Costs, which are impermissible since they are for the convenience of counsel.

Further, "costs of depositions are recoverable only if necessarily obtained for use in the case." *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F.2d 175, 177–78 (9th Cir. 1990). "Disallowance for expenses of depositions not used at trial is within the district court's discretion." Washington State Dept. of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 806 (9th Cir.1995).

Here, many of the depositions appear to have been obtained for investigatory purposes rather than for use at trial. *See Gillam v. A. Shyman, Inc.*, 31 F.R.D. 271, 274–75 (D. Alaska 1962) (denying costs for depositions "obviously obtained purely for discovery purposes"). The only depositions that appear to have been necessary for trial are the Plaintiff's depositions. Without any showing by Defendants that these depositions were necessarily obtained for use in the case rather than mere discovery tools, these costs should be denied.

      **D.**    **Copying and Courier Costs Are Not Recoverable**

While photocopying costs are recoverable to the extent copies were "necessarily obtained for use in the case," 28 U.S.C. § 1920(4), Defendants provide no description of

what was copied or why it was necessary. The bare invoices included in pages 78–97 of the Application for Costs contain no explanation of the specific documents copied or their relationship to trial.

Defendants seek $3,454.50 for "Trial Binders Reproduction for DAG TK and DAG DK; Exhibit Binders." Again, the receipts are not clear, so it is very difficult for Plaintiff to make detailed objections regarding Defendants calculation of costs. However, to the extent that these costs relate to Defendants' exhibit binders, Plaintiffs should not be taxed for these expenses. During multiple meet and confer sessions prior to filing our joint exhibit lists, Plaintiffs' counsel advised Defendants' counsel that the vast majority of their exhibits were not admissible and should not be included in the joint exhibit lists. Defendants refused, without offering any substantive argument for their admissibility. The results at trial validate Plaintiffs' position: only 6 of Defendants' 47 exhibits were admitted. (See Dkt. 139.) In contrast, Plaintiffs made a good-faith effort to limit their exhibits to those that would actually be used at trial, and the vast majority of Plaintiffs' exhibits were admitted. (Id.) Plaintiffs should not bear the costs of Defendants' unnecessary and excessive document production.

Additionally, Defendants appear to improperly seek costs for courier and messenger services. Such costs "are not mentioned in § 1920 and are routinely excluded as taxable costs." Frederick, 162 F.R.D. at 146. These non-taxable costs should be denied.

### E. Subpoena Costs Were Largely Unnecessary and Not Used at Trial

Defendants seek to recover $2,120.30 for 19 separate subpoenas, the vast majority of which yielded documents that were never used at trial or necessary for the litigation. Defendants served multiple subpoenas on four different hospital systems - Canyon Ridge Hospital, Temecula Valley Hospital, Kaiser Permanente (both Riverside and Roseville locations), and Pomona Valley Hospital - with each hospital receiving three separate subpoenas for their Medical Records, Patient Accounts, and Radiology departments. These voluminous medical record requests, totaling 12 separate subpoenas produced no evidence that was ultimately used at trial or necessary for the case.

This mass collection of medical records appears to have been purely for investigatory purposes rather than for obtaining evidence necessary for trial. Courts have consistently held that costs for documents obtained merely for discovery purposes are not taxable. *See Gillam*, 31 F.R.D. at 274–75. The fact that Defendants felt compelled to subpoena three separate departments at four different hospitals, yet used none of these records as evidence, strongly suggests these subpoenas were "fishing expeditions" rather than targeted requests for necessary evidence.

While certain subpoenas may have yielded relevant evidence - such as those served on the Ontario Police Department and LA County Coroner - the majority of the subpoena costs were incurred pursuing voluminous medical records that had no bearing on the ultimate resolution of this case. Defendants should not be permitted to tax costs for their expansive and ultimately unnecessary medical records investigation. Therefore, the Court should either deny the subpoena costs entirely or limit recovery to only those few subpoenas that produced evidence actually used at trial.

## IV.   CONCLUSION

For all the foregoing reasons, the Court should deny Defendants' bill of costs in its entirety. In the alternative, if the Court awards any costs, it should substantially reduce them by striking the improper and inadequately documented charges detailed above.

Dated: January 13, 2025                                    LAW OFFICES OF DALE K. GALIPO

/s/*Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiffs*