ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General
DAVID KLEHM
Deputy Attorney General
State Bar No. 165302
TAMMY KIM
Deputy Attorney General
State Bar No. 262510
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6182
  Fax: (916) 731-2119
  E-mails: David.Klehm@doj.ca.gov;
  Tammy.Kim@doj.ca.gov
*Attorneys for Defendants*
*State of California and Andrew Ornelas*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CANDIDO SESMA AND CECILIA SESMA, INDIVIDUALLY AND AS SUCCESSORS IN INTEREST TO CHARLES SESMA, DECEASED,**<br><br>Plaintiffs,<br><br>v.<br><br>**STATE OF CALIFORNIA; AND DOES 1-20, INCLUSIVE,**<br><br>Defendants. | 5:21-cv-01694-JWH-DTB<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DFEENDANTS' BILL OF COSTS**<br><br>Courtroom: 9D<br>Judge: The Honorable John W. Holcomb<br>Trial Date: December 2, 2024<br>Action Filed: July 30, 2021 |

# INTRODUCTION

After more than three years of litigation, a jury unanimously determined that Defendant Andrew Ornelas did not use excessive force against decedent Charles Sesma. Defendants concede some errors in their cost bill, and, as discussed below, defendants withdraw their requests for those costs, making the total costs sought $11,228.34. Other than those costs, plaintiffs fail to establish any basis to deny defendants' costs in this case. Therefore, defendants request that plaintiffs' objections be overruled and costs be awarded pursuant to defendants' bill of costs with the exceptions identified below.

# LEGAL DISCUSSION

I. AN AWARD OF COSTS TO DEFENDANTS IS PROPER

    A. **As the Prevailing Parties, Defendants Are Entitled to Their Costs**

"Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party. *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 376-377 (2013); *Ass'n of Mexican-American Educators v. State of California*, 231 F.3d 572, 592-593 (9th Cir. 2000). Although the district court has discretion to deny costs to the prevailing party, this discretion is not unfettered – the district court must provide a "valid reason" if it decides to depart from the presumption in favor of awarding costs to the prevailing party. *Berkla v. Corel Corp.* 302 F.3d 909, 921 (9th Cir. 2002) (district court exercising discretion to deny costs must "specify reasons"). "Our requirement that a district court give reasons for denying costs is, in essence, a requirement that the court explain why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Ass'n of Mexican-American Educators*, 231 F.3d at 593.

Plaintiffs offer several purported reasons why defendants should not recover any costs. Generally, however, only misconduct worthy of a penalty (such as obstructive or "bad faith" conduct that inflates costs), or a plaintiff's indigence will suffice to deny a cost award to prevailing defendants. *Ass'n of Mexican-American Educators*, 231 F.3d at 592. Plaintiffs do not contend that defendants engaged in any such "bad faith" conduct, does not provide any evidence of indigence, and fails to present any other extraordinary basis to overcome the strong presumption in favor of awarding costs to defendants. Accordingly, costs should be awarded to defendants in this case.

### B. Awarding Costs to Prevailing Defendants in a Civil Rights Action Is Appropriate

The presumption in favor of awarding costs to prevailing parties applies equally to defendants in civil rights actions. *Ass'n of Mexican-American Educators*, 231 F.3d at 593. A court's discretion to deny a costs award against an unsuccessful plaintiff in a civil rights case has been upheld where the issues were of the "gravest public importance" and the costs "extraordinarily high" because a cost award to defendant in such cases "might have the regrettable effect of discouraging potential plaintiffs from bringing such cases at all." *Stanley v. University of Southern California,* 178 F.3d 1069, 1079 (9th Cir. 1999); *Ass'n of Mexican-American Educators*, 231 F.3d at 593. *Stanley* is distinguishable from the instant case because the *Stanley* court addressed an extremely large costs award – an amount more than seven times greater than the costs requested by defendants herein. *Stanley*, 178 F.3d at 1079. This led the court to express concern that the imposition of "such high costs" might potentially chill civil rights litigation. *Id*. Because the amount of costs requested by defendants in this case is relatively small, the concerns expressed by the *Stanley* court simply are not applicable. *See also, e.g., Save Our Valley v. Sound Transit*, 335 F.3d 932, 945-946 (9th Cir. 2003) (holding that trial court did not abuse its discretion when it awarded $5,310.55 in

2

costs because this "relatively small sum…would not 'chill' future civil rights litigation" and "[n]o such injustice [as found in *Stanley*] will result…"); *Mulligan v. Yang*, No. CV 15–712 DDP (AJWX), 2017 U.S. Dist. LEXIS 29797, at *1, 2017 WL 826909 (C.D. Cal. Mar. 2, 2017) (holding that $6,281.85 was "a reasonable sum that confirms the ordinary nature of the [civil rights] cases"); *Estate of Le Blanc v. City of Lindsay,* No. CV-F-04-5971-DLB, 2007 U.S. Dist. LEXIS 76428, at *10, 2007 WL 2900515 (E.D.Cal. Sept. 28, 2007) ($8,460.21); *Sorgen v. City & Cnty. of San Francisco,* 2007 U.S. Dist. LEXIS 14489, at *8–10, 2007 WL 521235 (N.D. Cal. Feb. 15, 2007) ($4,987). The costs here are well within the normal range awarded by courts against individual civil rights litigants. This is not one of the rare occasions where severe injustice will result from taxing costs against the losing plaintiff.

    **C.**    **Plaintiffs' Case Did Not Involve Issues of "Substantial Public Importance" and Plaintiffs Have Submitted No Evidence to Support Their Claim of Limited Financial Means; Therefore, an Award of Costs to Defendants Would Not Have a Chilling Effect**

Plaintiffs contend that costs should not be awarded to defendants because his case involved "issues of substantial public importance." Contrary to plaintiffs' assertion, their case differs dramatically from *Ass'n of Mexican-American Educators*. *Ass'n of Mexican-American Educators* involved the impact on minority applicants of a state-wide test used to qualify applicants for certain public school positions. *Ass'n of Mexican-American Educators*, 231 F.3d at 577. The plaintiffs in *Ass'n of Mexican-American Educators* sought to enjoin the State of California from using the CBEST test, which they claimed had "a disproportionate, adverse impact on minority candidates ...." *Id*. at 578. The case presented difficult state-wide issues of "substantial public importance," specifically "educational quality, interracial disparities in economic opportunity, and access to positions of social influence." *Id*. at 592. The Ninth Circuit observed that "the action affects tens of thousands of Californians and the state's public school system as a whole." *Id*. at

593.

In contrast, here, plaintiffs' case concerns a challenge to a single use of force incident against a single individual. It involves the application of well-established Fourth Amendment law to the particular facts of this case. The only people affected by the outcome of the case are the parties themselves. In *Sorgen*, plaintiff cited to *Ass'n of Mexican-American Educators* and argued, among other things, that costs should be denied because of such an order's "chilling effect on future civil rights cases." *Sorgen*, 2007 U.S. Dist. LEXIS 14489, *8. The District Court in *Sorgen* rejected this argument, finding that Sorgen's case "differ[ed] dramatically from *Ass'n of Mexican American Educators* in many respects." *Sorgen*, 2007 U.S. Dist. LEXIS 14489 at p. 8. The court stated:

> *Ass'n of Mexican American Educators* involved a state-wide test that affected minority teachers in the education system throughout California.
> Here, Plaintiff's case concerns a challenge to an individual arrest.

*Id*. The *Sorgen* court rejected the notion that a plaintiff's individual case of alleged excessive force is tantamount to a statewide matter of "substantial public importance" sufficient to overcome the general rule that a prevailing party is entitled to his costs of suit.

In addition, the court in *Ass'n of Mexican American Educator* noted that "Plaintiffs' case, although unsuccessful, had some merit, as evidenced by the 1995 modification of the CBEST to eliminate 'higher order' mathematics questions." *Ass'n of Mexican-American Educators*, 231 F.3d at 592. Plaintiffs have cited to no change in law, or even department policy, as a result of their lawsuit; and for good reason – there has been no such change.

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014), is also distinguishable. In *Escriba*, the court concluded that individual Family Medical Leave Act (FMLA) cases protect vital rights for all workers; that the case was close, turning on conflicting witness testimony and complex FMLA analysis; that

taxing costs could chill future FMLA actions; and that the plaintiff had limited financial resources. *Id*. at 1248-1249. Indeed, in *Escriba*, the district court relied on a letter from the Fair Labor Standards Division of the United States Department of Labor, the agency that is responsible for administering and enforcing the FMLA, explaining that cases like Escriba's "establish the parameters of what constitutes sufficient employee notice," which is "particularly important to the public interest." *Id*. at 1248. The district court also relied on a California public official's statement that a FMLA case brought on behalf of a single plaintiff as opposed to a class can still be important because these issues "protect[ ] vital civil rights for women in the work place." *Id*.

Plaintiffs other cases are distinguishable. *Aguilar v. City of Los Angeles*, Case No. CV 17-4382-CBM-(MRWx), 2020 WL 2573468, at *1 (C.D. Cal. Mar. 4, 2020) involved a claim against supervisors and a *Monell* claim against the city, not just a claim against a single officer, and plaintiffs submitted evidence of limited financial resources. In *Berry v. City & Cnty. of San Francisco*, Case No. 17-cv-00056-EDL, 2018 WL 5733680, at *1 (N.D. Cal. Oct. 29, 2018), the court found that the case was not of substantial public importance, but plaintiff submitted evidence that he was indigent. In *Bonilla v. City of Los Angeles*, Case No. 15-cv-3932-CBM-SS, 2018 WL 5274589, at * 2 (C.D. Cal. July 13, 2018), plaintiff submitted evidence of his indigence. In *Hermosillo v. Cnty. of San Bernardino*, Case No. EDCV 15-00033-DTB, 2017 WL 5479646, at *3 (C.D. Cal. June 19, 2017), plaintiffs presented evidence of limited financial means. In *Lopez v. Nguyen*, No. 13-cv-3870 CRB, 2017 WL 512773, at *2 (N.D. Cal. Feb. 8, 2017), plaintiff presented evidence of her limited financial resources. In *Knox v. City of Fresno*, 208 F. Supp. 3d 1114, 1116 (E.D. Cal. 2016), plaintiffs submitted evidence of their limited financial resources. In *Washburn v. Fagan*, No. C03-00869 MJJ, 2008 U.S. Dist. LEXIS 13049, 2008 WL 361048 (N.D. Cal. Feb. 11, 2008), the court found the plaintiff's excessive force action presented "important issues

5

regarding how the San Francisco Police Department dealt with, and supervised, excessive force incidents."

There are no issues in this case regarding California Highway Patrol's response to use of force incidents or supervision of its officers, and there is no evidence that plaintiffs are indigent or even of limited financial means. Indeed, trial testimony established that plaintiffs own a family business operated by their son, Alexander Sesma.

## II. WITH A FEW EXCEPTIONS, THE COSTS SOUGHT BY DEFENDANTS ARE WARRANTED BY THE RULES

### A. Tab 2 – Subpoena Costs

The subpoena costs are recoverable. Defendants subpoenaed records from:

(1) the coroner's office (some of which were admitted into evidence at trial and relied upon by defendants' ballistics expert);

(2) Ontario Fire Department (responded to the scene);

(3) Ontario Police Department (investigated the incident);

(4) American Medical Response (transported decedent after the incident);

(5) Pomona Valley Hospital (the hospital to which decedent was taken after the incident);

(6) medical records related to decedent's prior psychological hold which Alexander Sesma testified about at trial (Canyon Ridge Hospital and Temecula Valley Hospital); and

(7) other medical records of decedent to determine any prior psychological history given plaintiffs' assertion that Officer Ornelas should have been aware of decedent's alleged mental disability (Kaiser Permanente).

Dean Decl., ¶ 2. Defendants should recover these costs.

### B. Tab 4 - Daily Trial Transcripts

Defendants withdraw the requests for costs for the daily trial transcripts in Tab 4 in the amount of $16,777.20.

6

### C. Tab 5 - Deposition Costs

Central District of California Local Rule 54-3 lists the items that are taxable as costs. Among those items are "[t]he reasonable cost of preparing the original transcription of the oral portion of a deposition . . . if the transcript is used for any purpose in connection with the case," "[t]he reasonable cost of one additional copy of the transcript, in any form," "the reasonable fees of a stenographic reporter," and "[t]he cost of copying or reproducing exhibits used at the deposition and made a part of the deposition transcript." Local Rule 54-3.5(a)-(c). In addition, "[t]he reasonable cost of one copy of the transcript is also taxable when purchased by a party that did not purchase the original." Local Rule 54-3.5(a). Such costs also include "non-expedited shipping and handling" and "electronic transmission charges." *Id*.

Plaintiffs argue that defendants should not recover the costs of taking the depositions of decedent's siblings and their significant others because these depositions were not "for use at trial." The fact that a deposition is not used at trial is not controlling. *Colosi v. Jones Lang LaSalle Americas, Inc.,* 781 F.3d 293, 295 (6th Cir. 2015); *see also Maurice Mitchell Innovations, L.P. v. Intel Corp.,* 491 F.Supp.2d 684, 687 (E.D. Tex. 2007) ("[C]osts should not be disallowed merely because the deposition was not ultimately used at trial or in connection with a dispositive motion."); and *Women's Federal Savings and Loan Ass'n v. Nevada National Bank*, 108 F.R.D. 396, 398 (D. Nev. 1985) ("Actual admission or introduction [of depositions] into evidence at trial is not a prerequisite for allowance [of costs of the deposition]"), citing *Hudson v. Nabisco Brands. Inc*., 758 F.2d 1237, 1243 (7th Cir. 1985). Further, plaintiffs' reliance on *Gillam v. A. Shyman, Inc.*, 31 F.R.D. 271, 274-275 (D. Alaska 1962) for the proposition that costs of depositions not used for trial are not recoverable is misplaced because it directly conflicts with Local Rule 54-3.5(a), which provides costs are recoverable "if the transcript is used for any purpose in connection with the case."

1 | Defendants took the depositions of Alexander Sesma, Susan Sesma, Brittney
2 | Sesma (Susan Sesma's wife), and Ashleigh Guardado (Alexander Sesma's
3 | girlfriend at the time of the incident) for the purpose of preparing to cross-examine
4 | plaintiffs and the other witnesses regarding plaintiffs' relationship with decedent
5 | and their damages claims at trial. Dean Decl., ¶ 3. Such depositions were
6 | necessary given the language difficulties with Plaintiff Cecilia Sesma and the
7 | hearing and infirmity issues with Plaintiff Candido Sesma. *Id*. Indeed, Alexander
8 | and Susan Sesma both testified at trial regarding plaintiffs' relationships with
9 | decedent. *Id*. Accordingly, defendants are entitled to recover the costs of these
10 | depositions.

Plaintiffs also assert that defendants should not recover the costs of deposing plaintiffs' expert witnesses. Defendants took the depositions of plaintiffs' expert witnesses, Roger Clark and Scott Holdaway, to prepare to cross-examine them at trial. Dean Decl., ¶ 4. Accordingly, defendants are entitled to recover the costs of these depositions.

In addition, Plaintiffs erroneously assert that defendants should not recover the costs of obtaining copies of the transcripts of the depositions of Defendant Andrew Ornelas, Officer Jason Nichols, and defendants' expert witness, Clarence Chapman. Such costs are expressly permitted by Local Rule 54-3.5(a).

Defendants agree that certain costs listed in the invoices should be excluded. Accordingly, the recoverable costs are as follows:

(1) Candido Sesma (48 pages): $495.00 for the original and a certified copy, $7.80 for the exhibits, $300 for court reporter attendance, and $45.00 for electronic delivery and handling: $847.80;

(2) Cecilia Sesma (49 pages): $495.00 for the original and a certified copy, and $16.25 for the exhibits: $511.25;

(3) Alexandar Sesma (73 pages): $499.50 for the original and a certified copy, $19.50 for the exhibits, $150 for court reporter attendance, and $45.00 for

electronic delivery and handling: $714.00;

 (4) Susan Sesma (47 pages): $495.00 for the original and a certified copy, $7.80 for exhibits, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $697.80;

 (5) Ashleigh Guardado (31 pages): $495.00 for the original and a certified copy, $3.25 for exhibits, $45.00 for electronic delivery and handling: $543.25;

 (6) Brittney Sesma (40 pages): $495.00 for the original and a certified copy, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $690;

 (7) Roger Clark (56 pages): $495.00 for the original and a certified copy, $46.15 for exhibits, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $736.15;

 (8) Scott Holdaway (58 pages): $495.00 for the original and a certified copy, $83.20 for exhibits, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $773.20;

 (9) Andrew Ornelas (63 pages): $586.25 for copy of transcript of deposition taken by plaintiffs;

 (10) Jason Nichols (26 pages): $263.75 for copy of transcript of deposition taken by plaintiffs; and

 (11) Clarence Chapman (69 pages): $560.00 for copy of transcript of deposition taken by plaintiffs.

Dean Decl., ¶ 5. Accordingly, the amount for depositions should be reduced from $9,494.17 to $6,923.45.

 **D. Tab 6 - Witness Fees**

Defendants concede the error in the calculation of witness fees in Tab 6. The correct amount of witness fees is $1,096.84. Therefore, the witness fees for Tab 6 should be reduced from $10,600.84 to $1,096.84.

9

### E. Tab 10 – Copy Costs

Tab 10(a) should be reduced from $363.33 to $56.00 for copies of documents delivered to chambers on October 10, 2022.

Tab 10(f) should be reduced from $510.00 to $0.

Tab 10(g) should be reduced from $3,454.50 to $558.25 for reproduction of trial exhibits (see page 97 of 98).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that plaintiffs' objections be overruled and that defendants be awarded costs as requested in their bill of costs with the amounts reduced as described above for a total cost award of $11,228.34.

Dated: January 16, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
DONNA M. DEAN
Supervising Deputy Attorney General
DAVID KLEHM
Deputy Attorney General

*s/ Tammy Kim*

TAMMY KIM
Deputy Attorney General
*Attorneys for Defendants
State of California and Andrew Ornelas*

**DECLARATION OF DONNA M. DEAN**

I, DONNA M. DEAN, hereby declare:

1. I am an attorney at law, duly licensed to practice before the Courts of the State of California, a Supervising Deputy Attorney General, and counsel of record, along with Deputy Attorneys General David Klehm and Tammy Kim, for defendants in the above-entitled action. The matters stated herein are within my personal knowledge and I could and would testify competently thereto.

2. Defendants subpoenaed records from:

   (1) the coroner's office (some of which were admitted into evidence at trial and relied upon by defendants' ballistics expert);

   (2) Ontario Fire Department (responded to the scene);

   (3) Ontario Police Department (investigated the incident);

   (4) American Medical Response (transported decedent after the incident);

   (5) Pomona Valley Hospital (the hospital to which decedent was taken after the incident);

   (6) medical records related to decedent's prior psychological hold which Alexander Sesma testified about at trial (Canyon Ridge Hospital and Temecula Valley Hospital); and

   (7) other medical records of decedent to determine any prior psychological history given plaintiffs' assertion that Officer Ornelas should have been aware of decedent's alleged mental disability (Kaiser Permanente).

3. Defendants took the depositions of Alexander Sesma, Susan Sesma, Brittney Sesma (Susan Sesma's wife), and Ashleigh Guardado (Alexander Sesma's girlfriend at the time of the incident) for the purpose of preparing to cross-examine plaintiffs and the other witnesses regarding plaintiffs' relationship with decedent and their damages claims at trial. Such depositions were necessary given the language difficulties with Plaintiff Cecilia Sesma and the hearing and infirmity issues with Plaintiff Candido Sesma. Indeed, Alexander and Susan Sesma both

testified at trial regarding plaintiffs' relationships with decedent.

4. Defendants took the depositions of plaintiffs' expert witnesses, Roger Clark and Scott Holdaway to prepare to cross-examine them at trial.

5. Defendants agree that the costs of the deposition transcripts should be reduced to:

(1) Candido Sesma (48 pages): $495.00 for the original and a certified copy, $7.80 for the exhibits, $300 for court reporter attendance, and $45.00 for electronic delivery and handling: $847.80;

(2) Cecilia Sesma (49 pages): $495.00 for the original and a certified copy, and $16.25 for the exhibits: $511.25;

(3) Alexandar Sesma (73 pages): $499.50 for the original and a certified copy, $19.50 for the exhibits, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $714.00;

(4) Susan Sesma (47 pages): $495.00 for the original and a certified copy, $7.80 for exhibits, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $697.80;

(5) Ashleigh Guardado (31 pages): $495.00 for the original and a certified copy, $3.25 for exhibits, $45.00 for electronic delivery and handling: $543.25;

(6) Brittney Sesma (40 pages): $495.00 for the original and a certified copy, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $690;

(7) Roger Clark (56 pages): $495.00 for the original and a certified copy, $46.15 for exhibits, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $736.15;

(8) Scott Holdaway (58 pages): $495.00 for the original and a certified copy, $83.20 for exhibits, $150 for court reporter attendance, and $45.00 for electronic delivery and handling: $773.20;

   (9) Andrew Ornelas (63 pages): $586.25 for copy of transcript of deposition taken by plaintiffs;

   (10) Jason Nichols (26 pages): $263.75 for copy of transcript of deposition taken by plaintiffs; and

   (11) Clarence Chapman (69 pages): $560.00 for copy of transcript of deposition taken by plaintiffs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on January 16, 2025, at Los Angeles, California.

         _____s/ Donna M. Dean_____
            Donna M. Dean

13

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Candido Sesma, et al. v. State of California, et al.** | No. | **5:21-cv-01694-JWH-DTB** |

I hereby certify that on <u>January 16, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' BILL OF COSTS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>January 16, 2025</u>, at Los Angeles, California.

| J. Sissov | */s/ J. Sissov* |
|---|---|
| Declarant | Signature |

LA2021603706
67366661.docx